IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Joshua Cox,                                  Case No. 3:13 CV 293

              Plaintiff,              MEMORANDUM OPINION

        -vs-                       JUDGE JACK ZOUHARY

Healthcare Services Group, Inc.,

              Defendant.

### INTRODUCTION

This is a Fair Labor Standards Act ("FLSA") wage and hour case. Pending before this Court is Plaintiff's Motion for Conditional Class Certification (Doc. 15) pursuant to 29 U.S.C. § 201, *et seq.* Defendant opposes (Doc. 27), and Plaintiff replied (Doc. 29). At a Status Phone Conference on May 30, 2013, this Court granted Plaintiff's Motion (Doc. 32), noting it would supplement that Order with a Memorandum Opinion.

### BACKGROUND

Defendant Healthcare Services Group ("HSG") provides housekeeping and dietary management services in health care facilities across the country (Doc. 27 at 6). Since 2010, HSG has provided services to 178 different health care facilities in Ohio alone (*id.*). Plaintiff Joshua Cox is employed by Defendant as an Account Manager ("AM") (Doc. 15-2 at 7). AMs work at facilities with which HSG has contracted to provide services, and there is a dispute in this case over their

regular duties -- Defendant argues they generally are responsible for "recruiting, training, supervising and managing housekeepers, janitors and, in some facilities, laundry workers at their facility, as well as labor and procurement budget management, inventory, regulatory compliance, and quality control" (Doc. 27 at 7), while Plaintiff argues they primarily are engaged in "housekeeping, floor care and laundry duties" (Doc. 15-2 at 7–8) . Many AMs go through a training program, during which time one is considered a Manager in Training ("MIT"). While in the program, MITs perform housekeeping, laundry, and floor care duties at various HSG-contracted facilities (Doc. 15-1 at 2–3).

Plaintiff alleges that AMs and MITs in Ohio perform non-exempt work under the FLSA, work in excess of forty hours per week, and are not paid overtime to which they are entitled under the FLSA (*id.*). He alleges specifically that (1) despite HSG's classification of MITs as non-exempt employees, it has a "uniform practice" of not paying MITs overtime; and (2) HSG misclassifies its AMs as exempt employees and fails to pay them overtime, despite the fact AMs primarily perform non-exempt work.

## DISCUSSION

The FLSA provides a private cause of action against an employer "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Collective actions brought by employees under the FLSA require putative class members to opt into the action, or generally termed, the "class." *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). The statutory standard for bringing a collective action under the FLSA is that the opt-in plaintiffs are "similarly situated." *Id.* "Similarly situated" does not mean plaintiffs need to be identical; however, it is the

lead plaintiffs' burden to show the opt-in plaintiffs are similarly situated to the lead plaintiffs. *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009).

### *FLSA Certification Standard*

Traditionally, courts in the Sixth Circuit follow a two-stage certification process to determine whether a proposed group of plaintiffs is "similarly situated" for purposes of the statute's requirements. The first, or "notice" stage, takes place at the beginning of discovery with a focus on determining whether there are plausible grounds for plaintiffs' claims. If so, plaintiffs are permitted to solicit opt-in notices, under court supervision, to potential plaintiffs such as current and former employees of defendant. The second stage occurs after "all of the opt-in forms have been received and discovery has concluded." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006) (internal quotation and citation omitted).

The first stage is "fairly lenient," requiring only that plaintiffs show a colorable basis for their claim that a class of similarly situated plaintiffs exists. *Killion v. KeHE Distribs.*, 2012 WL 5385190, at *3 (N.D. Ohio 2012); *Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545, 548 (E.D. Mich. 2004). Some courts have held that this burden can be met solely upon allegations in the complaint, *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 251 (M.D. Tenn. 1996) (citation omitted), whereas others have required a "modest factual showing." *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595–96 (S.D. Ohio 2002) (quotation and citation omitted). During the notice stage, courts "do not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations." *Shipes v. Amurcon Corp.*, 2012 WL 995362, at *5 (E.D. Mich. 2012) (citing *Wlotkowski v. Mich. Bell Tel. Co.*, 267 F.R.D. 213, 219 (E.D. Mich. 2010)). Once plaintiffs meet their burden at this stage, "a defendant cannot overcome their showing by arguing that individual issues predominate." *Id.* at *7.

3

Second stage review, however, is understandably more stringent as it occurs after the receipt of opt-in notices and after the completion of discovery. At this point, the court considers all the evidence, in conjunction with the demographic data of the putative opt-in plaintiffs, to determine whether the assembled class is sufficiently "similarly situated" to continue as a collective action, whether the putative class should be "decertified," leaving plaintiffs free to pursue their claims on an individualized basis, or some combination of the two. The primary factors considered in a second-stage analysis are: (1) the disparate factual and employment settings of the individual opt-in plaintiffs; (2) the various defenses available to defendants with respect to individual plaintiffs; and (3) fairness and procedural considerations. *Olivo*, 374 F. Supp. 2d at 548 n.2 (citing *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)).

This Motion was filed before any appreciable discovery has taken place. Therefore, Plaintiff's threshold showing of being "similarly situated" will be measured against the more lenient notice standard.

### *Plaintiff is Similarly Situated to the Proposed Classes of Opt-In Plaintiffs*

Plaintiff seeks conditional certification of two proposed classes:

(1) All [HSG] employees who worked as an [HSG] Manager in Training or otherwise participated in [HSG]'s Management Training program in the State of Ohio during the last three years; and

(2) All [HSG] employees who worked as an [HSG] Account Manager in the State of Ohio during the last three years (Doc. 15 at 1).

Plaintiff's allegations regarding the MITs fall under a "policy to violate the policy" theory of FLSA violations. That is, MITs are paid on an hourly basis, perform non-exempt work, and are classified by Defendant as non-exempt; however, despite this policy, Defendant fails to pay MITs overtime for hours worked in excess of forty per week. To satisfy his burden at this stage of the

4

litigation, Plaintiff must make a minimal showing that MITs throughout Ohio are not paid overtime in spite of HSG's policy to the contrary.

Plaintiff's allegation of misclassification as to the AMs requires a greater factual showing than simply alleging the HSG classified all AMs similarly for purposes of the FLSA. *See Killion*, 2012 WL 5385190, at *5 (discussing several approaches to assessing the required factual showing for misclassification); *see also Shipes*, 2012 WL 995362, at *9–10; *Wlotkowski*, 267 F.R.D. at 217. In misclassification cases, "requiring a modest factual showing accords with the purposes of Section 216(b), and does not implicate the more stringent standards of Federal Civil Rule 23." *Killion*, 2012 WL 5385190, at *5.

In support of his Motion, Plaintiff submits seven declarations -- three from AMs who also participated in the MIT program, and four from HSG District Managers who supervise AMs in Ohio. The AMs, who work in separate HSG-contracted facilities in Ohio, all state in their declarations, to similar effect, that while they were MITs as well as AMs they: (1) primarily performed non-exempt work, including housekeeping, floor care and laundry duties; (2) consistently worked more than forty hours per week; and (3) were not paid overtime for hours worked above forty per week while working either as an AM or MIT (Declarations of Joshua Cox, Zachary Shockley & Tyler Greene, Doc. 15-2 at 7–8, 10–11, & 12–13). He also submits HSG's "Management Trainee Policy," which provides that MITs are entitled to overtime pay at "1 ½ times their hourly rate for all hours worked in excess of 40 hours in a workweek . . . ." (Doc. 1-1 at 1).

The four former District Managers, who together supervised AMs servicing approximately 54 of the HSG facilities in Ohio (Declarations of Shaun Greene, Casey Pallumbo, Matt Gargalianos & Scott Gretchen, Doc. 15-2 at 1–3, 4–6, & 14–16, & Doc. 17-1 at 1–3), testified, to similar effect,

5

that AMs throughout the state of Ohio: (1) perform housekeeping, laundry, and floor care duties; (2) routinely worked in excess of forty hours per week; and (3) were not paid overtime. They further testified that they, as District Managers, were instructed by their supervisors to ensure MITs were paid only for forty hour weeks "regardless of how many hours [the MITs] worked." These declarations, combined with those from the AMs and the Management Trainee Policy, constitute a sufficient factual showing that Plaintiff is similarly situated to potential opt-in plaintiffs in the proposed classes.

Defendant argues generally that HSG employs a decentralized management philosophy, meaning AMs in particular have discretion in how they perform their jobs, and that individual AMs and MITs have differing job duties and responsibilities based on several factors, including the size of and patient population served by a particular location, the level of involvement in day-to-day operations by corporate supervisors, and the presence of unions. Defendant also argues Plaintiff's declarations are "vague" and "cursory" and thus should not be afforded much weight. Because of these distinctions, Defendant argues AMs and MITs, even limited to the state of Ohio, are not similarly situated. It also argues that MITs in fact are paid overtime. But these arguments, supported by Defendant's own affidavits, are better considered during the second stage of this action. *See Killion*, 2012 WL 5385190, at \*3 ("At the notice stage, this Court does not undertake a credibility determination to weigh the declarations in support of each side.").

Because Plaintiff has sufficiently shown, at this point in the litigation, a colorable basis for his claim that classes of similarly situated plaintiffs exist, conditional certification is appropriate. Once discovery is completed, this Court will be in a position to reassess under the more stringent standard whether certification of these two classes, as presently constituted, is appropriate, or whether based on the alleged distinctions Defendant raises, this case calls for full or partial decertification.

6

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Conditional Class Certification (Doc. 15) is granted and the two proposed classes are conditionally certified.  The parties are instructed to confer and submit for this Court's consideration a joint proposed notice document and opt-in schedule by **June 10, 2013**, and Defendant is instructed to provide Plaintiff's counsel with the names and contact information for all individuals who may potentially join the classes.

IT IS SO ORDERED.

                                                   s/ *Jack Zouhary*
                                           JACK ZOUHARY
                                           U. S. DISTRICT JUDGE

                                           June 4, 2013