# Exhibit A

**STIPULATION AND AGREEMENT OF COMPROMISE, SETTLEMENT, AND RELEASE PURSUANT TO SECTION 216(b) OF THE FLSA**

This Stipulation and Agreement of Compromise, Settlement, and Release Pursuant to Section 216(b) of the FLSA ("Settlement Agreement" or "Agreement") is made and entered into by, between, and among Plaintiffs Marie Acosta, Heather Bowman, Joshua Cox, Marc McCutchen, Benjamin Meyers, and Mathew Steinle (collectively, "Named Plaintiffs" or "Plaintiffs"), individually and on behalf of the Settlement Class (as defined below in paragraph 2.18, including subparts), and Defendant Healthcare Services Group, Inc. ("Defendant" or "HSG"), subject to the approval of the Court, as provided below. This Settlement Agreement is intended by all parties to fully, finally, and forever resolve, discharge, and settle the lawsuits titled *Acosta v. Healthcare Services Group, Inc.* (D. Colo. Case No. 1:13-cv-03429) ("the *Acosta* Litigation"); *Bowman v. Healthcare Services Group, Inc.*, (N.D. Ohio Case No. 3:13-cv-1924) ("the *Bowman* Litigation"); and *Cox v. Healthcare Services Group, Inc.* (N.D. Ohio Case No. 3:13-cv-00293) ("the *Cox* Litigation") (collectively, the "Actions") upon and subject to the terms and conditions hereof, as follows:

1.     **Factual and Procedural History and Recitals.**

   1.1   HSG provides contracted housekeeping, laundry, and maintenance services to healthcare and rehabilitation facilities throughout the country. The Named Plaintiffs and putative members of the Settlement Class are current and former HSG housekeeping Account Managers and/or Managers in Training ("MITs").

   1.2   On February 8, 2013, Joshua Cox filed a lawsuit on behalf of himself and other similarly situated HSG housekeeping Account Managers and MITs in the State of Ohio. This lawsuit alleges that Ohio housekeeping Account Managers were misclassified as overtime exempt under the FLSA, and that Ohio MITs were underpaid because HSG did not pay housekeeping MITs for hours worked over forty (40) per workweek. The *Cox* Litigation was conditionally certified as a collective action including housekeeping Account Managers and MITs in Ohio on June 4, 2013.

   1.3   On May 31, 2013, Zachary Shockley filed a lawsuit on behalf of himself and other similarly situated HSG housekeeping MITs throughout the country. This lawsuit alleges such MITs were underpaid because HSG did not pay housekeeping MITs for hours worked over forty (40) per workweek. Shockley later voluntarily dismissed his claims, and Heather Bowman was substituted as the primary Named Plaintiff in this action. The *Bowman* Litigation was conditionally certified as a collective action including housekeeping MITs in Colorado, Florida, Indiana, and Michigan on July 14, 2014.

   1.4   On December 18, 2013, Marie Acosta filed a lawsuit on behalf of herself and other similarly situated HSG housekeeping Account Managers in the

1

State of Colorado, alleging that the Colorado Account Managers were misclassified as overtime exempt under the FLSA and Colorado state law. The *Acosta* Litigation was conditionally certified as a collective action including housekeeping Account Managers in Colorado, pursuant to stipulation of the parties, on March 21, 2014.  The March 21, 2104 stipulation withdrew the Colorado state law claims brought pursuant to Civ. Rule 23.

1.5    After extensive motion practice and discovery in all three cases, the parties conducted a global mediation of the three cases.  Prior to mediation, the parties exchanged extensive premediation discovery and disclosures, both formally and informally.  Class Counsel (defined below in paragraph 2.10) obtained and analyzed thousands of pages of time and payroll records for MITs and Account Managers, reviewed thousands of emails, and deposed several HSG corporate representatives.

1.6    The Parties formally mediated twice: first unsuccessfully before mediator Robert S. Kaiser on February 6, 2014; and again before mediator Kathryn Miller in Denver, Colorado on August 15, 2014.  Despite a full day of negotiations lasting late into the evening on August 15, 2014, the parties were unable to immediately reach a settlement.  However, the next week, the parties mutually agreed on a proposed settlement figure set forth by the mediator.  After additional negotiations as to the remaining terms of the settlement, a final Memorandum of Understanding ("MOU") was signed on September 4, 2014.  The MOU is attached as Exhibit B. As a material term of the MOU, the Parties have agreed that these Actions should be settled collectively and globally, and that the Settlement shall be voidable in its entirety in the event that the settlement of any individual matter among the Actions is not approved.

1.7    Class Counsel represent that they have spent several months thoroughly investigating the underlying facts, events, and issues related to the class claims against Defendant in all three cases.    Class Counsel further represent that they have undertaken an extensive analysis of the legal principles applicable to the claims asserted against Defendant, and the potential defenses thereto. Class Counsel engaged the services of an expert, economist Dr. David Crawford, to review the payroll records, the documents and the testimony to date and to provide his opinion regarding damages.  Defendant received copies of the expert's report and supporting documents. Both parties have had an opportunity to evaluate their respective positions on the merits of the claims and defenses asserted.

1.8    Class Counsel have also engaged in intensive arms-length negotiations with counsel for Defendant over the course of more than a year with a view toward achieving substantial benefits for the Settlement Class, including avoiding the cost, delay and uncertainty of further litigation, trial, and appellate review.

1.9    As a consequence of said negotiations, and of Class Counsel's investigation, analysis and discovery, Named Plaintiffs, through Class Counsel, determined to enter into this Settlement Agreement on the terms and conditions hereinafter set forth, believing such Settlement to be fair, reasonable and adequate and in the best interests of Named Plaintiffs, and all current and purported members of the Settlement Class.  The Named Plaintiffs, through Class Counsel, have determined to execute this Settlement Agreement and urge approval by the Court of the proposed Settlement after considering (1) the factual and legal defenses available to Defendant to the claims asserted in the Actions, which renders the outcome of the Actions uncertain; (2) the potential difficulties Named Plaintiffs and the Settlement Class would encounter in defending against motions to decertify the collective actions, and in establishing the elements of their claims; (3) the substantial benefits that the members of the Settlement Class shall receive pursuant to the proposed Settlement; and (4) the fact that the proposed Settlement ensures that the members of the Settlement Class shall receive relief in the most expeditious and efficient manner practicable, and thus much sooner than would be possible were the claims to be litigated successfully through trial and appeal.  Class Counsel have further considered that Defendant would file motions to decertify these collective actions, and face a risk that one or all of the motions would be granted or that the eventual scope of the final collectives would be significantly reduced.

1.10   Defendant vigorously denies each and every allegation of liability and wrongdoing that was asserted or could have been asserted by the Named Plaintiffs, and asserts that it has factual and legal defenses to all claims alleged in Complaints, and that the claims brought by Named Plaintiffs on behalf of themselves and the Settlement Class are without merit. Defendant further maintains that for any purpose other than settlement, the Actions are neither suitable nor appropriate for collective action treatment pursuant to 29 U.S.C. §216(b).  Nevertheless, without admitting any wrongdoing or liability whatsoever, Defendant is willing to agree to the terms of the proposed Settlement, provided that all of the Released Claims (as defined below in paragraphs 2.23 and 11, including subparts) are settled and compromised, in order to fully resolve all issues relating to the subject matter of the Actions and to avoid adding to the substantial amounts of time, energy, and other resources that have been and, absent settlement, will continue to be devoted to the HSG's defense against the claims asserted by the Named Plaintiffs.  Defendant also concurs that the proposed Settlement is fair, reasonable, and adequate.

1.11   Counsel for the parties agree that this Settlement does not create a common fund.

3

**NOW THEREFORE,** in consideration of the covenants and agreements set forth herein, and of the release and dismissal of all Released Claims, Named Plaintiffs, on behalf of themselves and, as representatives on behalf of the Settlement Class, through Class Counsel, and Defendant, through Counsel for the Defendant, agree to the terms and provisions of this Settlement Agreement, subject to the approval of the Court, of all Released Claims under the following terms and conditions.

2. **Definitions**

As used herein, for the purposes of this Settlement Agreement only, the following terms shall be defined as set forth below:

    2.1 "*Acosta* Litigation" means the action titled *Acosta v. Healthcare Services Group, Inc.* (D. Colo. Case No. 1:13-cv-03429).

    2.2 "*Bowman* Litigation" means the action titled *Bowman v. Healthcare Services Group, Inc.*, (N.D. Ohio Case No. 3:13-cv-1924).

    2.3 "*Cox* Litigation" means the action titled *Cox v. Healthcare Services Group, Inc.* (N.D. Ohio Case No. 3:13-cv-00293).

    2.4 "Actions" means the *Acosta* Litigation, *Bowman* Litigation, and *Cox* Litigation, collectively.

    2.5 "HSG" or "Defendant" means Healthcare Services Group, Inc.

    2.6 "Named Plaintiffs" or "Plaintiffs" means Marie Acosta, Heather Bowman, Joshua Cox, Marc McCutchen, Benjamin Meyers, and Mathew Steinle.

    2.7 "The Parties" or "Settling Parties" means HSG and the Named Plaintiffs.

    2.8 "*Bowman* Opt-in Claim Deadline" refers to a date that is forty-five (45) calendar days after the date that notice of this pending Settlement is mailed to putative members of the *Bowman* Opt-in class, as such date may be set or modified by the Court, and is the deadline by which the Opt-In Claim Forms, defined in paragraph 2.9, in the *Bowman* Litigation must be postmarked in order to be valid.

    2.9 "Opt-in Claim Form and Opt-in Consent ("Opt-in Claim Form")", attached as Exhibit C refers to the form that will be sent to putative collective members of the *Bowman* Litigation, along with a Notice of Collective Action Settlement for Current and Former Healthcare Services Group, Inc. Managers in Training ("Notice of Collective Action Settlement"), attached as Exhibit C, which putative *Bowman* class members must properly complete and timely submit to receive an Individual Settlement Payment,

respectively defined and apportioned as set forth in paragraph 3, including subparts, substantially in the form attached hereto as Exhibit C, as may be modified by the Court.

2.10   "Class Counsel" refers to attorneys Robert E. DeRose and Robi J. Baishnab of Barkan Meizlish Handelman Goodin DeRose Wentz LLP, and attorneys Hans A. Nilges and Shannon Draher of Nilges Draher LLC.

2.11   "Class Counsel Fees and Costs" means the attorneys' fees, expenses and costs incurred by Class Counsel to be deducted from the Gross Settlement Amount as defined and apportioned as set forth in Paragraph 5, below, and subject to the Court's approval.

2.12   "Complaints" refers to the Complaints, including all Amended Complaints, filed in the *Acosta* Litigation, *Bowman* Litigation, or *Cox* Litigation.

2.13   "Court" refers to the Court in which each matter is pending.  For the *Bowman* Litigation and *Cox* Litigation, it refers to the Northern District of Ohio, Western Division, Hon. Jack Zouhary, U.S. District Judge, presiding. For the *Acosta* Litigation, it refers to the District of Colorado, Hon. Robert E. Blackburn, U.S. District Judge, presiding.

2.14   "Service Awards" means the amounts to be paid to the Named Plaintiffs and certain other individuals in recognition of their effort and work in prosecuting these Actions on behalf of the Settlement Class, to be paid out of the Gross Settlement Amount, subject to the Court's approval.

2.15   "Approval Order" refers to the final order by each respective Court granting approval to the Settlement Agreement in each of the *Acosta*, *Bowman* and *Cox* Litigations.

2.16   "Approval Order Date" refers to the date on which the Court has entered a Approval Order in the *Acosta*, *Bowman* and *Cox* actions.

2.17   "Final Effective Date" refers to the date on which an Approval Order has been issued for each of the cases comprising the Actions.  If no appeal is taken to any of the Approval Orders, then the Final Effective Date will be ten (10) business days after the time for filing an appeal has expired in each of the cases comprising the Actions.  If one or more appeals are taken from an Approval Order in any of the *Acosta*, *Bowman* or *Cox* actions, then the Final Effective Date will be ten (10) business days after the last appeal is withdrawn or after the last appellate decision affirming the  Approval Order so appealed becomes final.

2.18   "Settlement Class" refers to all of the following individuals:

2.18.1  All individuals, including respective named plaintiffs ("*Acosta* Named Plaintiffs"), that opted in to the *Acosta* Litigation ("*Acosta*

5

Opt-in"), such class certified on March 31, 2014 (the "*Acosta* Class" or "*Acosta* Settlement Class");

2.18.2 All individuals, including respective named plaintiffs ("*Bowman* Named Plaintiffs"), that opted in to the *Bowman* Litigation ("*Bowman* Opt-ins"), such class certified on July 14, 2014, as well as all putative Opt-in class members in the *Bowman* Litigation who timely return Opt-in Claim Forms as set forth in Paragraph 4, below (the "*Bowman* Class" or "*Bowman* Settlement Class"); and

2.18.3 All individuals, including respective named plaintiffs (*Cox* Named Plaintiffs"), that opted in to the *Cox* Litigation ("*Cox* Opt-ins"), such class being certified on June 4, 2013 (the "*Cox* Class" or "*Cox* Settlement Class").

2.19 "Gross Settlement Amount" refers to the total maximum settlement amount of One Million Three Hundred and Fifty Thousand Dollars and no cents ($1,350,000) to be paid by Defendant in full satisfaction of all claims arising from or related to these Actions.

2.19.1 Defendant will not pay out more than the Gross Settlement Amount. Payment by Defendant of the Gross Settlement Amount shall settle any and all claims, known or unknown, that the Named Plaintiffs may have against the Released Parties, as well as those claims that the Releasing Class Parties may have against the Released Parties, including but not limited to any claims pending in the *Acosta* Litigation, the *Bowman* Litigation and/or the *Cox* Litigation, or that could have been alleged in those actions based on the same underlying factual allegations. Any monies paid shall not trigger any additional payment under any fund or plan maintained by the Defendant. The Gross Settlement Amount is the maximum amount that Defendant will pay under this Agreement and includes all Individual Settlement Payments, Service Awards, interest, all employee and employer FICA and payroll taxes arising from the Individual Settlement Payments, and Class Counsel Fees and Costs.

2.19.2 The Defendant will only pay money in excess of the Gross Settlement Amount in the event that the amount of the employer FICA exceeds the funds available in accordance with paragraph 10 below.

2.20 "Net Settlement Amount" refers to the portion of the Gross Settlement Amount remaining after deduction of Court approved Class Counsel Fees and Costs and Service Awards as described respectively in Paragraphs 5 and 6 below. The Net Settlement Amount shall include any amounts requested by Named Plaintiffs in Class Counsel Fees and Costs or Service Awards but not approved by the Court, consistent with Paragraph 5 below.

2.21 "Joint Motion to Approve Section 216(b) Action Settlement" refers to the motion to be prepared jointly by the Parties and submitted by Class Counsel to the Court to obtain approval of the Settlement and final certification of the Settlement Class in the *Acosta*, *Bowman* and *Cox* actions.

2.22 "Released Claims" are those claims defined in Paragraph 11, including its subparagraphs.

2.23 "Settlement" refers to the Parties' agreement to fully and collectively resolve the claims of the Settling Parties in these Actions pursuant to the provisions in this Settlement Agreement.

3. **Settlement Formula for Class Claims**

3.1 The Net Settlement Amount shall be distributed as follows:

3.1.1 In Settlement of the *Acosta* Litigation, the Parties will allocate a total of $90,605.19 from the Net Settlement Amount plus $10,000.00 in Service Awards. Each *Acosta* Named Plaintiff and Opt-in shall receive approximately five additional hours of overtime at 100% of his or her regular rate of pay for each week he or she worked as an Account Manager for three years prior to the date he or she filed a Notice of Consent to join the *Acosta* Litigation. Each *Acosta* Named Plaintiff and Opt-in is guaranteed a minimum payment of $1,200.00. The exact award for each *Acosta* Named Plaintiff and Opt-in is set out in Exhibit A. The parties agree that, prior to entry of any Approval Order and as a necessary precondition of settlement of these Actions, the Defendant shall move for decertification of the *Acosta* Litigation, which Plaintiffs shall not oppose. If the motion for decertification is granted, the settlements with members of the *Acosta* Class will be made on an individual basis, as set forth in Paragraph 7, below. If the motion for decertification is denied, the Parties will seek an Approval Order granting Settlement on a class-wide basis.

3.1.2 In Settlement of the *Cox* Litigation, the Parties will allocate a total of $566,476.45 of the Net Settlement Amount plus $50,000.00 in Service Awards. Each *Cox* Named Plaintiff and Opt-in shall receive approximately five additional hours of overtime at 150% of his or her regular rate of pay for each week he or she worked as either an Account Manager or as an MIT for the three years prior to the date he or she filed a Notice of Consent to join the *Cox* Litigation. Each *Cox* Named Plaintiff and Opt-in is guaranteed a minimum payment of $1,200.00. The exact award for each *Cox* Named Plaintiff and Opt-in is set out in Exhibit A.

3.1.2.1 Seven individuals who have opted in to the *Cox* Litigation are not members of the *Cox* Class as defined in paragraph 2.18.3, since they worked as Dietary Services employees during the relevant time period (the "Dietary Opt-Ins").  The Dietary Opt-ins shall receive $250.00 each to dismiss their respective claims.  The Dietary Opt-Ins are listed in Exhibit A.

3.1.3   In Settlement of the *Bowman* Litigation, the Parties will allocate a total of $122,918.36 of the Net Settlement Amount plus $10,000.00 in Service Awards.  This fund shall be further divided into two separate funds – one for payment to the *Bowman* Named Plaintiffs and current Opt-Ins in the *Bowman* Litigation, and one ("Putative *Bowman* Opt-in Fund") for any putative collective members who timely return an Opt-in Claim Form, noticing the consent to participate in this Settlement as set forth more fully below.

3.1.3.1 ***Bowman* Named Plaintiffs and Current Opt-Ins.** Each *Bowman* Named Plaintiff and current Opt-in shall receive approximately five additional hours of overtime at 150% of his or her regular rate of pay for each week he or she worked as a Manager-in-Training ("MIT") for three years prior to the date he or she filed a Notice of Consent to join the *Bowman* Litigation.   The exact guaranteed minimum award for each *Bowman* Named Plaintiff and current Opt-in is set out in Exhibit A.

3.1.3.2 **Putative *Bowman* Class Members and Fund.** The remaining putative members of the *Bowman* Class will be given an opportunity to sign and return an Opt-in Claim Form to participate in the Settlement, as described more fully in Paragraph 4.

3.1.3.3 Putative *Bowman* Opt-Ins who timely return an Opt-in Claim Form will receive $350.49, which is a pro-rated share of the Putative *Bowman* Opt-in Fund based on 100 percent opt-in participation.

3.1.3.4 The Defendant agrees to pay a minimum of $75,000.00 of the Putative *Bowman* Opt-in Fund regardless of the number of Putative *Bowman* Opt-ins who join this action.

3.1.3.5 If, after the final number of *Bowman* Opt-ins is known by the *Bowman* Opt-in Claim Deadline, defined above and further described in Paragraph 4, the money paid to the Putative *Bowman* Opt-ins is less than the $75,000.00 minimum payout, then the difference between the actual

8

payout and the $75,000.00 minimum payout will be pro-rated among all of the Putative *Bowman* Opt-ins who timely return an Opt-in Claim Form pursuant to Paragraph 4, up to a maximum of $1,200.00 per Opt-in.

3.1.3.6 If each Putative *Bowman* Opt-in who returns a Claim Form has been allocated $1,200.00, but the money paid out is still less than the $75,000.00 minimum, then the difference between the actual payout and the $75,000.00 minimum payout will be pro-rated among all of the *Bowman* Opt-ins, inclusive of the current *Bowman* Opt-ins, who will receive a prorated share not to exceed $2,659.18 per *Bowman* Opt-in.

3.1.3.7 If each *Bowman* Opt-in who returns an Opt-In Claim Form, inclusive of the current *Bowman* Opt-ins, has been allocated $2,659.18 and the money paid out is still less than the $75,000.00 minimum, then the difference between the actual payout and the $75,000.00 minimum payout will be pro-rated among all of the *Bowman* Opt-ins, and those who timely returned an Opt-in Claim Form, Named Plaintiffs, including Heather Bowman.

4.     **Putative *Bowman* Opt-In Process and Form of Notice.**

For putative collective class members in the *Bowman* Litigation only, the Net Settlement Amounts of the Putative *Bowman* Opt-In Fund shall be distributed using a claims-made process.  To the extent the individual can be identified and/or contact information is maintained by the Parties, notice will be sent by mail to each member of the *Bowman* Settlement Class (as defined paragraph 2.18.2) who is eligible to make a claim to inform him or her of the Settlement, his or her ability to file a claim, and the claims being released. To be timely, completed Opt-in Claim Forms must be submitted and returned within forty-five (45) days of mailing.   A sample of the Opt-in Claim Form to be disseminated is attached as Exhibit C.  The cost of the Notice process will be paid by Plaintiffs, subject to possible reimbursement as described in Paragraph 10.4.

5.     **Class Counsel Fees and Costs.**

Defendant agrees not to oppose or impede any application or motion by Class Counsel for an award of attorneys' fees earned and litigation costs and expenses incurred by Class Counsel, not to exceed Five Hundred Thousand Dollars ($500,000.00). Attorneys' fees and costs will be paid out of the Gross Settlement Amount.  Should the Court approve a lesser amount of fees and/or costs, the validity or enforceability of Settlement Agreement shall not be affected, and portion of the attorneys' fees or costs not approved by the Court shall be used to pay any additional expenses or disputed claims as agreed by the Parties and thereafter to a *cy pres* fund as described in Paragraph 10, including its subparagraphs.

The Class Counsel Fees and Costs shall be apportioned across the Actions as follows:

a) In the *Acosta* Litigation, Class Counsel will request, and Defendant shall not oppose, Class Counsel Fees and Costs in the amount of $73,284.89.

b) In the *Bowman* Litigation, Class Counsel will request, and Defendant shall not oppose, Class Counsel Fees and Costs in the amount of $90,337.57.

c) In the *Cox* Litigation, Class Counsel will request, and Defendant shall not oppose, Class Counsel Fees and Costs in the amount of $336,377.54.

In the event that the Court denies or reduces the requested sums of Class Counsel Fees and Costs as outlined above, the remaining provisions of this Settlement will not be affected.

6. **Service Awards to Named Plaintiffs and Certain *Acosta* and *Cox* Opt-Ins.**

Class Counsel will request the Court approve Service Awards in an aggregate amount not to exceed Seventy Thousand Dollars and no cents ($70,000.00), to be distributed amongst each Named Plaintiff in recognition for their roles as Named Plaintiffs, and to certain *Acosta* and *Cox* Opt-ins because of their roles in discovery and mediation in the *Cox* and *Acosta* Litigations. The list of Named Plaintiffs and certain *Acosta* and *Cox* Opt-ins receiving a service payment (collectively with the Named Plaintiffs, the "Service Award Plaintiffs") is listed on Exhibit A. Defendant will not oppose this request. Defendant shall issue an IRS Form 1099 to each Service Award Plaintiff in connection with the Service Award paid to each Service Award Plaintiff. In exchange for the Service Awards, the Service Award Plaintiffs shall release all claims, known or unknown, which they may have against Defendant, up to and including August 15, 2014, as set forth in Paragraph 11.3. Any portion of the Service Award not approved by the Court shall be used to pay any additional expenses or disputed claims as agreed by the Parties and thereafter to a *cy pres* fund as described in Paragraph 10, including its subparagraphs.

7. **Decertification of the *Acosta* Litigation.**

The parties agree that Defendant shall file a motion for decertification of the conditional collective action in the *Acosta* Litigation, and, if granted, will settle each case individually per the allocation set forth in Exhibit A and Paragraph 3.1.1, subject to the Court's approval thereof. The motion for decertification is attached as Exhibit D. Plaintiffs will not oppose the motion for decertification of the *Acosta* Litigation. In the event that the motion for decertification is denied, the Parties will seek an Approval Order granting Settlement collectively, consisting only of those members of the *Acosta* Class who have already opted in to that action.

8.   **Timing of Payment for Claims, Service Awards, and Class Counsel Fees and Costs.**

    8.1   Checks for payment of eligible claims from the Net Settlement, Service Awards and Counsel Fees and Costs will be issued subject to the schedule set forth below in Paragraph 8.2, contingent upon the respective court ruling on Defendant's unopposed motion for decertification of the conditional collective action in the *Acosta* Litigation and entry of the respective Courts' respective Approval Orders granting settlement of the *Acosta* Litigation, the *Bowman* Litigation, and the *Cox* Litigation, assuming that there is no appeal from any of these Approval Orders.  If there is an appeal of an Approval Order, checks will be issued within fourteen (14) days after the final appellate order in the event that such date is later than the scheduled payment dates set forth below.  If the respective Courts have not ruled on Defendant's unopposed motion for decertification of the conditional collective action in the *Acosta* Litigation and have not entered Approval Orders granting final Settlement of the *Acosta* Litigation, the *Bowman* Litigation, and the *Cox* Litigation prior to December 15, 2014, any amounts scheduled to be paid by that date pursuant to Paragraph 8.2 below shall be paid within ten (10) days after such motion is ruled upon and such Approval Orders have been entered; and any amounts scheduled to be paid on February 1, 2015 pursuant to Paragraph 8.2 below shall be paid either ninety (90) days after the previous installment or on the third day of the following calendar quarter, whichever is sooner; and any amounts scheduled to be paid on April 10, 2015 pursuant to Paragraph 8.2 below shall be paid either ninety (90) days after the previous installment or on the third day of the following calendar quarter, whichever is sooner.

    8.2   Defendant will pay the Gross Settlement Amount in installments, to be paid in the following amounts by the following dates:

        8.2.1   $457,128.31 by December 15, 2014. This figure represents all amounts for settlement of the *Acosta* Litigation, which includes $100,605.19 in unpaid overtime and liquidated damages, $10,000.00 in Service Awards, and $73,284.89 in Attorney Fees and Costs, and the unpaid wages award for the *Cox* Litigation, $283.238.23;

        8.2.2   $669,615.77 by February 1, 2015. This figure represents the remaining settlement amounts for the *Cox* Litigation, which includes $283,238.23 in liquidated damage awards, $50,0000.00 in Service Awards, and $336,377.54 in Attorney Fees and Costs; and

        8.2.3   $223,255.92 by April 10, 2015. This figure represents all amounts for settlement of the *Bowman* Litigation, which includes $4,329.59 in unpaid overtime, $4,329.59 in liquidated damage awards,

$10,000.00 in Service Awards, $114,259.18 for the Putative *Bowman* Opt-in Fund, and $90,337.56 in Attorney Fees and Costs.

8.3  <u>Uncashed Individual Settlement Payments</u>.  Settlement checks not cashed by a member of the Settlement Class within one hundred twenty-five (125) days of mailing shall be void, and the failure to cash any check shall in no way affect the binding nature of the Settlement or the binding nature of any release.

   8.3.1  The Parties will work together in making good-faith efforts to locate the Named Plaintiffs and Opt-ins during the 125 days. Class Counsel will notify HSG when the checks are mailed. HSG will send Class Counsel a list of all outstanding checks with the class members' name and the amount of the outstanding check ninety (90) days after the checks are mailed.

   8.3.2  On the one hundred twentieth (120) day after the checks are mailed, HSG will send Class Counsel a list of the outstanding checks with the class members' name and the amount of the outstanding check.

   8.3.3  Any funds not claimed by the Settlement Class because of a failure to cash the check within one hundred twenty-five days (125) of receipt will be distributed in accordance with Paragraph 10, including its subparagraphs.

9.  **Tax Treatment.**

   9.1  Each payment made from the Net Settlement Amount based on any claim, whether by a Named Plaintiff or Opt-in, shall be divided as follows:

      a.  50% of the gross amount paid on each claim will be paid as lost wages and an IRS Form W-2 will be issued for the payment (the employer's portion of the FICA and other taxes will be paid by Defendant as described in Paragraph 2.19); and

      b.  50% of the gross amount paid on the claim will be paid as compensation for liquidated damages and a Form 1099 will be issued for the payment.

   9.2  Should any government authority determine that all or any part of the payment(s) made under a Form 1099 to any member of the Settlement Class are taxable as wages, the member will be solely responsible for the payment of all such taxes that are assessed.

   9.3  Defendant makes no representations and it is understood and agreed that the Defendant has made no representations as to the taxability of any payments pursuant to this Settlement Agreement, including all payments to

12

the Settlement Class, including the Named Plaintiffs and all payments to Class Counsel.  Each Named Plaintiff and Class Member is advised to seek his or her own personal tax advice.

10.  **Unclaimed Funds for Taxes, Disputed Claims, and *Cy Pres*.**

   10.1  Any *cy pres* funds will be allocated fifty percent (50%) to a charity selected by Plaintiffs, and fifty percent (50%) to a charity selected by Defendant.

   10.2  As to the *Acosta* Class, the *Bowman* Named Plaintiffs and current Opt-ins and the *Cox* Class, any and all portions of the Net Settlement Amount not claimed as described in Paragraph 3, including subparagraphs, shall be used to pay any additional expenses or disputed claims as agreed by the Parties and thereafter to a *cy pres* fund as described in subparagraph 10.1 above.

   10.3  As to the Putative *Bowman* Opt-in Fund only, any and all portions of the Net Settlement Amount allocated to the Putative *Bowman* Opt-in Fund and that are not claimed under the claims-made process as set forth in Paragraph 4 shall be used to pay any additional expenses or disputed claims as agreed by the Parties and thereafter to a *cy pres* fund as described above.

   10.4  "Additional expenses" as used in this paragraph shall mean Defendant's portion of the FICA and other employment taxes related to the Settlement of the *Acosta* Litigation, the *Bowman* Litigation and the *Cox* Litigation (as described in Paragraph 2.19), the cost of the Mediator (split between the Parties), and Plaintiffs' cost of the Notice described in Paragraph 4.

   10.5  The order of preference will be to pay any disputed claims first (subject to approval by all Parties) and then the additional expenses.  After any disputed claims are resolved, any remaining unclaimed funds described in Paragraphs 3 and 4, include subparagraphs, shall be used first to exhaust Defendants' FICA and other employment taxes related to the settlement of the *Acosta* Litigation, the *Bowman* Litigation and the *Cox* Litigation.  If any unclaimed funds described in Paragraphs 3 and 4, including subparagraphs, remain after the exhaustion of the above referenced employment taxes, they shall be used to address the cost of the Mediator (split between the Parties), and if any unclaimed funds remain thereafter, the Plaintiffs' cost of the Notice described in Paragraph 4.

11.  **Released Claims.**

   11.1  Upon final approval of this Settlement Agreement, Named Plaintiffs on their own behalf and as the Named Representatives, all members of the Settlement Class, and all persons purporting to act on their behalf or purporting to assert a claim under or through them, including, but not limited to, their spouses, dependents, attorneys, heirs and assigns, beneficiaries, devisees, legatees, executors, administrators, trustees,

conservators, guardians, personal representatives, and successors-in-interest, whether individual, class, collective, representative, legal, equitable, direct or indirect, or any other type or in any other capacity (collectively, the "Releasing Class Parties") hereby forever completely and irrevocably release and discharge Defendant, along with any of its past, present, and future parents, affiliates, subsidiaries, divisions, predecessors, successors, and assigns, and each of their officers, directors, board members, trustees, shareholders, members, employees, agents, attorneys, auditors, accountants, benefits administrators or third party administrators, experts, contractors, stockholders, representatives, partners, insurers, reinsurers, and other persons acting on their behalf (collectively, the "Released Parties"), from any and all causes of action, claims, rights, damages, punitive or statutory damages, penalties, liabilities, expenses, and losses resulting from unpaid wages, minimum wages, unpaid overtime, liquidated damages, other compensation or benefits including 401(k) benefits or matching benefits, retirement or deferred compensation benefit claims on account of unpaid wages and/or overtime, interest, attorneys' fees, meal and rest period compensation, day of rest claims, accrued vacation pay, breach of fiduciary duty, and any right or claim for civil penalties, any claim arising in contract or quasi-contract and related to the payment of wages, that any of the Releasing Class Parties have or may have had against any of the Released Parties arising out of the acts, facts, transactions, theories, occurrences, representations, or omissions set forth, or which could have been set forth, given the stated predicate allegations in the Complaints filed in the *Acosta* Litigation, the *Bowman* Litigation and/or the *Cox* Litigation, arising out of or under the Fair Labor Standards Act, the Ohio Wage Payment Act, the Colorado Wage Claim Act, Colorado's Minimum Wage Orders, Colorado's Minimum Wages of Workers Act, any other state wage payment law, or any other claim arising out contract, quasi-contract, tort, breach of fiduciary duty, or other common law claim, as well as any other state or local statute, rule and/or regulation, or similar causes of action arising from or relating to the non-payment of wages alleged in the above referenced Complaints, (the "Released Claims") through the time of Final Approval Order.

11.2    It is expressly acknowledged and agreed that the Released Claims set forth above by the Releasing Class Parties shall not include a release or waiver of any claims under any federal, state, municipal or other statutes or ordinances not expressly released in the immediately preceding paragraph above including, but not limited to, claims for damages, equitable relief, attorney fees, costs and the like under Title VII of the Civil Rights Act of 1964, as amended; the Americans with Disabilities Act, as amended; the Ohio Civil Rights Act; the Colorado Anti-Discrimination Act; the Family and Medical Leave Act, as amended; and the Age Discrimination in Employment Act, as amended, Ohio Revised Code § 4123.90, and any common law actions relating to wrongful or retaliatory discharge, negligence, malfeasance, mistreatment, civil conspiracy, defamation,

14

intentional or negligent infliction of emotional distress, tort, personal injury, or invasion of privacy.  The parties agree that the Defendant shall not assert in any other proceeding that any claims not expressly released are barred by the doctrines of *res judicata*, collateral estoppel or the like.

11.3.    Upon final approval of this Settlement Agreement, the Service Award Plaintiffs  and all persons purporting to act on their behalf or purporting to assert a claim under or through them, including, but not limited to, their spouses, dependents, attorneys, heirs and assigns, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, and successors-in-interest, whether individual, class, collective, representative, legal, equitable, direct or indirect, or any other type or in any other capacity (collectively, the "Releasing Service Award Plaintiff Parties") hereby additionally, forever, completely and irrevocably release and discharge the Released Parties, from any and all causes of action, claims, rights, damages, punitive or statutory damages, penalties, liabilities, expenses, and losses of any kind or nature, whether known or unknown, without any limitation whatsoever, that any of the Releasing Service Award Plaintiff Parties have or may have had against any of the Released Parties (the "Released Service Award Plaintiffs Claims") through August 15, 2014.

11.4    <u>Prohibition on Subsequent Assertion of Released Claims</u>.  Named Plaintiffs, and to the fullest extent allowed by law, all Releasing Service Award Plaintiff Parties and Releasing Class Parties, are prohibited from ever asserting a Released Claim and from commencing, joining in, or voluntarily assisting in a lawsuit or adversary proceeding against the Released Parties, or any of them, based on Released Claims.  Excluded from this prohibition are any instances where any individual is legally compelled to testify through service of a subpoena, court order or other process.

11.5    <u>Covenant Not to Sue</u>.  Named Plaintiffs, and to the fullest extent allowed by law, all Releasing Service Award Plaintiff Parties and Releasing Class Parties, covenant and agree not to ever assert a Released Claim or to commence, join in, or voluntarily assist in a lawsuit or adversary proceeding against the Released Parties, or any of them, arising out of or regarding the Released Claims.

11.6    <u>No Assignment of Rights</u>.  Named Plaintiffs and all Releasing Service Award Plaintiff Parties and Releasing Class Parties warrant and represent that they have not assigned, transferred, or hypothecated, or purported to assign, transfer, or hypothecate to any person or entity any of the Released Claims or any rights, claims, or causes of action arising therefrom.  This warranty and representation of non-assignment shall survive the execution of this Settlement Agreement and the dismissal of these Actions.  No Settlement payment shall be paid to any person or entity with respect to

15

whom the Plaintiff as Named Representative and/or any Releasing Service Award Party or Releasing Class Party has assigned, transferred, or hypothecated, or purported to assign, transfer, or hypothecate any of the Released Claims or any rights, claims, or causes of action arising out of the Released Claims.  In addition, Plaintiffs and Releasing Service Award Plaintiff Parties or Releasing Class Parties shall defend, hold harmless, and indemnify the Released Parties, or any of them, from and against any claims, damages, litigation, causes of action, and expenses, including reasonable attorneys' fees, resulting from any breach by a Named Plaintiff or any other Releasing Service Award Party or Releasing Class Party of this warranty and representation, or any breach by Plaintiff or any other Releasing Service Award Party or Releasing Class Party of their release of the Released Claims.

11.7 Notwithstanding this Paragraph or any other provision within this Settlement Agreement, the Parties retain and reserve all rights, procedures and remedies available to enforce this Settlement Agreement, and nothing herein, except jurisdiction, venue, and choice-of-law provisions, shall abridge or otherwise limit the rights, procedures and remedies available to the Parties in enforcing this Settlement Agreement.

## 12.    No Impact on Employee Benefit Plan, Policy or Bonus Program.

Defendant contends that the amounts paid under this Settlement Agreement will not affect any previously credited hours of service under any employee benefit plan, policy or bonus program sponsored by Defendant.  To the extent permitted by the terms of any such plans as such exist at the time of the payment, the amounts paid under this Settlement Agreement will not form the basis for additional contributions to, benefits under, or any other monetary entitlement under, Defendant-sponsored (self-insured or not) employee benefit plans, policies or bonus programs.  Any payments made under the terms of this Settlement Agreement shall not be applied retroactively, currently or on a going forward basis as salary, earnings, wages, or any other form of compensation for the purposes of any employee benefit plan, policy or bonus program.  Defendant retains the right to modify the language of its employee benefit plans, policies and bonus programs to effect this intent and to make clear that any amounts paid pursuant to this Settlement Agreement are not for "hours worked," "hours paid," "hours of service," or any similar measuring term as defined by applicable plans, policies and bonus programs for the purpose of eligibility, vesting, benefit accrual or any other purpose, and that additional contributions or benefits are not required by this Settlement Agreement.  Neither Defendant nor Plaintiffs are opining on the terms of any such plan, each of which speaks for itself.

## 13.    Severability.

The Settling Parties agree that the provisions of Paragraphs 5 and 6, including subparagraphs, of this Settlement Agreement are severable from the remainder of the Settlement Agreement.  Any denial or reduction in amount by the Court of the application

for Class Counsel Fees and Costs or Service Awards shall in no way affect the validity and effect of the remainder of this Settlement Agreement.

14.     **Limitation on Costs and Fees.**

Except as provided in this Settlement Agreement, Defendant and Class Counsel shall not be required to pay any other expenses, costs, damages or fees incurred by Named Plaintiffs or any member of the Settlement Class, or by any of their attorneys, experts, advisors, agents or representatives relating to these Actions. Any award of attorneys' fees, costs, expenses and damages payable hereunder to Class Counsel shall be in complete satisfaction of any and all claims for such attorneys' fees, costs, expenses and damages, liquidated damages, penalties under state or federal law, which Named Plaintiffs, the Settlement Class, Class Counsel, or any other counsel have or may have against Defendant arising out of or in connection with the Actions and this Settlement, including, but not limited to, any claims for attorneys' fees, costs and expenses involved in litigating the Actions and in negotiating and implementing this Settlement Agreement, including attorneys' fees, costs and expenses incurred through and after the final disposition and termination of the Actions. After Defendant funds the Gross Settlement Amount in accordance with Paragraph 8.2, Defendant shall not be responsible for distributing or apportioning any award of attorneys' fees and expenses, and Class Counsel shall defend, hold harmless, and indemnify Defendant and its counsel, or any of them, from and against any claims, damages, litigation, causes of action, and expenses, including reasonable attorneys' fees, resulting from any action, proceeding, or claim initiated by Class Counsel, involving the apportionment of the award of attorneys' fees, costs, or expenses among the Named Plaintiffs, the Settlement Class, and Class Counsel.

15.     **Persons Who Do Not Opt in to the Action.**

Defendant and Class Counsel shall not be responsible, to any putative member of the Settlement Class who does not opt in to the Settlement Agreement, as outlined herein, for any such individual's attorneys' fees, costs, or expenses of any kind.

16.     **Applications for Approval Orders.**

16.1     *Acosta* **Litigation**

Within seven (7) business days after the Parties' execution of this Agreement, the Settling Parties hereto shall jointly move the Court for approval of the proposed Settlement in the *Acosta* Litigation. The parties will file a Joint Motion to Approve Settlement Pursuant to Section 216(b) asking the Court to issue an Approval Order similar to the proposed order attached as Exhibit E. In addition, at any time prior to (7) business days after the Parties' execution of this Agreement, the Defendant shall move the Court for Decertification of the *Acosta* Litigation using the motion attached as Exhibit D, which Plaintiffs shall not oppose. The Defendant agrees that, should the Court in *Acosta* decertify the class in response to Defendant's

Unopposed Motion to Decertify, the Defendant shall not cite, offer or otherwise rely upon said order or decision in the *Bowman* and/or *Cox* cases without the written consent of Plaintiffs. Nothing herein is intended to prejudice the *Bowman* or *Cox* plaintiffs as a result of any *Acosta* decertification order or decision, including, but not limited to, any situations where the *Bowman* or *Cox* settlements are not fully approved by the Court.

### 16.2 *Bowman* Litigation

Within seven (7) business days after the Parties' execution of this Agreement, the Settling Parties hereto shall jointly move the Court for approval of the proposed Settlement in the *Bowman* Litigation. The parties will file a Joint Motion to Approve Settlement Pursuant to Section 216(b) asking the Court to issue an Approval Order similar to the proposed order attached as Exhibit F. The Order must include;

(1)     the Court's approval of the Opt-in Claim Form substantially similar to the Opt-in Claim Form attached to this Agreement as Exhibit C; and,

(2)     the Court's Order must adopt HSG's stipulation that any Bowman Opt-in or putative Bowman Opt-in who has timely filed, and has not withdrawn, a notice of consent in the matter of *Kelly et al v. Healthcare Services Group, Inc*., E.D. Texas, Case No. 2:2013-cv-00441, can participate in the Bowman settlement without compromising any rights they may or may not have in Kelly et al v. Healthcare Services Group, Inc..

### 16.3 *Cox* Litigation

Within seven (7) business days after the Parties' execution of this Agreement, the Settling Parties hereto shall jointly move the Court for approval of the proposed Settlement in the *Cox* Litigation. The parties will file a Joint Motion to Approve Settlement Pursuant to Section 216(b) asking the Court to issue an Approval Order similar to the proposed order attached as Exhibit G.

## 17.     **Effective Date.**

This Settlement Agreement is subject to and conditioned upon the following criteria being met:

(1)     The approval of the Joint Motions to Approve Settlement Pursuant to Section 216(b) in the *Acosta* Litigation, the *Bowman* Litigation and the *Cox* Litigation;

(2)      The Court's ruling on the motion for decertification in the *Acosta* Litigation; and

(3)      The final resolution of any and all appeals in all three cases comprising the Actions.

In the event that any of these conditions are not met, this Settlement Agreement shall be voidable in its entirety, as to all three cases comprising the Actions, by either of the Parties upon written notice to the other party. Any denial or reduction in amount by the Court of the application for Class Counsel Fees and Costs or Service Awards shall not be grounds for declaring the Agreement void and will in no way affect the validity and effect of the remainder of this Settlement Agreement.

18.      **Finality; Effect of the Settlement Not Being Final.**

18.1    <u>Finality</u>. Court approval of this Settlement shall be considered final once the Final Effective Date of all three cases comprising the Actions has passed. Except as expressly stated herein, none of the obligations of Defendant pursuant to the Settlement Agreement shall become effective until the Settlement becomes final, but Defendant may waive this condition in writing.

18.2    <u>Effect of Settlement Not Being Final</u>, In the event that the Settlement as provided for in this Settlement Agreement does not become final or is voided by either party under the provisions of Paragraph 17 or 19 herein, or does not become effective for any reason other than the failure of any Party to perform such Party's obligations hereunder (except as to the Settlement not becoming final because of any appeal, which circumstance can be waived by Defendant), then the Settlement Agreement shall become null and void and of no further force and effect, and all negotiations, proceedings, and statements relating thereto shall be without prejudice as to the rights of any and all Parties hereto and their respective predecessors and successors, and all Parties and their respective predecessors and successors shall be deemed to have reverted to their respective positions in the Action as of the date and time immediately prior to the execution of this Settlement Agreement, and except as otherwise expressly provided herein. In such a circumstance, Defendant reserves all rights and defenses, including the right to move for decertification of any or all of the cases comprising the Actions.

19.      **Settlement Termination.**

19.1    In the event that (a) the Court in any of the three cases comprising the Actions declines to enter an Approval Order or to enter the Judgment or any part thereof as provided for herein, or the Settling Parties hereto fail to consent to the entry of alternative forms of Judgment, in lieu thereof, or after such consent the Court declines to enter such alternate form of

Judgment; or (b) any conditions to the Settlement are not satisfied; or (c) the Court in any of the three cases comprising the Actions disapproves this Settlement, or any term contained in this Settlement Agreement, except as provided in Paragraphs 5 and 6 (as relating to Class Counsel Fees and Costs and Service Awards), including any proper and lawful amendments hereto, and such disapproval becomes final by reason of its affirmance on appeal or lapse of time or otherwise; or (d) the Court in any of the three cases comprising the Actions approves this Settlement, including any proper and lawful amendments hereto, but any such judgment and approval is finally reversed on appeal, then, in any such event, this Settlement shall be voidable in its entirety, as to all three cases comprising the Actions, by either of the Parties upon written notice to the other party, and the Approval Order may be vacated upon application to the Court.

19.2  In such event, (a) this Settlement Agreement and the Settlement shall be terminated and become void and of no effect; (b) any action taken or to be taken in connection with this Settlement Agreement and the Settlement shall become null and void and of no effect, (c) this Settlement Agreement and the Settlement and any hearings or proceedings thereunder shall not be referred to or used as evidence for or against any party or any member of the Settlement Class in these or any other action or proceeding, and (d) all pre-trial proceedings, including discovery, shall resume thirty (30) calendar days thereafter, and the Parties shall otherwise proceed as if this Settlement had not been proposed for approval of the Court.  In the event that any monies for attorneys' fees, costs, and expenses have been paid to Class Counsel or any monies for an enhancement or settlement payment have been paid to the Named Plaintiffs, Class Counsel and the Named Plaintiffs agree to immediately return such monies within ten (10) calendar days of the aforementioned termination.  In the event such reimbursement is not made within ten (10) calendar days by the Named Plaintiffs, Defendant shall notify Class Counsel of such nonpayment, and Class Counsel shall reimburse any such amounts owed by the Named Plaintiffs to Defendant within five (5) calendar days of receiving the aforementioned written notice from Defendant.

20.  **No Admissions.**

The Settling Parties understand and agree that this Settlement Agreement is the result of a good faith compromise settlement of disputed claims, and no part of this Settlement Agreement or any conduct or written or oral statements made in connection with this Settlement and this Settlement Agreement, whether or not the Settlement is finally approved and/or consummated, may be offered as or construed to be an admission or concession of any kind by Defendant or any of the Releasing or Released Parties or anyone else.  In particular, but without limiting the generality of the foregoing, nothing about this Settlement Agreement shall be offered or construed as an admission of liability, wrongdoing, impropriety, responsibility, or fault whatsoever on the part of Defendant and/or the Released Parties, and it shall not be construed as or deemed to be evidence of,

or an admission or concession that the Named Representative or any member of the Settlement Class has suffered any damage.  In addition, this Settlement Agreement shall not be offered or be admissible in evidence against Defendant or any Released Party, except in any action or proceeding brought by or against a Named Plaintiff, a member of the Settlement Class, or Defendant to enforce its terms; or by Defendant in defense of any claims brought by a Named Plaintiff, a member of the Settlement Class, or any member of the general public.  The provisions of this paragraph shall become effective when this Settlement Agreement is signed and shall be binding on the Settling Parties and their counsel regardless of whether the Settlement Agreement is approved or terminated for any reason, or rendered null and void.

21.     **Publicity.**

Class Counsel agrees that they must immediately remove any reference from their websites and any promotional material about the Class Litigation.  In addition, Class Counsel and Defendant's counsel will not contact the media, nor comment publicly, including but not limited to communications through any social media regarding this matter.  If contacted, Class Counsel and Defendant's counsel will respond to any inquiries solely by stating that the matter has been resolved to the satisfaction of all parties.

22.     **Extensions of Time.**

Unless incorporated into an Order of the Court, the Settling Parties hereto may agree in writing to reasonable extensions of time to carry out any of the provisions of the Settlement without further order of the Court.

23.     **Force Majeure.**

The failure of any party to perform any of its obligations hereunder shall not subject such party to any liability or remedy for damages, or otherwise, where such failure is occasioned in whole or in part by acts of God, fires, earthquakes, other natural disasters, explosions, floods, wars, sabotage, or terrorist acts beyond the reasonable control of such party.

24.     **Construction.**

This Settlement Agreement was entered into after substantial good faith, arms-length negotiations between the Settling Parties' counsel.  This Settlement Agreement is entered into freely and voluntarily only after each party had carefully read and reviewed it with counsel, and it reflects the conclusion of each party that this Settlement Agreement, Order approving the same, and the respective Judgment; along with the releases, waivers, and covenants contemplated and accepted herein are in the best interest of said party.  This Settlement Agreement has been entered into without any coercion and under no duress. The Settling Parties acknowledge and agree that all Parties had an equal hand in drafting this Settlement Agreement so that it shall not be deemed to have been prepared or drafted by one party or another.  All Parties agree that the Settlement Agreement should be interpreted without reference to any canon of construction providing that any ambiguity in a contract must be construed against the drafter.  Except as expressly provided herein; this

Settlement Agreement is not intended to confer any rights or remedies upon any person other than the Settling Parties.

25.     **Due Authority of Attorneys.**

Each of the attorneys executing this Settlement Agreement on behalf of one or more parties hereto warrants and represents that he or she has been duly authorized and empowered to execute this Settlement Agreement on behalf of each such respective party and to bind them to the terms hereof.

26.     **Integration Clause.**

This Settlement Agreement (including all Exhibits annexed hereto, and the preceding MOU incorporated herein by reference) sets forth the entire agreement of the Settling Parties with respect to its subject matter and supersedes any and all other prior agreements and all negotiations leading up to the execution of this Settlement Agreement, whether oral or written, regarding the subjects covered herein.  The Settling Parties acknowledge that no representations, inducements, warranties, promises, or statements relating to the subjects covered herein, oral or otherwise, have been made by any of the Settling Parties or by anyone acting on behalf of the Settling Parties which are not embodied or incorporated by reference herein, and further agree that no other agreement, covenant, representation, inducement, promise or statement relating to the subjects covered herein not set forth in writing in this Settlement Agreement, shall be valid or binding,

27.     **Modification or Amendment.**

This Settlement Agreement may not be modified or amended except in a writing signed by all signatories hereto or their successors in interest.

28.     **Return of Documents/Data**

Class Counsel agrees to return or destroy all documents and data produced by Defendant in the Actions, including deleting any and all electronic documents or data produced by Defendant, within sixty (60) calendar days of the Final Effective Date, including all documents produced subject to any Protective Order in the Actions or pursuant to the mediation privilege.  Class Counsel will advise Defendant's Counsel in writing once this data has been returned or destroyed.

29.     **Deadlines Falling on Weekends or Holidays.**

To the extent that any deadline set forth in this Settlement Agreement falls on a Saturday, Sunday, or legal holiday, that deadline shall be continued until the following business day.

30.     **Successors.**

This Settlement Agreement shall be binding upon and inure to the benefit of the Settling Parties hereto (including members of the Settlement Class) and their respective spouses, heirs, executors, administrators, successors and assigns, and upon any corporation, partnership or other entity into or with which any Settling Party hereto may merge, combine or consolidate.  As used in the preceding sentence and elsewhere throughout this Settlement Agreement, "including" shall mean including without limitation.

31.     **Counterparts.**

This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.  Facsimile or other electronic transmission of the signatures of the Settling Parties or their representatives shall be binding on the Settling Parties.

32.     **Waivers.**

The waiver by any Party of any breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

33.     **Governing Law.**

This Settlement Agreement shall be governed by and construed, enforced, and administered in accordance with the internal laws of the State of Ohio, without regard for the law of the State regarding conflicts of laws or choice of law.  Any orders or judgments entered by the Court in conjunction with the proceedings relating to or arising out of this Settlement Agreement shall be construed and enforced under federal law, and/or the law of the state wherein the action was filed, and all issues relating to the preclusive effect of such orders or judgments shall be determined by the laws relating to the construction, enforcement, and preclusive effect of orders and judgments entered by federal courts.

34.     **Continuing Jurisdiction.**

To the extent allowed by law, the Court will retain continuing jurisdiction over the Actions for a reasonable time for the purpose of implementing, interpreting, or enforcing the Settlement Agreement, the Final Approval of the Settlement, entry of Judgment, and post-judgment issues, until all related matters are fully resolved.  Any dispute regarding the Settling Parties' obligations pursuant to this Settlement Agreement and/or interpretation of the terms of this Settlement Agreement will be presented by written motion to, and resolved by, the Court.

35.    **Regulation.**

In the event that any provision in this Settlement Agreement shall be affected by any rule, regulation, ordinance, order, directive, or statute by any unit of government, whether state, federal, or local, such rule, regulation, ordinance, order, directive, or statute shall supersede and take precedence over any such provision of this Settlement Agreement to the contrary and in no event shall any Settling Party be in violation of this Settlement Agreement nor shall this Settlement Agreement be in any way affected should any Settling Party take any action or change any of its business practices to comply with such state, federal, or local rules, regulations, ordinances, or statutes currently in force or enacted in the future.

36.    **Headings.**

The headings contained in this Settlement Agreement are for convenience and reference purposes only, and shall not be given weight in its construction.

37.    **Mutual Full Cooperation**

The Parties will fully cooperate with each other to accomplish the terms of this Settlement Agreement, including but not limited to the preparation and execution of documents necessary to implement the Settlement Agreement.  The Parties will use their best efforts to effectuate this Settlement Agreement, including during any appeals, and will use their best efforts to obtain the Court's approval of the Settlement and to defend the Settlement from any legal challenge.

38.    **No Rescission On Grounds Of Mistake.**

The Settling Parties acknowledge that they have made their own investigations of the matters covered by this Settlement Agreement to the extent they have deemed it necessary to do so.  Therefore, the Settling Parties agree that they shall not seek to set aside any part of the Settlement Agreement on the grounds of mistake.  Moreover, the Settling Parties understand, agree, and expressly assume the risk that any fact not recited, contained, or embodied in the Settlement Agreement may turn out hereinafter to be other than, different from, or contrary to the facts now known to them or believed by them to be true, and further agree that the Settlement Agreement shall be effective in all respects notwithstanding and shall not be subject to termination, modification, or rescission by reason of any such difference in facts.

39.    **Notices.**

Any notices, requests, demands, or other communications required or permitted to be given pursuant to this Settlement Agreement shall be in writing and, except as provided elsewhere in this Settlement Agreement or in any communication to the members of the Settlement Class, shall be delivered personally, via overnight delivery or via postage pre-paid first class mail, as follows: to the Settlement Class, Named Plaintiffs, and Class Counsel to the attention of:

Robert E. DeRose and Robi J. Baishnab
Barkan Meizlish Handelman Goodin DeRose Wentz LLP,

250 E. Broad St., 10th Floor
Columbus, OH 43215

Hans A. Nilges and Shannon Draher
Nilges Draher LLC
4580 Stephen Circle, N.W., Suite 201
Canton, OH 44718

and to Defendant and counsel for Defendant to the attention of:

Kenneth D. Sulzer
Proskauer Rose LLP
2049 Century Park East
Los Angeles, CA 90067-3206

Steven W. Moore
Ogletree Deakins
Wells Fargo Center
1700 Lincoln Street, Suite 4650
Denver, CO 80203

Kenneth Kleinman
Stevens & Lee
1818 Market Street, 29th Floor
Philadelphia PA 19103.

By written notice given in accordance herewith, each party may modify or change the addressee and/or address of any person identified above or pursuant hereto as the person or persons to whom all future notices shall be sent.

40.    **Signatures of Named Plaintiffs, Defendant, Defendant's Counseland Class Counsel.**

Named Plaintiffs, Defendant, Defendant's Counsel and Class Counsel indicate by signing below their approval of the form of this Settlement Agreement (including all Exhibits annexed hereto), and, in the case of counsel for Named Plaintiffs and the Settlement Class, their representation and warranty of authority to bind the Settlement Class as certified (subject to the final approval of the Court).  They further agree that they have been given adequate time to review and consider this Agreement, to discuss it with their attorneys, and to decide whether or not to sign it.

41. **Disputes.**

All disputes arising out of or related to this Settlement Agreement shall be resolved by the Court where the complaint was filed.

42. **Attorney Fees.**

In the event that any party expends attorney fees and costs in enforcing the terms of this agreement, the reasonable attorney fees and costs shall be awarded to the prevailing party. The attorney's hourly rate will be set by the attorney's then prevailing rate, and costs will include any reasonable cost.

**IN WITNESS WHEREOF**, this Settlement Agreement has been duly executed by and on behalf of the Settling Parties, as follows:

Dated: October __, 2014          By:_____
                                 Joshua Cox

Dated: October __, 2014          By:_____
                                 Stephanie Campbell

Dated: October __, 2014          By:_____
                                 Shawn Green

Dated: October __, 2014          By:_____
                                 Scott Gretchen

Dated: October __, 2014          By:_____
                                 Marc McCutchen

Dated: October __, 2014          By:_____
                                 Jere Mickler

Dated: October __, 2014          By:_____
                                 Eric Miller

Dated: October __, 2014          By:_____
                                 Casey Palumbo

Dated: October __, 2014          By:_____
                                 Zach Shockley

Dated: October __, 2014          By:_____
                                 Mathew Steinle

Dated: October __, 2014          By:_____
                                 Marie Acosta

Dated: October __, 2014                By:_____
                                            Nicole Quezada

Dated: October __, 2014                By:_____
                                            Heather Bowman


Dated: October __, 2014                By:_____
                                            Benjamin Meyers


Dated: October __, 2014                By:_____
                                            Healthcare Services Group, Inc.


Dated: October __, 2014                By:_____
                                                Robert E. DeRose
                                                Robi J. Baishnab
                                            Barkan Meizlish Handelman Goodin
                                            DeRose Wentz, LLP
                                            Counsel for Named Plaintiffs and
                                            the Settlement Class


Dated: October __, 2014                By:_____
                                                Hans A. Nilges
                                                Shannon Draher
                                            Nilges Draher, LLC
                                            Counsel for Named Plaintiffs and
                                            the Settlement Class


Dated: October __, 2014                By:_____
                                                Kenneth D. Sulzer
                                            Proskauer Rose LLP
                                            Counsel for Defendant
                                            Healthcare Services Group, Inc.


Dated: October __, 2014                By:_____
                                                Kenneth D. Kleinman
                                            Stevens & Lee, P.C.
                                            Counsel for Defendant
                                            Healthcare Services Group, Inc.

Dated: October __, 2014       By:_____

                                             Steven W. Moore
Ogletree, Deakins, Nash, Smoak &
Stewart, P.C.
Counsel for Defendant
Healthcare Services Group, Inc.

Dated: October __, 2014       By:_____

                                             James E. Davidson
Ice Miller LLP
Counsel for Defendant
Healthcare Services Group, Inc.

41.  **Disputes.**

All disputes arising out of or related to this Settlement Agreement shall be resolved by the Court where the complaint was filed.

42.  **Attorney Fees.**

In the event that any party expends attorney fees and costs in enforcing the terms of this agreement, the reasonable attorney fees and costs shall be awarded to the prevailing party. The attorney's hourly rate will be set by the attorney's then prevailing rate, and costs will include any reasonable cost.

**IN WITNESS WHEREOF,** this Settlement Agreement has been duly executed by and on behalf of the Settling Parties, as follows:

Dated: October __, 2014                    By: _J.H. Cox_____
                                           Joshua Cox

Dated: October __, 2014                    By:_____
                                           Stephanie Campbell

Dated: October __, 2014                    By:_____
                                           Shawn Green

Dated: October __, 2014                    By:_____
                                           Scott Gretchen

Dated: October __, 2014                    By:_____
                                           Marc McCutchen

Dated: October __, 2014                    By:_____
                                           Jere Mickler

Dated: October __, 2014                    By:_____
                                           Eric Miller

Dated: October __, 2014                    By:_____
                                           Casey Palumbo

Dated: October __, 2014                    By:_____
                                           Zach Shockley

Dated: October __, 2014                    By:_____
                                           Mathew Steinle

Dated: October __, 2014                    By:_____
                                           Marie Acosta

26

41.　**Disputes.**

All disputes arising out of or related to this Settlement Agreement shall be resolved by the Court where the complaint was filed.

42.　**Attorney Fees.**

In the event that any party expends attorney fees and costs in enforcing the terms of this agreement, the reasonable attorney fees and costs shall be awarded to the prevailing party. The attorney's hourly rate will be set by the attorney's then prevailing rate, and costs will include any reasonable cost.

**IN WITNESS WHEREOF**, this Settlement Agreement has been duly executed by and on behalf of the Settling Parties, as follows:

Dated: October ___, 2014　　　　By:_____
　　　　　　　　　　　　　　　　　Joshua Cox

Dated: October 24, 2014　　　　By: _Stephanie Campbell_____
　　　　　　　　　　　　　　　　　Stephanie Campbell

Dated: October ___, 2014　　　　By:_____
　　　　　　　　　　　　　　　　　Shawn Green

Dated: October ___, 2014　　　　By:_____
　　　　　　　　　　　　　　　　　Scott Gretchen

Dated: October ___, 2014　　　　By:_____
　　　　　　　　　　　　　　　　　Marc McCutchen

Dated: October ___, 2014　　　　By:_____
　　　　　　　　　　　　　　　　　Jere Mickler

Dated: October 24, 2014　　　　By:_Eric Miller_____
　　　　　　　　　　　　　　　　　Eric Miller

Dated: October ___, 2014　　　　By:_____
　　　　　　　　　　　　　　　　　Casey Palumbo

Dated: October ___, 2014　　　　By:_____
　　　　　　　　　　　　　　　　　Zach Shockley

Dated: October ___, 2014　　　　By:_____
　　　　　　　　　　　　　　　　　Mathew Steinle

Dated: October ___, 2014　　　　By:_____
　　　　　　　　　　　　　　　　　Marie Acosta

26

41. **Disputes.**

All disputes arising out of or related to this Settlement Agreement shall be resolved by the Court where the complaint was filed.

42. **Attorney Fees.**

In the event that any party expends attorney fees and costs in enforcing the terms of this agreement, the reasonable attorney fees and costs shall be awarded to the prevailing party. The attorney's hourly rate will be set by the attorney's then prevailing rate, and costs will include any reasonable cost.

**IN WITNESS WHEREOF,** this Settlement Agreement has been duly executed by and on behalf of the Settling Parties, as follows:

Dated: October ___, 2014          By:_____
                                          Joshua Cox

Dated: October ___, 2014          By:_____
                                          Stephanie Campbell

Dated: October 24, 2014           By: _Shaw M. Greene_____
                                          ~~Shawn Green~~ Shaun Greene SIMG

Dated: October ___, 2014          By:_____
                                          Scott Gretchen

Dated: October ___, 2014          By:_____
                                          Marc McCutchen

Dated: October ___, 2014          By:_____
                                          Jere Mickler

Dated: October ___, 2014          By:_____
                                          Eric Miller

Dated: October ___, 2014          By:_____
                                          Casey Palumbo

Dated: October ___, 2014          By:_____
                                          Zach Shockley

Dated: October ___, 2014          By:_____
                                          Mathew Steinle

Dated: October ___, 2014          By:_____
                                          Marie Acosta

26

41.    **Disputes.**

All disputes arising out of or related to this Settlement Agreement shall be resolved by the Court where the complaint was filed.

42.    **Attorney Fees.**

In the event that any party expends attorney fees and costs in enforcing the terms of this agreement, the reasonable attorney fees and costs shall be awarded to the prevailing party. The attorney's hourly rate will be set by the attorney's then prevailing rate, and costs will include any reasonable cost.

**IN WITNESS WHEREOF**, this Settlement Agreement has been duly executed by and on behalf of the Settling Parties, as follows:

Dated: October ___, 2014             By:_____
                                          Joshua Cox

Dated: October ___, 2014             By:_____
                                          Stephanie Campbell

Dated: October ___, 2014             By:_____
                                          Shawn Green

Dated: October 2 7, 2014             By: _____
                                          Scott Gretchen

Dated: October ___, 2014             By:_____
                                          Marc McCutchen

Dated: October ___, 2014             By:_____
                                          Jere Mickler

Dated: October ___, 2014             By:_____
                                          Eric Miller

Dated: October ___, 2014             By:_____
                                          Casey Palumbo

Dated: October ___, 2014             By:_____
                                          Zach Shockley

Dated: October ___, 2014             By:_____
                                          Mathew Steinle

Dated: October ___, 2014             By:_____
                                          Marie Acosta

26

41. **Disputes.**

All disputes arising out of or related to this Settlement Agreement shall be resolved by the Court where the complaint was filed.

42. **Attorney Fees.**

In the event that any party expends attorney fees and costs in enforcing the terms of this agreement, the reasonable attorney fees and costs shall be awarded to the prevailing party. The attorney's hourly rate will be set by the attorney's then prevailing rate, and costs will include any reasonable cost.

**IN WITNESS WHEREOF,** this Settlement Agreement has been duly executed by and on behalf of the Settling Parties, as follows:

Dated: October ___, 2014      By:_____
           Joshua Cox

Dated: October ___, 2014      By:_____
           Stephanie Campbell

Dated: October ___, 2014      By:_____
           Shawn Green

Dated: October ___, 2014      By:_____
           Scott Gretchen

Dated: October 24, 2014      By:_____
           Marc McCutchen

Dated: October ___, 2014      By:_____
           Jere Mickler

Dated: October ___, 2014      By:_____
           Eric Miller

Dated: October ___, 2014      By:_____
           Casey Palumbo

Dated: October ___, 2014      By:_____
           Zach Shockley

Dated: October ___, 2014      By:_____
           Mathew Steinle

Dated: October ___, 2014      By:_____
           Marie Acosta

26

41.    **Disputes.**

All disputes arising out of or related to this Settlement Agreement shall be resolved by the Court where the complaint was filed.

42.    **Attorney Fees.**

In the event that any party expends attorney fees and costs in enforcing the terms of this agreement, the reasonable attorney fees and costs shall be awarded to the prevailing party. The attorney's hourly rate will be set by the attorney's then prevailing rate, and costs will include any reasonable cost.

**IN WITNESS WHEREOF**, this Settlement Agreement has been duly executed by and on behalf of the Settling Parties, as follows:

Dated: October ___, 2014            By:_____
                                         Joshua Cox

Dated: October ___, 2014            By:_____
                                         Stephanie Campbell

Dated: October ___, 2014            By:_____
                                         Shawn Green

Dated: October ___, 2014            By:_____
                                         Scott Gretchen

Dated: October ___, 2014            By:_____
                                         Marc McCutchen

Dated: October 24, 2014             By:_____
                                         Jere Mickler

Dated: October ___, 2014            By:_____
                                         Eric Miller

Dated: October ___, 2014            By:_____
                                         Casey Palumbo

Dated: October ___, 2014            By:_____
                                         Zach Shockley

Dated: October ___, 2014            By:_____
                                         Mathew Steinle

Dated: October ___, 2014            By:_____
                                         Marie Acosta

26

41.     **Disputes.**

All disputes arising out of or related to this Settlement Agreement shall be resolved by the Court where the complaint was filed.

42.     **Attorney Fees.**

In the event that any party expends attorney fees and costs in enforcing the terms of this agreement, the reasonable attorney fees and costs shall be awarded to the prevailing party. The attorney's hourly rate will be set by the attorney's then prevailing rate, and costs will include any reasonable cost.

**IN WITNESS WHEREOF,** this Settlement Agreement has been duly executed by and on behalf of the Settling Parties, as follows:

Dated: October ___, 2014          By:_____
                                        Joshua Cox

Dated: October ___, 2014          By:_____
                                        Stephanie Campbell

Dated: October ___, 2014          By:_____
                                        Shawn Green

Dated: October ___, 2014          By:_____
                                        Scott Gretchen

Dated: October ___, 2014          By:_____
                                        Marc McCutchen

Dated: October ___, 2014          By:_____
                                        Jere Mickler

Dated: October 24, 2014           By:_____
                                        Eric Miller

Dated: October 24, 2014           By:_____
                                        Casey Palumbo

Dated: October ___, 2014          By:_____
                                        Zach Shockley

Dated: October ___, 2014          By:_____
                                        Mathew Steinle

Dated: October ___, 2014          By:_____
                                        Marie Acosta

26

41. **Disputes.**

All disputes arising out of or related to this Settlement Agreement shall be resolved by the Court where the complaint was filed.

42. **Attorney Fees.**

In the event that any party expends attorney fees and costs in enforcing the terms of this agreement, the reasonable attorney fees and costs shall be awarded to the prevailing party. The attorney's hourly rate will be set by the attorney's then prevailing rate, and costs will include any reasonable cost.

**IN WITNESS WHEREOF**, this Settlement Agreement has been duly executed by and on behalf of the Settling Parties, as follows:

Dated: October ___, 2014      By:_____
                                              Joshua Cox

Dated: October ___, 2014      By:_____
                                              Stephanie Campbell

Dated: October ___, 2014      By:_____
                                              Shawn Green

Dated: October ___, 2014      By:_____
                                              Scott Gretchen

Dated: October ___, 2014      By:_____
                                              Marc McCutchen

Dated: October ___, 2014      By:_____
                                              Jere Mickler

Dated: October ___, 2014      By:_____
                                              Eric Miller

Dated: October ___, 2014      By:_____
                                              Casey Palumbo

Dated: October 28, 2014      By:_____
                                              Zach Shockley

Dated: October ___, 2014      By:_____
                                              Mathew Steinle

Dated: October ___, 2014      By:_____
                                              Marie Acosta

26

41. **Disputes.**

All disputes arising out of or related to this Settlement Agreement shall be resolved by the Court where the complaint was filed.

42. **Attorney Fees.**

In the event that any party expends attorney fees and costs in enforcing the terms of this agreement, the reasonable attorney fees and costs shall be awarded to the prevailing party. The attorney's hourly rate will be set by the attorney's then prevailing rate, and costs will include any reasonable cost.

**IN WITNESS WHEREOF**, this Settlement Agreement has been duly executed by and half of the Settling Parties, as follows:

Dated: October ___, 2014                 By:_____
                                          Joshua Cox

Dated: October ___, 2014                 By:_____
                                          Stephanie Campbell

Dated: October ___, 2014                 By:_____
                                          Shawn Green

Dated: October ___, 2014                 By:_____
                                          Scott Gretchen

Dated: October ___, 2014                 By:_____
                                          Marc McCutchen

Dated: October ___, 2014                 By:_____
                                          Jere Mickler

Dated: October ___, 2014                 By:_____
                                          Eric Miller

Dated: October ___, 2014                 By:_____
                                          Casey Palumbo

Dated: October ___, 2014                 By:_____
                                          Zach Shockley

Dated: October _28_ 2014                 By:_____
                                          Mathew Steinle

Dated: October ___, 2014                 By:_____
                                          Marie Acosta

26

41.   **Disputes.**

All disputes arising out of or related to this Settlement Agreement shall be resolved by the Court where the complaint was filed.

42.   **Attorney Fees.**

In the event that any party expends attorney fees and costs in enforcing the terms of this agreement, the reasonable attorney fees and costs shall be awarded to the prevailing party. The attorney's hourly rate will be set by the attorney's then prevailing rate, and costs will include any reasonable cost.

**IN WITNESS WHEREOF**, this Settlement Agreement has been duly executed by and on behalf of the Settling Parties, as follows:

Dated: October ___, 2014                By:_____
                                        Joshua Cox

Dated: October ___, 2014                By:_____
                                        Stephanie Campbell

Dated: October ___, 2014                By:_____
                                        Shawn Green

Dated: October ___, 2014                By:_____
                                        Scott Gretchen

Dated: October ___, 2014                By:_____
                                        Marc McCutchen

Dated: October ___, 2014                By:_____
                                        Jere Mickler

Dated: October ___, 2014                By:_____
                                        Eric Miller

Dated: October ___, 2014                By:_____
                                        Casey Palumbo

Dated: October ___, 2014                By:_____
                                        Zach Shockley

Dated: October ___, 2014                By:_____
                                        Mathew Steinle

Dated: October 24, 2014                 By: Marie Acosta
                                        Marie Acosta

26

Dated: October 24, 2014

By: _Nicole Quezada_
Nicole Quezada

Dated: October __, 2014

By:_____
Heather Bowman

Dated: October __, 2014

By:_____
Benjamin Meyers

Dated: October __, 2014

By:_____
Healthcare Services Group, Inc.

Dated: October __, 2014

By:_____
Robert E. DeRose
Robi J. Baishnab
Barkan Meizlish Handelman Goodin
DeRose Wentz, LLP
Counsel for Named Plaintiffs and
the Settlement Class

Dated: October __, 2014

By:_____
Hans A. Nilges
Shannon Draher
Nilges Draher, LLC
Counsel for Named Plaintiffs and
the Settlement Class

Dated: October __, 2014

By:_____
Kenneth D. Sulzer
Proskauer Rose LLP
Counsel for Defendant
Healthcare Services Group, Inc.

Dated: October __, 2014

By:_____
Kenneth D. Kleinman
Stevens & Lee, P.C.
Counsel for Defendant
Healthcare Services Group, Inc.

27

Dated: October __, 2014

By:_____
    Nicole Quezada

Dated: October __, 2014

By:_____
    Heather Bowman

Dated: October __, 2014

By:_____
    Benjamin Meyers

Dated: October __, 2014

By:_____
    Healthcare Services Group, Inc.

Dated: October __, 2014

By:_____
    Robert E. DeRose
    Robi J. Baishnab
    Barkan Meizlish Handelman Goodin
    DeRose Wentz, LLP
    Counsel for Named Plaintiffs and
    the Settlement Class

Dated: October __, 2014

By:_____
    Hans A. Nilges
    Shannon Draher
    Nilges Draher, LLC
    Counsel for Named Plaintiffs and
    the Settlement Class

Dated: October __, 2014

By:_____
    Kenneth D. Sulzer
    Proskauer Rose LLP
    Counsel for Defendant
    Healthcare Services Group, Inc.

Dated: October __, 2014

By:_____
    Kenneth D. Kleinman
    Stevens & Lee, P.C.
    Counsel for Defendant
    Healthcare Services Group, Inc.

27

Dated: October ___, 2014          By:_____
                                       Nicole Quezada

Dated: October ___, 2014          By:_____
                                       Heather Bowman

Dated: October 25, 2014           By: _____
                                       Benjamin Meyers

Dated: October ___, 2014          By: _____
                                       Healthcare Services Group, Inc.

Dated: October ___, 2014          By:_____
                                       Robert E. DeRose
                                       Robi J. Baishnab
                                       Barkan Meizlish Handelman Goodin
                                       DeRose Wentz, LLP
                                       Counsel for Named Plaintiffs and
                                       the Settlement Class

Dated: October ___, 2014          By:_____
                                       Hans A. Nilges
                                       Shannon Draher
                                       Nilges Draher, LLC
                                       Counsel for Named Plaintiffs and
                                       the Settlement Class

Dated: October ___, 2014          By:_____
                                       Kenneth D. Sulzer
                                       Proskauer Rose LLP
                                       Counsel for Defendant
                                       Healthcare Services Group, Inc.

Dated: October ___, 2014          By:_____
                                       Kenneth D. Kleinman
                                       Stevens & Lee, P.C.
                                       Counsel for Defendant
                                       Healthcare Services Group, Inc.

27

Dated: October ___, 2014      By:_____
                                  Mathew Steinle

Dated: October ___, 2014      By:_____
                                  Marie Acosta

Dated: October ___, 2014      By:_____
                                  Nicole Quezada

Dated: October ___, 2014      By:_____
                                  Heather Bowman

Dated: October ___, 2014      By:_____
                                  Benjamin Meyers

                _November_
Dated: ~~October~~ 3, 2014    By:_____
                                  Healthcare Services Group, Inc.

Dated: October ___, 2014      By:_____
                                  Robert E. DeRose
                                  Robi J. Baishnab
                                  Barkan Meizlish Handelman Goodin
                                  DeRose Wentz, LLP
                                  Counsel for Named Plaintiffs and
                                  the Settlement Class

Dated: October ___, 2014      By:_____
                                  Hans A. Nilges
                                  Shannon Draher
                                  Nilges Draher, LLC
                                  Counsel for Named Plaintiffs and
                                  the Settlement Class

Dated: October ___, 2014      By:_____
                                  Kenneth D. Sulzer
                                  Proskauer Rose LLP
                                  Counsel for Defendant
                                  Healthcare Services Group, Inc.

Dated: October ___, 2014      By:_____

Dated: October ___, 2014                By:_____
                                           Mathew Steinle

Dated: October ___, 2014                By:_____
                                           Marie Acosta

Dated: October ___, 2014                By:_____
                                           Nicole Quezada

Dated: October ___, 2014                By:_____
                                           Heather Bowman

Dated: October ___, 2014                By:_____
                                           Benjamin Meyers

Dated: October ___, 2014                By:_____
                                           Healthcare Services Group, Inc.

Dated: October 3_, 2014                 By:_____
                                           Robert E. DeRose
                                           Robi J. Baishnab
                                           Barkan Meizlish Handelman Goodin
                                           DeRose Wentz, LLP
                                           Counsel for Named Plaintiffs and
                                           the Settlement Class

Dated: October 3_, 2014                 By:_____
                                           Hans A. Nilges
                                           Shannon Draher
                                           Nilges Draher, LLC
                                           Counsel for Named Plaintiffs and
                                           the Settlement Class

Dated: October 3_, 2014                 By:_____
                                           Kenneth D. Sulzer
                                           Proskauer Rose LLP
                                           Counsel for Defendant
                                           Healthcare Services Group, Inc.

Dated: October ___, 2014                By:_____

27

Dated: October ___, 2014      By:_____

                                               Mathew Steinle

Dated: October ___, 2014      By:_____

                                               Marie Acosta

Dated: October ___, 2014      By:_____

                                               Nicole Quezada

Dated: October ___, 2014      By:_____

                                               Heather Bowman

Dated: October ___, 2014      By:_____

                                               Benjamin Meyers

Dated: October ___, 2014      By:_____

                                               Healthcare Services Group, Inc.

Dated: October ___, 2014      By:_____

                                               Robert E. DeRose
                                               Robi J. Baishnab
                                               Barkan Meizlish Handelman Goodin
                                               DeRose Wentz, LLP
                                               Counsel for Named Plaintiffs and
                                               the Settlement Class

Dated: October ___, 2014      By:_____

                                               Hans A. Nilges
                                               Shannon Draher
                                               Nilges Draher, LLC
                                               Counsel for Named Plaintiffs and
                                               the Settlement Class

Dated: October ___, 2014      By:_____

                                               Kenneth D. Sulzer
                                               Proskauer Rose LLP
                                               Counsel for Defendant
                                               Healthcare Services Group, Inc.

Dated: October 31, 2014      By:_____

Kenneth D. Kleinman
Stevens & Lee, P.C.
Counsel for Defendant
Healthcare Services Group, Inc.

Dated: October **31**, 2014

By: _Steven W. Moore_
 Steven W. Moore
Ogletree, Deakins, Nash, Smoak &
Stewart, P.C.
Counsel for Defendant
Healthcare Services Group, Inc.

Dated: ~~October~~ *Nov.* **6**, 2014

By: _James E. Davidson /RJB_
 James E. Davidson
Ice Miller LLP
Counsel for Defendant
Healthcare Services Group, Inc.

28

# Exhibit A

Healthcare Services Litigation
**Confidential Settlement Communication Under R. Evid. 408**

| Name | CASE | Date Consent Filed | 45 Hours | Service Payment | Total |
|---|---|---|---|---|---|
| Acosta, Marie D. | ACOSTA | 1/7/2013 | $3,200.00 | $5,000.00 | $8,200.00 |
| Anderson, William R. | ACOSTA | DISMISSED | $0.00 | $0.00 | $0.00 |
| Barr, Sandra | ACOSTA | 5/19/2014 | $2,545.20 | $0.00 | $2,545.20 |
| Calzada, Debbie P. | ACOSTA | 4/22/2014 | $2,679.46 | $0.00 | $2,679.46 |
| Carpenter, Tammie L. | ACOSTA | 4/29/2014 | $5,293.34 | $0.00 | $5,293.34 |
| Charter, John | ACOSTA | 4/24/2014 | $1,200.00 | $0.00 | $1,200.00 |
| Coffman, Brock | ACOSTA | 5/1/2014 | $1,200.00 | $0.00 | $1,200.00 |
| Cotten, Diana L. | ACOSTA | 4/28/2014 | $3,371.64 | $0.00 | $3,371.64 |
| Crawford, Thomas | ACOSTA | 12/18/2013 | $4,488.33 | $0.00 | $4,488.33 |
| Dennison, Paul | ACOSTA | 4/15/2014 | $5,351.05 | $0.00 | $5,351.05 |
| Estrada, Jose Humberto | ACOSTA | 4/15/2014 | $1,720.45 | $0.00 | $1,720.45 |
| Florez, Andrea L. | ACOSTA | 4/22/2014 | $1,200.00 | $0.00 | $1,200.00 |
| Franck, Jimson | ACOSTA | 5/21/2014 | $2,020.05 | $0.00 | $2,020.05 |
| Lee, Jonathan | ACOSTA | 4/28/2014 | $13,244.84 | $0.00 | $13,244.84 |
| Martinez, Justin E. | ACOSTA | 4/28/2014 | $9,637.44 | $0.00 | $9,637.44 |
| McAndries, William C. | ACOSTA | 4/17/2014 | $1,894.03 | $0.00 | $1,894.03 |
| Mueller, Brandy | ACOSTA | 2/3/2014 | $7,367.26 | $0.00 | $7,367.26 |
| O'Dell, Aspen | ACOSTA | 4/24/2014 | $7,544.74 | $0.00 | $7,544.74 |
| Oneill, Alyce M. | ACOSTA | 5/12/2014 | $1,200.00 | $0.00 | $1,200.00 |
| Quezada, Nicole | ACOSTA | 1/13/2014 | $3,285.24 | $5,000.00 | $8,285.24 |
| Sanchez, James F. | ACOSTA | 4/8/2014 | $7,280.39 | $0.00 | $7,280.39 |
| Tabb, John | ACOSTA | 5/2/2014 | $4,881.74 | $0.00 | $4,881.74 |
| Bowman, Heather | BOWMAN | 7/22/2013 | $2,659.18 | $5,000.00 | $7,659.18 |
| Lawson, Carmen | BOWMAN | 8/13/2013 | $1,200.00 | $0.00 | $1,200.00 |
| Meyers, Ben | BOWMAN | 5/31/2013 | $1,200.00 | $5,000.00 | $6,200.00 |
| Phebus, Ryan | BOWMAN | 7/18/2013 | $1,200.00 | $0.00 | $1,200.00 |
| Putatitive Bowman Opt-ins | BOWMAN | | $114,259.18 | $0.00 | $114,259.18 |
| Russell, Raymond | BOWMAN | 6/3/2013 | $1,200.00 | $0.00 | $1,200.00 |
| Watson, James | BOWMAN | 5/31/2013 | $1,200.00 | $0.00 | $1,200.00 |
| Adams, Brandy | COX | 8/9/2013 | $19,350.00 | $0.00 | $19,350.00 |
| Adkins, Matthew | COX | 7/5/2013 | $1,200.00 | $0.00 | $1,200.00 |
| Altizer, David L. | COX | 7/17/2013 | $3,650.93 | $0.00 | $3,650.93 |
| Appleman, Rosalee | COX | 7/18/2013 | $19,958.25 | $0.00 | $19,958.25 |
| Baker, Jennifer | COX | 7/12/2013 | $8,585.31 | $0.00 | $8,585.31 |
| Beamer, Jr. Don P. | COX | 7/10/2013 | $6,909.23 | $0.00 | $6,909.23 |
| Becerra, Christopher M. | COX | 7/18/2013 | $1,200.00 | $0.00 | $1,200.00 |
| Blair, Steven | COX | 8/5/2013 | $6,562.50 | $0.00 | $6,562.50 |
| Blazosky, Jacob | COX | 8/2/2013 | $2,682.31 | $0.00 | $2,682.31 |
| Bloomfield, Julie May | COX | 7/24/2013 | $15,705.64 | $0.00 | $15,705.64 |
| Brown, Andrea | COX | 9/9/2013 | $13,465.73 | $0.00 | $13,465.73 |
| Campbell, Stephanie | COX | 7/5/2013 | $10,599.58 | $5,000.00 | $15,599.58 |
| Carroll, James H. | COX | 7/5/2013 | $8,650.44 | $0.00 | $8,650.44 |
| Castle, Lori J. | COX | 7/5/2013 | $2,495.98 | $0.00 | $2,495.98 |
| Clark, Kimberly D. | COX | 8/9/2013 | $9,896.25 | $0.00 | $9,896.25 |

**Healthcare Services Litigation**
**Confidential Settlement Communication Under R. Evid. 408**

| | | | | | |
|---|---|---|---|---|---|
| Cline, Melissa A. | COX | 8/5/2013 | $12,218.53 | $0.00 | $12,218.53 |
| Coffee, David F. | COX | 8/12/2013 | $1,200.00 | $0.00 | $1,200.00 |
| Cole, Scott | COX | 7/3/2013 | $11,834.15 | $0.00 | $11,834.15 |
| Collins, Linda | COX | 7/29/2013 | $1,200.00 | $0.00 | $1,200.00 |
| Cox, Joshua | COX | 4/5/2013 | $5,472.21 | $5,000.00 | $10,472.21 |
| Cozart, Bonnie J. | COX | 7/2/2013 | $1,200.00 | $0.00 | $1,200.00 |
| Crum, Jedidiah R. Sr. | COX | 7/8/2013 | $2,383.83 | $0.00 | $2,383.83 |
| Darnell, Tresia | COX | 7/5/2013 | $7,156.23 | $0.00 | $7,156.23 |
| Dawson, Kenneth A. | COX | 7/5/2013 | $2,769.23 | $0.00 | $2,769.23 |
| Eaton, Misty D. | COX | 7/3/2013 | $1,802.89 | $0.00 | $1,802.89 |
| Elerick, Tom | COX | 7/24/2013 | $4,032.70 | $0.00 | $4,032.70 |
| Ellis, Angela | COX | 7/31/2013 | $1,200.00 | $0.00 | $1,200.00 |
| Farmer, John Paul | COX | 7/16/2013 | $7,134.34 | $0.00 | $7,134.34 |
| Ferlotte, Sallie | COX | Dietary | $250.00 | $0.00 | $250.00 |
| Fitzgerald, Benjamin M. | COX | 7/15/2013 | $6,849.23 | $0.00 | $6,849.23 |
| Glaskox, Cheryl | COX | 7/5/2013 | $8,769.24 | $0.00 | $8,769.24 |
| Greene, Shaun | COX | 4/4/2013 | $2,163.47 | $5,000.00 | $7,163.47 |
| Greene, Tyler | COX | 4/4/2013 | $2,956.43 | $0.00 | $2,956.43 |
| Gretchen, Scott | COX | 6/26/2013 | $4,521.63 | $5,000.00 | $9,521.63 |
| Gutierrez, Trina | COX | 8/2/2013 | $8,877.46 | $0.00 | $8,877.46 |
| Hetrick, Mark | COX | Dietary | $250.00 | $0.00 | $250.00 |
| Hodnett, Elaine K. | COX | 7/29/2013 | $12,359.58 | $0.00 | $12,359.58 |
| Hoerig, Daniel J. | COX | 7/10/2013 | $4,462.50 | $0.00 | $4,462.50 |
| Howard, Robert | COX | 8/9/2013 | $1,656.51 | $0.00 | $1,656.51 |
| Hunt, Katherine (Hernandez) | COX | 7/5/2013 | $7,032.03 | $0.00 | $7,032.03 |
| Ison, Lissa | COX | 8/9/2013 | $13,024.80 | $0.00 | $13,024.80 |
| Jaramillo, Jacqueline | COX | 8/29/2013 | $1,312.50 | $0.00 | $1,312.50 |
| Javorich, Jennifer | COX | 7/18/2013 | $3,025.00 | $0.00 | $3,025.00 |
| Jolliff, Rachel | COX | 7/29/2013 | $3,497.61 | $0.00 | $3,497.61 |
| Kidwell, Carol | COX | 7/10/2013 | $16,623.09 | $0.00 | $16,623.09 |
| Kieswetter, Marcia A. | COX | Dietary | $250.00 | $0.00 | $250.00 |
| Kline, Martina | COX | 8/14/2013 | $4,786.68 | $0.00 | $4,786.68 |
| Kostura, Ryan | COX | 7/5/2013 | $1,200.00 | $0.00 | $1,200.00 |
| Kritzer, Kathy | COX | 7/3/2013 | $1,200.00 | $0.00 | $1,200.00 |
| Krsak, Christopher L. | COX | 7/19/2013 | $3,724.88 | $0.00 | $3,724.88 |
| Larew, Christopher E. | COX | 7/8/2013 | $20,224.76 | $0.00 | $20,224.76 |
| Lewis, Amber | COX | Dietary | $250.00 | $0.00 | $250.00 |
| Lischeid, Greg | COX | 7/30/2013 | $17,468.05 | $0.00 | $17,468.05 |
| Lyons, Tim | COX | 9/10/2013 | $2,626.16 | $0.00 | $2,626.16 |
| McCutchen, Marc | COX | 3/26/2013 | $15,541.62 | $5,000.00 | $20,541.62 |
| McFadden, Joshua | COX | 7/2/2013 | $10,749.25 | $0.00 | $10,749.25 |
| Mickler, Jere | COX | 6/25/2013 | $18,860.47 | $5,000.00 | $23,860.47 |
| Miller, Eric | COX | 7/19/2013 | $8,513.25 | $5,000.00 | $13,513.25 |
| Nash, William Judson | COX | 7/13/2013 | $6,401.17 | $0.00 | $6,401.17 |
| Nemeth, Tara C. | COX | 7/3/2013 | $1,200.00 | $0.00 | $1,200.00 |
| O'Connell, Elizabeth | COX | Dietary | $250.00 | $0.00 | $250.00 |
| Palumbo, Casey | COX | 5/3/2013 | $6,986.17 | $5,000.00 | $11,986.17 |

Healthcare Services Litigation

**Confidential Settlement Communication Under R. Evid. 408**

| Panagopoulos, Kevin L. | COX | 7/8/2013 | $2,151.63 | $0.00 | $2,151.63 |
|---|---|---|---|---|---|
| Perkins, Carl | COX | 7/18/2013 | $8,080.87 | $0.00 | $8,080.87 |
| Phebus, Terry | COX | DISMISSED | $0.00 | $0.00 | $0.00 |
| Profitt, Lennox W. | COX | 7/8/2013 | $2,250.00 | $0.00 | $2,250.00 |
| Rake, Jay | COX | 8/10/2013 | $11,559.38 | $0.00 | $11,559.38 |
| Reiter, Robert | COX | 7/10/2013 | $2,048.08 | $0.00 | $2,048.08 |
| Robbins, Nelson W. | COX | 7/8/2013 | $6,552.19 | $0.00 | $6,552.19 |
| Roberts, Sr. Anthony M. | COX | 7/5/2013 | $8,784.84 | $0.00 | $8,784.84 |
| Sabo, Brian | COX | 7/30/2013 | $7,779.79 | $0.00 | $7,779.79 |
| Sanders, Joni | COX | 3/25/2013 | $18,428.92 | $0.00 | $18,428.92 |
| Sanyang (Hawes), Dawn | COX | Dietary | $250.00 | $0.00 | $250.00 |
| Seidel, Dave | COX | 7/8/2013 | $16,984.88 | $0.00 | $16,984.88 |
| Shockley, Zach | COX | 6/5/2013 | $5,770.26 | $5,000.00 | $10,770.26 |
| Skillman, Carmen L. | COX | 7/19/2013 | $1,873.35 | $0.00 | $1,873.35 |
| Sloan, Jerred M. | COX | 7/19/2013 | $3,778.85 | $0.00 | $3,778.85 |
| Slusher, Lori | COX | 4/23/2013 | $15,863.92 | $0.00 | $15,863.92 |
| Soltis, Daniel J. | COX | 7/22/2013 | $1,200.00 | $0.00 | $1,200.00 |
| Steinle, Matt | COX | 4/9/2013 | $6,886.28 | $5,000.00 | $11,886.28 |
| Studzinski, Zachary E. | COX | 8/10/2013 | $1,556.54 | $0.00 | $1,556.54 |
| Tucholski, Cory | COX | 3/20/2013 | $3,786.06 | $0.00 | $3,786.06 |
| Ulis, Kevin W. | COX | 7/12/2013 | $2,625.19 | $0.00 | $2,625.19 |
| Virgin, Denise L. | COX | 7/17/2013 | $1,200.00 | $0.00 | $1,200.00 |
| Von Coburg, Princess R. | COX | Dietary | $250.00 | $0.00 | $250.00 |
| Washington, David Sr. | COX | 7/15/2013 | $6,611.88 | $0.00 | $6,611.88 |
| Washington, David W. Jr. | COX | 7/11/2013 | $3,526.21 | $0.00 | $3,526.21 |
| Webber, Virginia | COX | Dietary | $250.00 | $0.00 | $250.00 |
| Webster, Kathryn | COX | 7/8/2013 | $3,187.50 | $0.00 | $3,187.50 |
| Winker, Keith R. | COX | 7/17/2017 | $1,200.00 | $0.00 | $1,200.00 |
| Wood, Tamera L. | COX | 7/20/2013 | $7,983.16 | $0.00 | $7,983.16 |
| Young, Anthony | COX | 7/13/2013 | $5,676.91 | $0.00 | $5,676.91 |
| **TOTAL** | | | **$780,000.00** | **$70,000.00** | **$850,000.00** |

# Exhibit B

## Healthcare Services Group, Inc. Litigation
Memorandum of Understanding

Plaintiffs Marie Acosta, Heather Bowman, Joshua Cox, Marc McCutchen, Benjamin Meyers, and Mathew Steinle (collectively, "Named Plaintiffs" or "Plaintiffs") and Defendant Healthcare Services Group, Inc. ("Defendant") (together with the Named Plaintiffs, the "Parties"), by and through their attorneys, agree as follows:

1.   **The Settlement**: The settlement described in this Memorandum of Understanding ("MOU") resolves the following three separate lawsuits filed by the Named Plaintiffs against the Defendant: *Acosta v. Healthcare Services Group, Inc.* (D. Colo. Case No. 1:13-cv-03429) ("the *Acosta* Litigation"); *Bowman v. Healthcare Services Group, Inc.*, (N.D. Ohio Case No. 3:13-cv-1924) ("the *Bowman* Litigation"); and *Cox v. Healthcare Services Group, Inc.* (N.D. Ohio Case No. 3:13-cv-00293) ("the *Cox* Litigation") (collectively, the "Class Litigation").

2.   **Enforceability**: This MOU becomes enforceable upon its execution by (a) one member of counsel for each Named Plaintiff and (b) one member of counsel for Defendant.

3.   **No Admission of Liability**: Neither this MOU, any documents relating to the settlement, nor the settlement shall be construed as an admission of liability on the part of the Defendant.

4.   **Settlement Class**: The Settlement Class consists of the following individuals:

     a.   All individuals that opted in to the class certified by the United States District Court for the District of Colorado on March 31, 2014, in *Acosta v. Healthcare Services Group, Inc*. ("the *Acosta* Class");

     b.   All individuals that opt in to the class certified by the United States District Court for the Northern District of Ohio on July 14, 2014, in *Bowman v. Healthcare Services Group, Inc*.("the *Bowman* Class"); and

     c.   All individuals that opted in to the classes certified by the United States District Court for the Northern District of Ohio on June 4, 2013, in *Cox v. Healthcare Services Group, Inc*.("the *Cox* Class")

5.   **Gross Settlement Amount**: Defendant will set aside the amount of One Million Three Hundred Fifty Thousand Dollars and no cents ($1,350,000.00) (the "Gross Settlement Amount") to fund the settlement of the Class Litigation. Defendant will not pay out more than the Gross Settlement Amount. Payments by Defendant pursuant to this MOU shall settle any and all claims, known or unkown, that the Releasing Service Award Plaintiff Parties (as defined in Paragraph 12b) may have against the Released Parties (as defined in Paragraph 12a), as well as those claims set forth in Paragraph 12a that the Releasing Class Parties (as defined in Paragraph 12a) may have against the Released Parties, including but not limited to any claims pending in the *Acosta* Litigation, the *Bowman*

Litigation and/or the *Cox* Litigation, or that could have been alleged in those actions based on the same underlying factual allegations. Any monies paid shall not trigger any additional payment under any fund or plan maintained by the Defendant. Defendant agrees to pay the Gross Settlement Amount subject to the terms and conditions stated herein and final Court approval thereof, and pursuant to the schedule set forth in Paragraph 14.

6. **Net Settlement Amount**: The Net Settlement Amount shall be defined as the Gross Settlement Amount, less the $500,000.00 in attorney's fees and costs and the $70,000.00 service awards described in Paragraph 9 below and subject to Court approval.

7. **Settlement Formula for All Class Claims**: The settlement formula for each member of the Settlement Class is as follows:

   a. *Acosta* **Class**: The *Acosta* Class shall receive $90,605.19 from the Net Settlement Amount plus $10,000.00 in service awards. Each *Acosta* Named Plaintiff and Opt-in shall receive approximately five additional hours of over time at 100% of their regular rate of pay for each week they worked as an Acount Manager ("AM") for three years prior to the date they filed their Notice of Consent. Each Named Plaintiff and Opt-in is guaranteed a minimum payment of $1,200.00. The exact award for each *Acosta* Named Plaintiff and Opt-in is set out in Exhibit A.

   b. *Bowman* **Class**: The *Bowman* Class shall receive $122,918.36 of the Net Settlement Amount plus $10,000.00 in service awards. Each *Bowman* Named Plaintiff and current Opt-in shall receive approximately five additional hours of overtime at 150% of their regular rate of pay for each week they worked as a Manager-in-Training ("MIT") for three years prior to the date they filed their Notice of Consent. The exact guaranteed minimum award for each *Bowman* Named Plaintiff and current Opt-in is set out in Exhibit A.

      1. **Putative *Bowman* Opt-in Fund**: The Putative *Bowman* Opt-in Fund is to pay the putative opt-ins who have not joined the case at this point in the litigation by setting aside $114,259.18 of the $122,918.36 described in Paragraph 7b. The Putative *Bowman* Opt-in Fund is created by calculating the average weekly overtime rate of MITs in a 45 hour week, $41.19, and multiplying it by the average number of weeks an MIT is in the MIT program, 14.32 weeks, and assuming that 326 (100% opt-in rate) putative Opt-ins join the Settlement.

         A. The putative *Bowman* Opt-ins who return a Notice to Participate in the Settlement, described in Paragraph 10, will receive $350.49, which is a pro-rated share of the Putative *Bowman* Opt-in Fund based on 100 percent opt-in participation.

2

B. The Defendant agrees to pay a minimum of $75,000.00 of the Putative *Bowman* Opt-in Fund in the event of a low opt-in rate.

C. If after the final number of *Bowman* Opt-ins is known at the close of the Notice period described in Paragraph 10, the money paid to the Putative *Bowman* Opt-ins is less than the $75,000.00 minimum payout, then the difference between the actual payout and the $75,000.00 minimum payout will be pro-rated among all of the Putative *Bowman* Opt-ins up to a maximum of $1,200.00 per Putative *Bowman* Opt-in.

D. If after each Putative *Bowman* Opt-in who returns a Claim Form is allocated $1,200.00 and the money paid out is still less than the $75,000.00 minimum, then the difference between the actual payout and the $75,000.00 minimum payout will be pro-rated among all of the *Bowman* Opt-ins, inclusive of the current *Bowman* Opt-ins, who will receive a prorated share not to exceed $2,659.18 per *Bowman* Opt-in.

E. If after each *Bowman* Opt-in who return a Claim Form, inclusive of the current *Bowman* Opt-ins, is allocated $2,659.18 and the money paid out is still less than the $75,000.00 minimum, then the difference between the actual payout and the $75,000.00 minimum payout will be pro-rated among all of the *Bowman* claimants, including Heather Bowman.

b. ***Cox* Class**: The *Cox* Class shall receive $566,476.45 of the Net Settlement Amount plus $50,000.00 in service awards. Each *Cox* Named Plaintiff and Opt-in shall receive approximately five additional hours of over time at 150% of their regular rate of pay for each week they worked as either an AM and/or as an MIT for three years prior to the date they filed their Notice of Consent. Each Named Plaintiff and Opt-in is guaranteed a minimum payment of $1,200.00.   Seven Opt-ins are not in the Class Description, as they worked as Dietary Services employees during the relvant time period. The Dietary Opt-ins shall receive $250.00 each to dismiss their claims.  The exact award for each *Cox* Named Plaintiff and Opt-in is set out in Exhibit A.

8. **Form of Net Settlement Payments**: Each payment made from the Net Settlement Amount based on a claim shall be divided as follows:

a. 50% of the gross amount paid on each claim will be paid as lost wages and an IRS Form W-2 will be issued for the payment (the employer's portion of the FICA and other taxes will be paid by Defendant as described in Paragraph 15); and

3

      b.     50% of the gross amount paid on the claim will be paid as compensation for liquidated damages and a Form 1099 will be issued for the payment.

9.     **Distribution of Attorneys' Fees and Costs and Service Awards**: The following payments shall be deducted from the Gross Settlement Amount:

      a.     **Attorneys' Fees and Costs**: Plaintiffs' counsel will request in the approval papers that the Court approve an award of attorneys' fees and expenses in an amount not to exceed Five Hundred Thousand Dollars and no cents ($500,000.00).  Defendant will not oppose these requests. Attorneys' fees and costs will be paid out of the Gross Settlement Amount. Any portion of the attorneys' fees or costs not approved by the Court shall be used to pay any additional expenses or disputed claims as agreed by the Parties and thereafter to a *cy pres* fund as described in Paragraph 15.

      b.     **Service Awards to Named Plaintiffs and Certain *Cox* Opt-Ins:** Plaintiffs' counsel will request the Court approve service awards in an aggregate amount not to exceed seventy thousand dollars and no cents ($70,000.00), to be distributed amongst each Named Plaintiff in recognition for their role as Named Plaintiffs, and to certain *Acosta and Cox* Opt-ins because of their role in discovery and mediation in the *Cox* and *Acosta* Class Litigation. The list of Named Plaintiffs and certain *Acosta* and *Cox* Opt-ins receiving a service payment (collectively with the Named Plaintiffs, the "Service Award Plaintiffs") is listed on Exhibit A. Defendant will not oppose this request. Defendant shall issue an IRS Form 1099 to each Service Award Plaintiff in connection with the service award paid to each Service Award Plaintiff. In exchange for the service awards, the Service Award Plaintiffs shall release all claims, known or unknown, which they may have against Defendant, up to and including August 15, 2014, as set forth in Paragraph 12b.  Any portion of the service award not approved by the Court shall be used to pay any additional expenses or disputed claims as agreed by the Parties and thereafter to a *cy pres* fund as described in Paragraph 15.

10.     **Putative *Bowman* Opt-in Fund Claims-Made Process and Form of Notice**: For putative class members in the *Bowman* action only, the Net Settlement Amounts of the Putative *Bowman* Opt-in Fund shall be distributed using a claims-made process.  To the extent the individual can be identified and/or contact information is maintained by the Parties, notice will be sent by mail to each member of the Settlement Class who is eligible to make a claim to inform them of the settlement, their ability to file a claim and the claims being released. To be timely, claims must be submitted within forty-five (45) days of mailing. The Parties will work cooperatively to determine the content of the notice(s) that is suitable to both Parties and any disagreements will be submitted to the Court for resolution.  The cost of the Notice process will be paid by Plaintiffs, subject to possible reimbursement as described in Paragraph 15.

11.     **Claimants' Responsibility for Additional Taxes**: Should any government authority determine that all or any part of the payment(s) made under a Form 1099 to any member

4

of the Settlement Class under this MOU are taxable as wages, the member will be solely responsible for the payment of all such taxes they are assessed.

12. **Release of Claims**: The Parties agree that the formal settlement agreement shall include the following releases:

    a.    Upon final approval of this Settlement Agreement, Named Plaintiffs on their own behalf and as the Named Representatives, all members of the Settlement Class, and all persons purporting to act on their behalf or purporting to assert a claim under or through them, including, but not limited to, their spouses, dependents, attorneys, heirs and assigns, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, and successors-in-interest, whether individual, class, collective, representative, legal, equitable, direct or indirect, or any other type or in any other capacity (collectively, the "Releasing Class Parties") hereby forever completely and irrevocably release and discharge Defendant, along with any of its past, present, and future parents, affiliates, subsidiaries, divisions, predecessors, successors, and assigns, and each of their officers, directors, board members, trustees, shareholders, members, employees, agents, attorneys, auditors, accountants, benefits administrators or third party administrators, experts, contractors, stockholders, representatives, partners, insurers, reinsurers, and other persons acting on their behalf (collectively, the "Released Parties"), from any and all causes of action, claims, rights, damages, punitive or statutory damages, penalties, liabilities, expenses, and losses resulting from unpaid wages, minimum wages, unpaid overtime, liquidated damages, other compensation or benefits including 401(k) benefits or matching benefits, retirement or deferred compensation benefit claims on account of unpaid wages and/or overtime, interest, attorneys' fees, meal and rest period compensation, day of rest claims, accrued vacation pay, breach of fiduciary duty, and any right or claim for civil penalties, any claim arising in contract or quasi-contract and related to the payment of wages, that any of the Releasing Class Parties have or may have had against any of the Released Parties arising out of the acts, facts, transactions, theories, occurrences, representations, or omissions set forth, or which could have been set forth, given the stated predicate allegations in the Complaints filed in the *Acosta* Litigation, the *Bowman* Litigation and/or the *Cox* Litigation, arising out of or under the Fair Labor Standards Act, the Ohio Wage Payment Act, the Colorado Wage Claim Act, Colorado's Minimum Wage Orders, Colorado's Minimum Wages of Workers Act, any other state wage payment law, or any other claim arising out contract, quasi-contract, tort, breach of fiduciary duty, or other common law claim, as well as any other state or local statute, rule and/or regulation, or similar causes of action arising from or relating to the non-payment of wages alleged in the above referenced Complaints, (the "Released Class Claims") through the time of Final Approval Order.

    It is expressly acknowledged and agreed that the Released Class Claims set forth above by the Releasing Class Parties shall not include a release or waiver of any claims under any federal, state, municipal or other statutes or ordinances not

5

expressly released in the immediately preceding paragraph above including, but not limited to, claims for damages, equitable relief, attorney fees, costs and the like under Title VII of the Civil Rights Act of 1964, as amended; the Americans with Disabilities Act, as amended; the Ohio Civil Rights Act; the Colorado Anti-Discrimination Act; the Family and Medical Leave Act, as amended; and the Age Discrimination in Employment Act, as amended, Ohio Revised Code § 4123.90, and any common law actions relating to wrongful or retaliatory discharge, negligence, malfeasance, mistreatment, civil conspiracy, defamation, intentional or negligent infliction of emotional distress, tort, personal injury, or invasion of privacy. The parties agree that the Defendant shall not assert in any other proceeding that any claims not expressly released are barred by the doctrines of res judicata, collateral estoppel or the like.

b.  Upon final approval of this Settlement Agreement, the Service Award Plaintiffs and all persons purporting to act on their behalf or purporting to assert a claim under or through them, including, but not limited to, their spouses, dependents, attorneys, heirs and assigns, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, and successors-in-interest, whether individual, class, collective, representative, legal, equitable, direct or indirect, or any other type or in any other capacity (collectively, the "Releasing Service Award Plaintiff Parties") hereby additionally, forever, completely and irrevocably release and discharge the Released Parties, from any and all causes of action, claims, rights, damages, punitive or statutory damages, penalties, liabilities, expenses, and losses of any kind or nature, whether known or unknown, without any limitation whatsoever, that any of the Releasing Service Award Plaintiff Parties have or may have had against any of the Released Parties (the "Released Service Award Plaintiffs Claims") through August 15, 2014.

13.  **Decertification of _Acosta_**.  The parties agree that Defendant shall file a motion for decertification of the conditional collective action in the _Acosta_ Litigation and settle each case individually per the allocation, subject to the Court's approval thereof.  Plaintiffs will not oppose the motion for decertification of the _Acosta_ Litigation.

14.  **Timing of Payments for Claims, Service Awards and Attorney Fees and Expenses**:  Checks for payment of eligible claims from the Net Settlement, service awards and the attorney fees and expenses will be issued subject to the schedule set forth below, contingent upon the Court ruling on Defendant's unopposed motion for decertification of the conditional collective action in the _Acosta_ Litigation and entry of the Court's order granting final approval of the settlement of the _Acosta_ Litigation, the _Bowman_ Litigation and the _Cox_ Litigation, assuming that there is no appeal.  If there is an appeal, checks will be issued within fourteen (14) days after the final appellate order in the event that such date is later than the scheduled payment dates set forth below.

Defendant will pay the Gross Settlement Amount in installments, to be made in the following amounts by the following dates:  $457,128.31 (representing all amounts for

6

settlement of the *Acosta* Litigation[1] and the unpaid wages award for the *Cox* Litigation[2]) by December 15, 2014; $669,615.77 (representing the remaining settlement amounts for the *Cox* Litigation[3]) by February 1, 2015; and $223,255.93 (representing all amounts for settlement of the *Bowman* Litigation[4]) by April 10, 2015.

Settlement checks not cashed within one hundred twenty (120) days of receipt by a member of the Settlement Class shall be void, and the failure to cash any check within ninety (90) days shall in no way affect the binding nature of the settlement or the binding nature of any release. Any funds not claimed by the claimants because of a failure to cash the check will be distributed in accordance with paragraph 15 below. The parties will work together in making good faith efforts to locate the Named Plaintiffs and Opt-ins during the 120 days.

15. ***Unclaimed Funds/Cy Pres***: Any cy pres funds will be allocated fifty percent (50%) to a charity selected by Plaintiffs, and fifty percent (50%) to a charity selected by Defendant.

    a.    As to the *Acosta* Class, the *Bowman* Named Plaintiffs and current Opt-ins and the *Cox* Class, any and all portions of the Net Settlement Amount not claimed as described in Paragraph 14, shall be used to pay any additional expenses or disputed claims as agreed by the Parties and thereafter to a cy pres fund as described above.

    b.    As to the Putative *Bowman* Opt-in Fund only, any and all portions of the Net Settlement Amount allocated to the Putative *Bowman* Opt-in Fund and that are not claimed under the claims-made process shall be used to pay any additional expenses or disputed claims as agreed by the Parties and thereafter to a *cy pres* fund as described above.

    c.    "Additional expenses" as used in this paragraph shall mean, Defendant's portion of the FICA and other employment taxes related to the settlement of the *Acosta* Litigation, the *Bowman* Litigation and the *Cox* Litigation (as described in Paragraph 8a), the cost of the Mediator (split between the Parties), and Plaintiffs' cost of the Notice described in Paragraph 15.

    d.    The order of preference will be to pay any disputed claims first (subject to approval by both Parties) and then the additional expenses. After any disputed claims are resolved, any remaining unclaimed funds described in Paragraph 15b above shall be used first to exhaust Defendants' FICA and other employment

---

[1] This figure includes $100,605.19 in unpaid overtime and liquidated damages, $10,000.00 in service awards and $73,284.89 in attorney fees and expenses.

[2] $283,238.23.

[3] This figure includes the $283, 238.23 in liquidated damage awards, $50,000.00 in service awards and $336,377.54 in attorney fees and expenses.

[4] This figure includes $4,329.59 in unpaid overtime, $4,329.59 in liquidated damage awards, $10,000.00 in service awards, $114,259.18 for the Putative *Bowman* Opt-in Fund, $90,337.57 in attorney fees and expenses.

7027/36660-007 current/44928650v1

taxes related to the settlement of the *Acosta* Litigation, the *Bowman* Litigation and the *Cox* Litigation.  If any unclaimed funds described in Paragraph 15b above remain after the exhaustion of the above referenced employment taxes, they shall be used to address the cost of the Mediator (split between the Parties), and if any unclaimed funds remain thereafter, the Plaintiffs' cost of the Notice described in Paragraph 15.

16. **Settlement Agreement Procedure**:  The Parties pledge their good faith and fair dealing in supporting the approval of this settlement by the Court. Defendant will prepare the initial draft of a settlement agreement within fourteen (14) days of the execution of this MOU.  The Parties will endeavor to conclude and execute the settlement agreement within fourteen (14) business days thereafter. Plaintiffs will endeavor to prepare and file a motion for preliminary approval within another seven (7) business days thereafter.

17. **Integration Clause**: The Parties agree that the formal settlement agreement will contain an integration clause.

18. **Reservation of Rights if Settlement Not Approved**: If for any reason, the settlement is not approved by the Court, this MOU and any other documents related to the settlement shall be null and void, including the agreed decertification.  In such an event, neither this MOU, any other documents related to the settlement, nor the negotiations leading to the settlement may be used as evidence for any purpose, and Defendant shall retain the right to challenge all claims and allegations, to assert all applicable defenses, and to dispute the propriety of collective action certification on all applicable grounds.

19. **Publicity**: Plaintiffs' counsel agrees that they must immediately remove any reference from their websites and any promotional material about the Class Litigation.  In addition, they will not contact the media, nor comment publicly, including but not limited to communications through any social media regarding this matter.  If contacted, Plaintiffs' counsel and Defendant's counsel will respond to any inquiries solely by stating that the matter has been resolved to the satisfaction of all parties.

20. **Motions to Stay the Class Litigation**: Within seven (7) days, Plaintiffs' counsel shall draft for approval by Defendant's counsel, motions to stay the Class Litigation covered by this MOU.

21. **Advice of Counsel**: The Parties are represented by competent counsel and they have had an opportunity to consult with counsel. The Parties agree that the MOU reflects their good faith compromise of the claims raised in the Class Litigation, based upon their assessment of the mutual risks and costs of further litigation and the assessments of their respective counsel.

22. **Counterpart Signatures**: This MOU may be executed in one or more counterparts, each of which shall be deemed to be an original but all of which together shall constitute the same instrument.

8

23.     **Attorney Authority**: The attorneys executing this document on behalf of the Named Plaintiffs and Defendant hereby represent that they have the authority from their respective clients to enter into this MOU.

24.     **Choice of Law**: This MOU shall be governed by the laws of the State of Ohio.


Dated: August 31, 2014                  By: _____
                                            Joshua Cox

Dated: August ___, 2014                 By: _____
                                            Stephanie Campbell

Dated: August ___, 2014                 By: _____
                                            Shawn Green

Dated: August ___, 2014                 By: _____
                                            Scott Gretchen
Dated: August ___, 2014                 By: _____
                                            Marc McCutchen

Dated: August ___, 2014                 By: _____
                                            Jere Mickler

Dated: August ___, 2014                 By: _____
                                            Eric Miller

Dated: August ___, 2014                 By: _____
                                            Casey Palumbo

Dated: August ___, 2014                 By: _____
                                            Zach Shockley

Dated: August ___, 2014                 By: _____
                                            Mathew Steinle

Dated: August ___, 2014                 By: _____
                                            Marie Acosta

Dated: August ___, 2014                 By: _____
                                            Nicole Quezada

Dated: August ___, 2014                 By: _____
                                            Heather Bowman

9

23. **Attorney Authority**: The attorneys executing this document on behalf of the Named Plaintiffs and Defendant hereby represent that they have the authority from their respective clients to enter into this MOU.

24. **Choice of Law**: This MOU shall be governed by the laws of the State of Ohio.

Dated: August ___, 2014                        By: _____
                                                   Joshua Cox

September
Dated: ~~August~~ 9, 2014                       By: _Stephanie Campbell_
                                                   Stephanie Campbell

Dated: August ___, 2014                        By: _____
                                                   Shawn Green

Dated: August ___, 2014                        By: _____
                                                   Scott Gretchen

Dated: August ___, 2014                        By: _____
                                                   Marc McCutchen

Dated: August ___, 2014                        By: _____
                                                   Jere Mickler

Dated: August ___, 2014                        By: _____
                                                   Eric Miller

Dated: August ___, 2014                        By: _____
                                                   Casey Palumbo

Dated: August ___, 2014                        By: _____
                                                   Zach Shockley

Dated: August ___, 2014                        By: _____
                                                   Mathew Steinle

Dated: August ___, 2014                        By: _____
                                                   Marie Acosta

Dated: August ___, 2014                        By: _____
                                                   Nicole Quezada

Dated: August ___, 2014                        By: _____
                                                   Heather Bowman

9

23. **Attorney Authority**: The attorneys executing this document on behalf of the Named Plaintiffs and Defendant hereby represent that they have the authority from their respective clients to enter into this MOU.

24. **Choice of Law**: This MOU shall be governed by the laws of the State of Ohio.

Dated: August ___, 2014      By:_____
             Joshua Cox

Dated: August ___, 2014      By:_____
             Stephanie Campbell

Dated: August ___, 2014      By: *Shawn M. Greene*
             ~~Shawn Green~~ *Shawn Greene SMG*

Dated: August ___, 2014      By:_____
             Scott Gretchen

Dated: August ___, 2014      By:_____
             Marc McCutchen

Dated: August ___, 2014      By:_____
             Jere Mickler

Dated: August ___, 2014      By:_____
             Eric Miller

Dated: August ___, 2014      By:_____
             Casey Palumbo

Dated: August ___, 2014      By:_____
             Zach Shockley

Dated: August ___, 2014      By:_____
             Mathew Steinle

Dated: August ___, 2014      By:_____
             Marie Acosta

Dated: August ___, 2014      By:_____
             Nicole Quezada

Dated: August ___, 2014      By:_____
             Heather Bowman

9

23. **Attorney Authority**: The attorneys executing this document on behalf of the Named Plaintiffs and Defendant hereby represent that they have the authority from their respective clients to enter into this MOU.

24. **Choice of Law**: This MOU shall be governed by the laws of the State of Ohio.

Dated: August ___, 2014        By:_____
                                      Joshua Cox

Dated: August ___, 2014        By:_____
                                      Stephanie Campbell

Dated: August ___, 2014        By:_____
                                      Shawn Green

Dated: ~~August~~ September 9, 2014        By: _Scott Butchen_
                                      Scott Gretchen

Dated: August ___, 2014        By:_____
                                      Marc McCutchen

Dated: August ___, 2014        By:_____
                                      Jere Mickler

Dated: August ___, 2014        By:_____
                                      Eric Miller

Dated: August ___, 2014        By:_____
                                      Casey Palumbo

Dated: August ___, 2014        By:_____
                                      Zach Shockley

Dated: August ___, 2014        By:_____
                                      Mathew Steinle

Dated: August ___, 2014        By:_____
                                      Marie Acosta

Dated: August ___, 2014        By:_____
                                      Nicole Quezada

Dated: August ___, 2014        By:_____
                                      Heather Bowman

9

23.     **Attorney Authority**: The attorneys executing this document on behalf of the Named
        Plaintiffs and Defendant hereby represent that they have the authority from their
        respective clients to enter into this MOU.

24.     **Choice of Law**: This MOU shall be governed by the laws of the State of Ohio.


Dated: August ___, 2014                   By:_____
                                              Joshua Cox

Dated: August ___, 2014                   By:_____
                                              Stephanie Campbell

Dated: August ___, 2014                   By:_____
                                              Shawn Green

Dated: August ___, 2014                   By:_____
                                              Scott Gretchen

Dated: September 8, 2014                  By:_____
                                              Marc McCutchen

Dated: August ___, 2014                   By:_____
                                              Jere Mickler

Dated: August ___, 2014                   By:_____
                                              Eric Miller

Dated: August ___, 2014                   By:_____
                                              Casey Palumbo

Dated: August ___, 2014                   By:_____
                                              Zach Shockley

Dated: August ___, 2014                   By:_____
                                              Mathew Steinle

Dated: August ___, 2014                   By:_____
                                              Marie Acosta

Dated: August ___, 2014                   By:_____
                                              Nicole Quezada

Dated: August ___, 2014                   By:_____
                                              Heather Bowman

9

23. **Attorney Authority**: The attorneys executing this document on behalf of the Named Plaintiffs and Defendant hereby represent that they have the authority from their respective clients to enter into this MOU.

24. **Choice of Law**: This MOU shall be governed by the laws of the State of Ohio.

Dated: August ___, 2014      By:_____
         Joshua Cox

Dated: August ___, 2014      By:_____
         Stephanie Campbell

Dated: August ___, 2014      By:_____
         Shawn Green

Dated: August ___, 2014      By:_____
         Scott Gretchen

Dated: August ___, 2014      By:_____
         Marc McCutchen

Dated: August SEPTEMBER 09, 2014      By:_____
         Jere Mickler

Dated: August ___, 2014      By:_____
         Eric Miller

Dated: August ___, 2014      By:_____
         Casey Palumbo

Dated: August ___, 2014      By:_____
         Zach Shockley

Dated: August ___, 2014      By:_____
         Mathew Steinle

Dated: August ___, 2014      By:_____
         Marie Acosta

Dated: August ___, 2014      By:_____
         Nicole Quezada

Dated: August ___, 2014      By:_____
         Heather Bowman

9

23.  **Attorney Authority**: The attorneys executing this document on behalf of the Named Plaintiffs and Defendant hereby represent that they have the authority from their respective clients to enter into this MOU.

24.  **Choice of Law**: This MOU shall be governed by the laws of the State of Ohio.

Dated: August ___, 2014                 By:_____
                                            Joshua Cox

Dated: August ___, 2014                 By:_____
                                            Stephanie Campbell

Dated: August ___, 2014                 By:_____
                                            Shawn Green

Dated: August ___, 2014                 By:_____
                                            Scott Gretchen

Dated: August ___, 2014                 By:_____
                                            Marc McCutchen

Dated: August ___, 2014                 By:_____
                                            Jere Mickler

Dated: ~~August~~ September 9, 2014      By:_____
                                            Eric Miller

Dated: August ___, 2014                 By:_____
                                            Casey Palumbo

Dated: August ___, 2014                 By:_____
                                            Zach Shockley

Dated: August ___, 2014                 By:_____
                                            Mathew Steinle

Dated: August ___, 2014                 By:_____
                                            Marie Acosta

Dated: August ___, 2014                 By:_____
                                            Nicole Quezada

Dated: August ___, 2014                 By:_____
                                            Heather Bowman

9

23. **Attorney Authority**: Th attorneys executing this document on behalf of the Named Plaintiffs and Defendant iereby represent that they have the authority from their respective clients to ente: into this MOU.

24. **Choice of Law**: This MC U shall be governed by the laws of the State of Ohio.

Dated: August __, 2014                   By:_____
                                          Joshua Cox

Dated: August __, 2014                   By:_____
                                          Stephanie Campbell

Dated: August __, 2014                   By:_____
                                          Shawn Green

Dated: August __, 2014                   By:_____
                                          Scott Gretchen

Dated: August __, 2014                   By:_____
                                          Marc McCutchen

Dated: August __, 2014                   By:_____
                                          Jere Mickler

Dated: August __, 2014                   By:_____
                                          Eric Miller

September 8, 2014
Dated: August __, 2014                   By:_____
                                          Casey Palumbo

Dated: August __, 2014                   By:_____
                                          Zach Shockley

Dated: August __, 2014                   By:_____
                                          Mathew Steinle

Dated: August __, 2014                   By:_____
                                          Marie Acosta

Dated: August __, 2014                   By:_____
                                          Nicole Quezada

Dated: August __, 2014                   By:_____
                                          Heather Bowman

9

7027/36660-007 current/44928650v1

23.    **Attorney Authority**: The attorneys executing this document on behalf of the Named Plaintiffs and Defendant hereby represent that they have the authority from their respective clients to enter into this MOU.

24.    **Choice of Law**: This MOU shall be governed by the laws of the State of Ohio.

Dated: August ___, 2014        By: _____
                                Joshua Cox

Dated: August ___, 2014        By: _____
                                Stephanie Campbell

Dated: August ___, 2014        By: _____
                                Shawn Green

Dated: August ___, 2014        By: _____
                                Scott Gretchen

Dated: August ___, 2014        By: _____
                                Marc McCutchen

Dated: August ___, 2014        By: _____
                                Jere Mickler

Dated: August ___, 2014        By: _____
                                Eric Miller

Dated: August ___, 2014        By: _____
                                Casey Palumbo

Dated: August Sept. 14, 2014   By: _____
                                Zach Sheckley

Dated: August ___, 2014        By: _____
                                Mathew Steinle

Dated: August ___, 2014        By: _____
                                Marie Acosta

Dated: August ___, 2014        By: _____
                                Nicole Quezada

Dated: August ___, 2014        By: _____
                                Heather Bowman

9

7027/36660-007 current/44928650v1

23. **Attorney Authority**: The attorneys executing this document on behalf of the Named Plaintiffs and Defendant hereby represent that they have the authority from their respective clients to enter into this MOU.

24. **Choice of Law**: This MOU shall be governed by the laws of the State of Ohio.

Dated: August ___, 2014            By:_____
                                             Joshua Cox

Dated: August ___, 2014            By:_____
                                             Stephanie Campbell

Dated: August ___, 2014            By:_____
                                             Shawn Green

Dated: August ___, 2014            By:_____
                                             Scott Gretchen

Dated: August ___, 2014            By:_____
                                             Marc McCutchen

Dated: August ___, 2014            By:_____
                                             Jere Mickler

Dated: August ___, 2014            By:_____
                                             Eric Miller

Dated: August ___, 2014            By:_____
                                             Casey Palumbo

Dated: August ___, 2014            By:_____
                                             Zach Shockley

Dated: ~~August~~ September 15, 2014            By: _M̶a̶t̶t̶_____
                                             Mathew Steinle

Dated: August ___, 2014            By:_____
                                             Marie Acosta

Dated: August ___, 2014            By:_____
                                             Nicole Quezada

Dated: August ___, 2014            By:_____
                                             Heather Bowman

9

23.  **Attorney Authority**: The attorneys executing this document on behalf of the Named Plaintiffs and Defendant hereby represent that they have the authority from their respective clients to enter into this MOU.

24.  **Choice of Law**: This MOU shall be governed by the laws of the State of Ohio.

Dated: August ___, 2014                    By:_____
                                              Joshua Cox

Dated: August ___, 2014                    By:_____
                                              Stephanie Campbell

Dated: August ___, 2014                    By:_____
                                              Shawn Green

Dated: August ___, 2014                    By:_____
                                              Scott Gretchen

Dated: August ___, 2014                    By:_____
                                              Marc McCutchen

Dated: August ___, 2014                    By:_____
                                              Jere Mickler

Dated: August ___, 2014                    By:_____
                                              Eric Miller

Dated: August ___, 2014                    By:_____
                                              Casey Palumbo

Dated: August ___, 2014                    By:_____
                                              Zach Shockley

Dated: August ___, 2014                    By:_____
                                              Mathew Steinle

Dated: August ___, 2014                    By: _Marie Acosta_
                                              Marie Acosta

Dated: ~~August~~ Sept 11, 2014            By: _Nicole Quezada_
                                              Nicole Quezada

Dated: August ___, 2014                    By:_____
                                              Heather Bowman

9

09/10/2014  15:36  317-4625076

23. **Attorney Authority**: The attorneys executing this document on behalf of the Named Plaintiffs and Defendant hereby represent that they have the authority from their respective clients to enter into this MOU.

24. **Choice of Law**: This MOU shall be governed by the laws of the State of Ohio.

Dated: August ___, 2014          By:_____
                                  Joshua Cox

Dated: August ___, 2014          By:_____
                                  Stephanie Campbell

Dated: August ___, 2014          By:_____
                                  Shawn Green

Dated: August ___, 2014          By:_____
                                  Scott Gretchen
Dated: August ___, 2014          By:_____
                                  Marc McCutchen

Dated: August ___, 2014          By:_____
                                  Jere Mickler

Dated: August ___, 2014          By:_____
                                  Eric Miller

Dated: August ___, 2014          By:_____
                                  Casey Palumbo

Dated: August ___, 2014          By:_____
                                  Zach Shockley

Dated: August ___, 2014          By:_____
                                  Mathew Steinle

Dated: August ___, 2014          By:_____
                                  Marie Acosta

Dated: August ___, 2014          By:_____
                                  Nicole Quezada
Dated: September 10, 2014         By:_____
                                  Heather Bowman

9

Dated: ~~August~~ Sept. 15, 2014

By: _____
Benjamin Meyers

Dated: August __, 2014

By: _____
Healthcare Services Group, Inc.

Dated: ~~August~~ Sept 5, 2014

By: _____
Robert E. DeRose, II
Barkan Meizlish Handelman Goodin DeRose
Wentz, LLP
Counsel for Named Plaintiffs and the Class

Dated: ~~August~~ September 15, 2014

By: _____
Hans A. Nilges
Nilges Draher LLC
Counsel for Named Plaintiffs and the Class

Dated: ~~August~~ Sept 3, 2014

By: _____
Kenneth D. Sulzer
Proskauer Rose LLP
Counsel for Defendant Healthcare Services
Group, Inc.

Dated: August __, 2014

By: _____
Kenneth D. Kleinman
Stevens & Lee, P.C.
Counsel for Defendant Healthcare Services
Group, Inc.

Dated: August __, 2014

By: _____
Steven W. Moore
Ogletree, Deakins, Nash, Smoak & Stewart,
P.C.
Counsel for Defendant Healthcare Services
Group, Inc.

Dated: August __, 2014

By: _____

10

Dated: August __, 2014                    By:_____
                                              Benjamin Meyers


Dated: August __, 2014                    By:_____
                                              Healthcare Services Group, Inc.


Dated: ~~August~~ Sept 5 __, 2014         By:_____
                                              Robert E. DeRose, II
                                              Barkan Meizlish Handelman Goodin DeRose
                                              Wentz, LLP
                                              Counsel for Named Plaintiffs and the Class


Dated: ~~August~~ September 5 __, 2014     By:_____
                                              Hans A. Nilges
                                              Nilges Draher LLC
                                              Counsel for Named Plaintiffs and the Class


Dated: ~~August~~ Sept 3 __, 2014         By:_____
                                              Kenneth D. Sulzer
                                              Proskauer Rose LLP
                                              Counsel for Defendant Healthcare Services
                                              Group, Inc.


Dated: ~~August~~ September 10 __, 2014    By:_____
                                              Kenneth D. Kleinman
                                              Stevens & Lee, P.C.
                                              Counsel for Defendant Healthcare Services
                                              Group, Inc.


Dated: ~~August~~ Sept. 10 __, 2014       By:_____
                                              Steven W. Moore
                                              Ogletree, Deakins, Nash, Smoak & Stewart,
                                              P.C.
                                              Counsel for Defendant Healthcare Services
                                              Group, Inc.


Dated: August __, 2014                    By:_____

                                           10

7027/36660-007 current/44928650v1

James E. Davidson
Ice Miller LLP
Counsel for Defendant Healthcare Services
Group, Inc.

11

### Healthcare Services Group, Inc. Litigation
Memorandum of Understanding

Plaintiffs Marie Acosta, Heather Bowman, Joshua Cox, Marc McCutchen, Benjamin Meyers, and Mathew Steinle (collectively, "Named Plaintiffs" or "Plaintiffs") and Defendant Healthcare Services Group, Inc. ("Defendant") (together with the Named Plaintiffs, the "Parties"), by and through their attorneys, agree as follows:

1. **The Settlement**: The settlement described in this Memorandum of Understanding ("MOU") resolves the following three separate lawsuits filed by the Named Plaintiffs against the Defendant: *Acosta v. Healthcare Services Group, Inc.* (D. Colo. Case No. 1:13-cv-03429) ("the *Acosta Litigation")*; *Bowman v. Healthcare Services Group, Inc.*, (N.D. Ohio Case No. 3:13-cv-1924) ("the *Bowman* Litigation"); and *Cox v. Healthcare Services Group, Inc.* (N.D. Ohio Case No. 3:13-cv-00293) ("the *Cox* Litigation") (collectively, the "Class Litigation").

2. **Enforceability**: This MOU becomes enforceable upon its execution by (a) one member of counsel for each Named Plaintiff and (b) one member of counsel for Defendant.

3. **No Admission of Liability**: Neither this MOU, any documents relating to the settlement, nor the settlement shall be construed as an admission of liability on the part of the Defendant.

4. **Settlement Class**: The Settlement Class consists of the following individuals:

   a. All individuals that opted in to the class certified by the United States District Court for the District of Colorado on March 31, 2014, in *Acosta v. Healthcare Services Group, Inc*. ("the *Acosta* Class");

   b. All individuals that opt in to the class certified by the United States District Court for the Northern District of Ohio on July 14, 2014, in *Bowman v. Healthcare Services Group, Inc*.("the *Bowman* Class"); and

   c. All individuals that opted in to the classes certified by the United States District Court for the Northern District of Ohio on June 4, 2013, in *Cox v. Healthcare Services Group, Inc*.("the *Cox* Class")

5. **Gross Settlement Amount**: Defendant will set aside the amount of One Million Three Hundred Fifty Thousand Dollars and no cents ($1,350,000.00) (the "Gross Settlement Amount") to fund the settlement of the Class Litigation.  Defendant will not pay out more than the Gross Settlement Amount. Payments by Defendant pursuant to this MOU shall settle any and all claims, known or unkown, that the Releasing Service Award Plaintiff Parties (as defined in Paragraph 12b) may have against the Released Parties (as defined in Paragraph 12a), as well as those claims set forth in Paragraph 12a that the Releasing Class Parties (as defined in Paragraph 12a) may have against the Released Parties, including but not limited to any claims pending in the *Acosta* Litigation, the *Bowman*

Litigation and/or the *Cox* Litigation, or that could have been alleged in those actions based on the same underlying factual allegations. Any monies paid shall not trigger any additional payment under any fund or plan maintained by the Defendant. Defendant agrees to pay the Gross Settlement Amount subject to the terms and conditions stated herein and final Court approval thereof, and pursuant to the schedule set forth in Paragraph 14.

6. **Net Settlement Amount**: The Net Settlement Amount shall be defined as the Gross Settlement Amount, less the $500,000.00 in attorney's fees and costs and the $70,000.00 service awards described in Paragraph 9 below and subject to Court approval.

7. **Settlement Formula for All Class Claims**: The settlement formula for each member of the Settlement Class is as follows:

   a. *Acosta* **Class**: The *Acosta* Class shall receive $90,605.19 from the Net Settlement Amount plus $10,000.00 in service awards. Each *Acosta* Named Plaintiff and Opt-in shall receive approximately five additional hours of over time at 100% of their regular rate of pay for each week they worked as an Acount Manager ("AM") for three years prior to the date they filed their Notice of Consent. Each Named Plaintiff and Opt-in is guaranteed a minimum payment of $1,200.00. The exact award for each *Acosta* Named Plaintiff and Opt-in is set out in Exhibit A.

   b. *Bowman* **Class**: The *Bowman* Class shall receive $122,918.36 of the Net Settlement Amount plus $10,000.00 in service awards. Each *Bowman* Named Plaintiff and current Opt-in shall receive approximately five additional hours of overtime at 150% of their regular rate of pay for each week they worked as a Manager-in-Training ("MIT") for three years prior to the date they filed their Notice of Consent. The exact guaranteed minimum award for each *Bowman* Named Plaintiff and current Opt-in is set out in Exhibit A.

      1. **Putative *Bowman* Opt-in Fund**: The Putative *Bowman* Opt-in Fund is to pay the putative opt-ins who have not joined the case at this point in the litigation by setting aside $114,259.18 of the $122,918.36 described in Paragraph 7b. The Putative *Bowman* Opt-in Fund is created by calculating the average weekly overtime rate of MITs in a 45 hour week, $41.19, and multiplying it by the average number of weeks an MIT is in the MIT program, 14.32 weeks, and assuming that 326 (100% opt-in rate) putative Opt-ins join the Settlement.

         A. The putative *Bowman* Opt-ins who return a Notice to Participate in the Settlement, described in Paragraph 10, will receive $350.49, which is a pro-rated share of the Putative *Bowman* Opt-in Fund based on 100 percent opt-in participation.

2

B. The Defendant agrees to pay a minimum of $75,000.00 of the Putative *Bowman* Opt-in Fund in the event of a low opt-in rate.

C. If after the final number of *Bowman* Opt-ins is known at the close of the Notice period described in Paragraph 10, the money paid to the Putative *Bowman* Opt-ins is less than the $75,000.00 minimum payout, then the difference between the actual payout and the $75,000.00 minimum payout will be pro-rated among all of the Putative *Bowman* Opt-ins up to a maximum of $1,200.00 per Putative *Bowman* Opt-in.

D. If after each Putative *Bowman* Opt-in who returns a Claim Form is allocated $1,200.00 and the money paid out is still less than the $75,000.00 minimum, then the difference between the actual payout and the $75,000.00 minimum payout will be pro-rated among all of the *Bowman* Opt-ins, inclusive of the current *Bowman* Opt-ins, who will receive a prorated share not to exceed $2,659.18 per *Bowman* Opt-in.

E. If after each *Bowman* Opt-in who return a Claim Form, inclusive of the current *Bowman* Opt-ins, is allocated $2,659.18 and the money paid out is still less than the $75,000.00 minimum, then the difference between the actual payout and the $75,000.00 minimum payout will be pro-rated among all of the *Bowman* claimants, including Heather Bowman.

b. **Cox Class**: The *Cox* Class shall receive $566,476.45 of the Net Settlement Amount plus $50,000.00 in service awards. Each *Cox* Named Plaintiff and Opt-in shall receive approximately five additional hours of over time at 150% of their regular rate of pay for each week they worked as either an AM and/or as an MIT for three years prior to the date they filed their Notice of Consent. Each Named Plaintiff and Opt-in is guaranteed a minimum payment of $1,200.00. Seven Opt-ins are not in the Class Description, as they worked as Dietary Services employees during the relvant time period. The Dietary Opt-ins shall receive $250.00 each to dismiss their claims. The exact award for each *Cox* Named Plaintiff and Opt-in is set out in Exhibit A.

8. **Form of Net Settlement Payments**: Each payment made from the Net Settlement Amount based on a claim shall be divided as follows:

a. 50% of the gross amount paid on each claim will be paid as lost wages and an IRS Form W-2 will be issued for the payment (the employer's portion of the FICA and other taxes will be paid by Defendant as described in Paragraph 15); and

3

    b.    50% of the gross amount paid on the claim will be paid as compensation for liquidated damages and a Form 1099 will be issued for the payment.

9.   **Distribution of Attorneys' Fees and Costs and Service Awards**: The following payments shall be deducted from the Gross Settlement Amount:

    a.  **Attorneys' Fees and Costs**: Plaintiffs' counsel will request in the approval papers that the Court approve an award of attorneys' fees and expenses in an amount not to exceed Five Hundred Thousand Dollars and no cents ($500,000.00). Defendant will not oppose these requests. Attorneys' fees and costs will be paid out of the Gross Settlement Amount. Any portion of the attorneys' fees or costs not approved by the Court shall be used to pay any additional expenses or disputed claims as agreed by the Parties and thereafter to a *cy pres* fund as described in Paragraph 15.

    b.  **Service Awards to Named Plaintiffs and Certain *Cox* Opt-Ins**: Plaintiffs' counsel will request the Court approve service awards in an aggregate amount not to exceed seventy thousand dollars and no cents ($70,000.00), to be distributed amongst each Named Plaintiff in recognition for their role as Named Plaintiffs, and to certain *Acosta and Cox* Opt-ins because of their role in discovery and mediation in the *Cox* and *Acosta* Class Litigation. The list of Named Plaintiffs and certain *Acosta* and *Cox* Opt-ins receiving a service payment (collectively with the Named Plaintiffs, the "Service Award Plaintiffs") is listed on Exhibit A. Defendant will not oppose this request. Defendant shall issue an IRS Form 1099 to each Service Award Plaintiff in connection with the service award paid to each Service Award Plaintiff. In exchange for the service awards, the Service Award Plaintiffs shall release all claims, known or unknown, which they may have against Defendant, up to and including August 15, 2014, as set forth in Paragraph 12b. Any portion of the service award not approved by the Court shall be used to pay any additional expenses or disputed claims as agreed by the Parties and thereafter to a *cy pres* fund as described in Paragraph 15.

10.   **Putative *Bowman* Opt-in Fund Claims-Made Process and Form of Notice**: For putative class members in the *Bowman* action only, the Net Settlement Amounts of the Putative *Bowman* Opt-in Fund shall be distributed using a claims-made process. To the extent the individual can be identified and/or contact information is maintained by the Parties, notice will be sent by mail to each member of the Settlement Class who is eligible to make a claim to inform them of the settlement, their ability to file a claim and the claims being released. To be timely, claims must be submitted within forty-five (45) days of mailing. The Parties will work cooperatively to determine the content of the notice(s) that is suitable to both Parties and any disagreements will be submitted to the Court for resolution. The cost of the Notice process will be paid by Plaintiffs, subject to possible reimbursement as described in Paragraph 15.

11.   **Claimants' Responsibility for Additional Taxes**: Should any government authority determine that all or any part of the payment(s) made under a Form 1099 to any member

4

of the Settlement Class under this MOU are taxable as wages, the member will be solely responsible for the payment of all such taxes they are assessed.

12. **Release of Claims**: The Parties agree that the formal settlement agreement shall include the following releases:

    a.    Upon final approval of this Settlement Agreement, Named Plaintiffs on their own behalf and as the Named Representatives, all members of the Settlement Class, and all persons purporting to act on their behalf or purporting to assert a claim under or through them, including, but not limited to, their spouses, dependents, attorneys, heirs and assigns, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, and successors-in-interest, whether individual, class, collective, representative, legal, equitable, direct or indirect, or any other type or in any other capacity (collectively, the "Releasing Class Parties") hereby forever completely and irrevocably release and discharge Defendant, along with any of its past, present, and future parents, affiliates, subsidiaries, divisions, predecessors, successors, and assigns, and each of their officers, directors, board members, trustees, shareholders, members, employees, agents, attorneys, auditors, accountants, benefits administrators or third party administrators, experts, contractors, stockholders, representatives, partners, insurers, reinsurers, and other persons acting on their behalf (collectively, the "Released Parties"), from any and all causes of action, claims, rights, damages, punitive or statutory damages, penalties, liabilities, expenses, and losses resulting from unpaid wages, minimum wages, unpaid overtime, liquidated damages, other compensation or benefits including 401(k) benefits or matching benefits, retirement or deferred compensation benefit claims on account of unpaid wages and/or overtime, interest, attorneys' fees, meal and rest period compensation, day of rest claims, accrued vacation pay, breach of fiduciary duty, and any right or claim for civil penalties, any claim arising in contract or quasi-contract and related to the payment of wages, that any of the Releasing Class Parties have or may have had against any of the Released Parties arising out of the acts, facts, transactions, theories, occurrences, representations, or omissions set forth, or which could have been set forth, given the stated predicate allegations in the Complaints filed in the *Acosta* Litigation, the *Bowman* Litigation and/or the *Cox* Litigation, arising out of or under the Fair Labor Standards Act, the Ohio Wage Payment Act, the Colorado Wage Claim Act, Colorado's Minimum Wage Orders, Colorado's Minimum Wages of Workers Act, any other state wage payment law, or any other claim arising out contract, quasi-contract, tort, breach of fiduciary duty, or other common law claim, as well as any other state or local statute, rule and/or regulation, or similar causes of action arising from or relating to the non-payment of wages alleged in the above referenced Complaints, (the "Released Class Claims") through the time of Final Approval Order.

    It is expressly acknowledged and agreed that the Released Class Claims set forth above by the Releasing Class Parties shall not include a release or waiver of any claims under any federal, state, municipal or other statutes or ordinances not

5

expressly released in the immediately preceding paragraph above including, but not limited to, claims for damages, equitable relief, attorney fees, costs and the like under Title VII of the Civil Rights Act of 1964, as amended; the Americans with Disabilities Act, as amended; the Ohio Civil Rights Act; the Colorado Anti-Discrimination Act; the Family and Medical Leave Act, as amended; and the Age Discrimination in Employment Act, as amended, Ohio Revised Code § 4123.90, and any common law actions relating to wrongful or retaliatory discharge, negligence, malfeasance, mistreatment, civil conspiracy, defamation, intentional or negligent infliction of emotional distress, tort, personal injury, or invasion of privacy.  The parties agree that the Defendant shall not assert in any other proceeding that any claims not expressly released are barred by the doctrines of res judicata, collateral estoppel or the like.

b.     Upon final approval of this Settlement Agreement, the Service Award Plaintiffs and all persons purporting to act on their behalf or purporting to assert a claim under or through them, including, but not limited to, their spouses, dependents, attorneys, heirs and assigns, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, and successors-in-interest, whether individual, class, collective, representative, legal, equitable, direct or indirect, or any other type or in any other capacity (collectively, the "Releasing Service Award Plaintiff Parties") hereby additionally, forever, completely and irrevocably release and discharge the Released Parties, from any and all causes of action, claims, rights, damages, punitive or statutory damages, penalties, liabilities, expenses, and losses of any kind or nature, whether known or unknown, without any limitation whatsoever, that any of the Releasing Service Award Plaintiff Parties have or may have had against any of the Released Parties (the "Released Service Award Plaintiffs Claims") through August 15, 2014.

13.   **Decertification of _Acosta_**.   The parties agree that Defendant shall file a motion for decertification of the conditional collective action in the _Acosta_ Litigation and settle each case individually per the allocation, subject to the Court's approval thereof.  Plaintiffs will not oppose the motion for decertification of the _Acosta_ Litigation.

14.   **Timing of Payments for Claims, Service Awards and Attorney Fees and Expenses**: Checks for payment of eligible claims from the Net Settlement, service awards and the attorney fees and expenses will be issued subject to the schedule set forth below, contingent upon the Court ruling on Defendant's unopposed motion for decertification of the conditional collective action in the _Acosta_ Litigation and entry of the Court's order granting final approval of the settlement of the _Acosta_ Litigation, the _Bowman_ Litigation and the _Cox_ Litigation, assuming that there is no appeal.  If there is an appeal, checks will be issued within fourteen (14) days after the final appellate order in the event that such date is later than the scheduled payment dates set forth below.

Defendant will pay the Gross Settlement Amount in installments, to be made in the following amounts by the following dates:  $457,128.31 (representing all amounts for

6

settlement of the *Acosta* Litigation[1] and the unpaid wages award for the *Cox* Litigation[2]) by December 15, 2014; $669,615.77 (representing the remaining settlement amounts for the *Cox* Litigation[3]) by February 1, 2015; and $223,255.93 (representing all amounts for settlement of the *Bowman* Litigation[4]) by April 10, 2015.

Settlement checks not cashed within one hundred twenty (120) days of receipt by a member of the Settlement Class shall be void, and the failure to cash any check within ninety (90) days shall in no way affect the binding nature of the settlement or the binding nature of any release. Any funds not claimed by the claimants because of a failure to cash the check will be distributed in accordance with paragraph 15 below. The parties will work together in making good faith efforts to locate the Named Plaintiffs and Opt-ins during the 120 days.

15.     ***Unclaimed Funds/Cy Pres***: Any cy pres funds will be allocated fifty percent (50%) to a charity selected by Plaintiffs, and fifty percent (50%) to a charity selected by Defendant.

   a.     As to the *Acosta* Class, the *Bowman* Named Plaintiffs and current Opt-ins and the *Cox* Class, any and all portions of the Net Settlement Amount not claimed as described in Paragraph 14, shall be used to pay any additional expenses or disputed claims as agreed by the Parties and thereafter to a cy pres fund as described above.

   b.     As to the Putative *Bowman* Opt-in Fund only, any and all portions of the Net Settlement Amount allocated to the Putative *Bowman* Opt-in Fund and that are not claimed under the claims-made process shall be used to pay any additional expenses or disputed claims as agreed by the Parties and thereafter to a *cy pres* fund as described above.

   c.     "Additional expenses" as used in this paragraph shall mean, Defendant's portion of the FICA and other employment taxes related to the settlement of the *Acosta* Litigation, the *Bowman* Litigation and the *Cox* Litigation (as described in Paragraph 8a), the cost of the Mediator (split between the Parties), and Plaintiffs' cost of the Notice described in Paragraph 15.

   d.     The order of preference will be to pay any disputed claims first (subject to approval by both Parties) and then the additional expenses.  After any disputed claims are resolved, any remaining unclaimed funds described in Paragraph 15b above shall be used first to exhaust Defendants' FICA and other employment

---

[1] This figure includes $100,605.19 in unpaid overtime and liquidated damages,  $10,000.00 in service awards and $73,284.89 in attorney fees and expenses.

[2] $283,238.23.

[3] This figure includes the $283, 238.23 in liquidated damage awards, $50,000.00 in service awards and $336,377.54 in attorney fees and expenses.

[4] This figure includes $4,329.59 in unpaid overtime, $4,329.59 in liquidated damage awards, $10,000.00 in service awards, $114,259.18 for the Putative *Bowman* Opt-in Fund, $90,337.57 in attorney fees and expenses.

taxes related to the settlement of the *Acosta* Litigation, the *Bowman* Litigation and the *Cox* Litigation.  If any unclaimed funds described in Paragraph 15b above remain after the exhaustion of the above referenced employment taxes, they shall be used to address the cost of the Mediator (split between the Parties), and if any unclaimed funds remain thereafter, the Plaintiffs' cost of the Notice described in Paragraph 15.

16. **Settlement Agreement Procedure**:  The Parties pledge their good faith and fair dealing in supporting the approval of this settlement by the Court. Defendant will prepare the initial draft of a settlement agreement within fourteen (14) days of the execution of this MOU.  The Parties will endeavor to conclude and execute the settlement agreement within fourteen (14) business days thereafter. Plaintiffs will endeavor to prepare and file a motion for preliminary approval within another seven (7) business days thereafter.

17. **Integration Clause**: The Parties agree that the formal settlement agreement will contain an integration clause.

18. **Reservation of Rights if Settlement Not Approved**: If for any reason, the settlement is not approved by the Court, this MOU and any other documents related to the settlement shall be null and void, including the agreed decertification.  In such an event, neither this MOU, any other documents related to the settlement, nor the negotiations leading to the settlement may be used as evidence for any purpose, and Defendant shall retain the right to challenge all claims and allegations, to assert all applicable defenses, and to dispute the propriety of collective action certification on all applicable grounds.

19. **Publicity**: Plaintiffs' counsel agrees that they must immediately remove any reference from their websites and any promotional material about the Class Litigation.  In addition, they will not contact the media, nor comment publicly, including but not limited to communications through any social media regarding this matter.  If contacted, Plaintiffs' counsel and Defendant's counsel will respond to any inquiries solely by stating that the matter has been resolved to the satisfaction of all parties.

20. **Motions to Stay the Class Litigation**: Within seven (7) days, Plaintiffs' counsel shall draft for approval by Defendant's counsel, motions to stay the Class Litigation covered by this MOU.

21. **Advice of Counsel**: The Parties are represented by competent counsel and they have had an opportunity to consult with counsel. The Parties agree that the MOU reflects their good faith compromise of the claims raised in the Class Litigation, based upon their assessment of the mutual risks and costs of further litigation and the assessments of their respective counsel.

22. **Counterpart Signatures**: This MOU may be executed in one or more counterparts, each of which shall be deemed to be an original but all of which together shall constitute the same instrument.

23.     **Attorney Authority**: The attorneys executing this document on behalf of the Named Plaintiffs and Defendant hereby represent that they have the authority from their respective clients to enter into this MOU.

24.     **Choice of Law**: This MOU shall be governed by the laws of the State of Ohio.

Dated: August 31, 2014          By: _____
                                      Joshua Cox

Dated: August ___, 2014         By: _____
                                      Stephanie Campbell

Dated: August ___, 2014         By: _____
                                      Shawn Green

Dated: August ___, 2014         By: _____
                                      Scott Gretchen
Dated: August ___, 2014         By: _____
                                      Marc McCutchen

Dated: August ___, 2014         By: _____
                                      Jere Mickler

Dated: August ___, 2014         By: _____
                                      Eric Miller

Dated: August ___, 2014         By: _____
                                      Casey Palumbo

Dated: August ___, 2014         By: _____
                                      Zach Shockley

Dated: August ___, 2014         By: _____
                                      Mathew Steinle

Dated: August ___, 2014         By: _____
                                      Marie Acosta

Dated: August ___, 2014         By: _____
                                      Nicole Quezada

Dated: August ___, 2014         By: _____
                                      Heather Bowman

9

7027/36660-007 current/44928650v1

23. **Attorney Authority**: The attorneys executing this document on behalf of the Named Plaintiffs and Defendant hereby represent that they have the authority from their respective clients to enter into this MOU.

24. **Choice of Law**: This MOU shall be governed by the laws of the State of Ohio.

Dated: August ___, 2014
By:_____
Joshua Cox

Dated: ~~August 9~~, September 9, 2014
By: *Stephanie Campbell*
Stephanie Campbell

Dated: August ___, 2014
By:_____
Shawn Green

Dated: August ___, 2014
By:_____
Scott Gretchen

Dated: August ___, 2014
By:_____
Marc McCutchen

Dated: August ___, 2014
By:_____
Jere Mickler

Dated: August ___, 2014
By:_____
Eric Miller

Dated: August ___, 2014
By:_____
Casey Palumbo

Dated: August ___, 2014
By:_____
Zach Shockley

Dated: August ___, 2014
By:_____
Mathew Steinle

Dated: August ___, 2014
By:_____
Marie Acosta

Dated: August ___, 2014
By:_____
Nicole Quezada

Dated: August ___, 2014
By:_____
Heather Bowman

9

23.  **Attorney Authority**: The attorneys executing this document on behalf of the Named Plaintiffs and Defendant hereby represent that they have the authority from their respective clients to enter into this MOU.

24.  **Choice of Law**: This MOU shall be governed by the laws of the State of Ohio.

Dated: August __, 2014                    By:_____
                                               Joshua Cox

Dated: August __, 2014                    By:_____
                                               Stephanie Campbell

Dated: August __, 2014                    By: _Shawn M. Greene_____
                                               ~~Shawn Green~~  Shawn Greene SMG

Dated: August __, 2014                    By:_____
                                               Scott Gretchen

Dated: August __, 2014                    By:_____
                                               Marc McCutchen

Dated: August __, 2014                    By:_____
                                               Jere Mickler

Dated: August __, 2014                    By:_____
                                               Eric Miller

Dated: August __, 2014                    By:_____
                                               Casey Palumbo

Dated: August __, 2014                    By:_____
                                               Zach Shockley

Dated: August __, 2014                    By:_____
                                               Mathew Steinle

Dated: August __, 2014                    By:_____
                                               Marie Acosta

Dated: August __, 2014                    By:_____
                                               Nicole Quezada

Dated: August __, 2014                    By:_____
                                               Heather Bowman

9

23.  **Attorney Authority**: The attorneys executing this document on behalf of the Named Plaintiffs and Defendant hereby represent that they have the authority from their respective clients to enter into this MOU.

24.  **Choice of Law**: This MOU shall be governed by the laws of the State of Ohio.

Dated: August __, 2014                By:_____
                                              Joshua Cox

Dated: August __, 2014                By:_____
                                              Stephanie Campbell

Dated: August __, 2014                By:_____
                                              Shawn Green

Dated: ~~August~~ September 9, 2014   By: _Scott Butchen_____
                                              Scott Gretchen

Dated: August __, 2014                By:_____
                                              Marc McCutchen

Dated: August __, 2014                By:_____
                                              Jere Mickler

Dated: August __, 2014                By:_____
                                              Eric Miller

Dated: August __, 2014                By:_____
                                              Casey Palumbo

Dated: August __, 2014                By:_____
                                              Zach Shockley

Dated: August __, 2014                By:_____
                                              Mathew Steinle

Dated: August __, 2014                By:_____
                                              Marie Acosta

Dated: August __, 2014                By:_____
                                              Nicole Quezada

Dated: August __, 2014                By:_____
                                              Heather Bowman

9

23. **Attorney Authority**: The attorneys executing this document on behalf of the Named Plaintiffs and Defendant hereby represent that they have the authority from their respective clients to enter into this MOU.

24. **Choice of Law**: This MOU shall be governed by the laws of the State of Ohio.

Dated: August ___, 2014      By:_____
            Joshua Cox

Dated: August ___, 2014      By:_____
            Stephanie Campbell

Dated: August ___, 2014      By:_____
            Shawn Green

Dated: August ___, 2014      By:_____
            Scott Gretchen

Dated: ~~August ___, 2014~~ September 8, 2014      By:_____
            Marc McCutchen

Dated: August ___, 2014      By:_____
            Jere Mickler

Dated: August ___, 2014      By:_____
            Eric Miller

Dated: August ___, 2014      By:_____
            Casey Palumbo

Dated: August ___, 2014      By:_____
            Zach Shockley

Dated: August ___, 2014      By:_____
            Mathew Steinle

Dated: August ___, 2014      By:_____
            Marie Acosta

Dated: August ___, 2014      By:_____
            Nicole Quezada

Dated: August ___, 2014      By:_____
            Heather Bowman

9

23. **Attorney Authority**: The attorneys executing this document on behalf of the Named Plaintiffs and Defendant hereby represent that they have the authority from their respective clients to enter into this MOU.

24. **Choice of Law**: This MOU shall be governed by the laws of the State of Ohio.

Dated: August ___, 2014                By:_____
                                            Joshua Cox

Dated: August ___, 2014                By:_____
                                            Stephanie Campbell

Dated: August ___, 2014                By:_____
                                            Shawn Green

Dated: August ___, 2014                By:_____
                                            Scott Gretchen

Dated: August ___, 2014                By:_____
                                            Marc McCutchen

Dated: August SEPTEMBER 09, 2014       By:_____
                                            Jere Mickler

Dated: August ___, 2014                By:_____
                                            Eric Miller

Dated: August ___, 2014                By:_____
                                            Casey Palumbo

Dated: August ___, 2014                By:_____
                                            Zach Shockley

Dated: August ___, 2014                By:_____
                                            Mathew Steinle

Dated: August ___, 2014                By:_____
                                            Marie Acosta

Dated: August ___, 2014                By:_____
                                            Nicole Quezada

Dated: August ___, 2014                By:_____
                                            Heather Bowman

9

23. **Attorney Authority**: The attorneys executing this document on behalf of the Named Plaintiffs and Defendant hereby represent that they have the authority from their respective clients to enter into this MOU.

24. **Choice of Law**: This MOU shall be governed by the laws of the State of Ohio.

Dated: August ___, 2014      By:_____
                                     Joshua Cox

Dated: August ___, 2014      By:_____
                                     Stephanie Campbell

Dated: August ___, 2014      By:_____
                                     Shawn Green

Dated: August ___, 2014      By:_____
                                     Scott Gretchen

Dated: August ___, 2014      By:_____
                                     Marc McCutchen

Dated: August ___, 2014      By:_____
                                     Jere Mickler

Dated: ~~August~~ September 9, 2014      By:_____
                                     Eric Miller

Dated: August ___, 2014      By:_____
                                     Casey Palumbo

Dated: August ___, 2014      By:_____
                                     Zach Shockley

Dated: August ___, 2014      By:_____
                                     Mathew Steinle

Dated: August ___, 2014      By:_____
                                     Marie Acosta

Dated: August ___, 2014      By:_____
                                     Nicole Quezada

Dated: August ___, 2014      By:_____
                                     Heather Bowman

9

23. **Attorney Authority**: Th attorneys executing this document on behalf of the Named Plaintiffs and Defendant ereby represent that they have the authority from their respective clients to ente into this MOU.

24. **Choice of Law**: This MC U shall be governed by the laws of the State of Ohio.

Dated: August ___, 2014    By:_____
             Joshua Cox

Dated: August ___, 2014    By:_____
             Stephanie Campbell

Dated: August ___, 2014    By:_____
             Shawn Green

Dated: August ___, 2014    By:_____
             Scott Gretchen

Dated: August ___, 2014    By:_____
             Marc McCutchen

Dated: August ___, 2014    By:_____
             Jere Mickler

Dated: August ___, 2014    By:_____
             Eric Miller

September 8, 2014
Dated: August ___, 2014    By:_____
             Casey Palumbo

Dated: August ___, 2014    By:_____
             Zach Shockley

Dated: August ___, 2014    By:_____
             Mathew Steinle

Dated: August ___, 2014    By:_____
             Marie Acosta

Dated: August ___, 2014    By:_____
             Nicole Quezada

Dated: August ___, 2014    By:_____
             Heather Bowman

9

23. **Attorney Authority**: The attorneys executing this document on behalf of the Named Plaintiffs and Defendant hereby represent that they have the authority from their respective clients to enter into this MOU.

24. **Choice of Law**: This MOU shall be governed by the laws of the State of Ohio.

Dated: August ___, 2014                By: _____
                                                                  Joshua Cox

Dated: August ___, 2014                By: _____
                                                                  Stephanie Campbell

Dated: August ___, 2014                By: _____
                                                                  Shawn Green

Dated: August ___, 2014                By: _____
                                                                  Scott Gretchen
Dated: August ___, 2014                By: _____
                                                                  Marc McCutchen

Dated: August ___, 2014                By: _____
                                                                  Jere Mickler

Dated: August ___, 2014                By: _____
                                                                  Eric Miller

Dated: August ___, 2014                By: _____
                                                                  Casey Palumbo

Dated: August Sept, 14, 2014           By: _____
                                                                  Zach Sheckley

Dated: August ___, 2014                By: _____
                                                                  Mathew Steinle

Dated: August ___, 2014                By: _____
                                                                  Marie Acosta

Dated: August ___, 2014                By: _____
                                                                  Nicole Quezada

Dated: August ___, 2014                By: _____
                                                                  Heather Bowman

9

23.    **Attorney Authority**: The attorneys executing this document on behalf of the Named Plaintiffs and Defendant hereby represent that they have the authority from their respective clients to enter into this MOU.

24.    **Choice of Law**: This MOU shall be governed by the laws of the State of Ohio.

Dated: August ___, 2014                          By:_____
                                                      Joshua Cox

Dated: August ___, 2014                          By:_____
                                                      Stephanie Campbell

Dated: August ___, 2014                          By:_____
                                                      Shawn Green

Dated: August ___, 2014                          By:_____
                                                      Scott Gretchen

Dated: August ___, 2014                          By:_____
                                                      Marc McCutchen

Dated: August ___, 2014                          By:_____
                                                      Jere Mickler

Dated: August ___, 2014                          By:_____
                                                      Eric Miller

Dated: August ___, 2014                          By:_____
                                                      Casey Palumbo

Dated: August ___, 2014                          By:_____
                                                      Zach Shockley

Dated: ~~August~~ September 15, 2014             By: _Mathew Steinle_ (signature)
                                                      Mathew Steinle

Dated: August ___, 2014                          By:_____
                                                      Marie Acosta

Dated: August ___, 2014                          By:_____
                                                      Nicole Quezada

Dated: August ___, 2014                          By:_____
                                                      Heather Bowman

9

7027/36660-007 current/44926650v1

23.    **Attorney Authority**: The attorneys executing this document on behalf of the Named Plaintiffs and Defendant hereby represent that they have the authority from their respective clients to enter into this MOU.

24.    **Choice of Law**: This MOU shall be governed by the laws of the State of Ohio.

Dated: August ___, 2014                    By:_____
                                                        Joshua Cox

Dated: August ___, 2014                    By:_____
                                                        Stephanie Campbell

Dated: August ___, 2014                    By:_____
                                                        Shawn Green

Dated: August ___, 2014                    By:_____
                                                        Scott Gretchen

Dated: August ___, 2014                    By:_____
                                                        Marc McCutchen

Dated: August ___, 2014                    By:_____
                                                        Jere Mickler

Dated: August ___, 2014                    By:_____
                                                        Eric Miller

Dated: August ___, 2014                    By:_____
                                                        Casey Palumbo

Dated: August ___, 2014                    By:_____
                                                        Zach Shockley

Dated: August ___, 2014                    By:_____
                                                        Mathew Steinle

Dated: August ___, 2014                    By: _Marie Acosta_
                                                        Marie Acosta

Dated: ~~August~~ _Sept 11_, 2014          By: _Nicole Quezada_
                                                        Nicole Quezada

Dated: August ___, 2014                    By:_____
                                                        Heather Bowman

9

PAGE 01/01

BRANDYWNE BILLING

09/10/2014 15:36 317-4625076

23. **Attorney Authority**: The attorneys executing this document on behalf of the Named Plaintiffs and Defendant hereby represent that they have the authority from their respective clients to enter into this MOU.

24. **Choice of Law**: This MOU shall be governed by the laws of the State of Ohio.

Dated: August __, 2014     By:_____
                                  Joshua Cox

Dated: August __, 2014     By:_____
                                  Stephanie Campbell

Dated: August __, 2014     By:_____
                                  Shawn Green

Dated: August __, 2014     By:_____
                                  Scott Gretchen

Dated: August __, 2014     By:_____
                                  Marc McCutchen

Dated: August __, 2014     By:_____
                                  Jere Mickler

Dated: August __, 2014     By:_____
                                  Eric Miller

Dated: August __, 2014     By:_____
                                  Casey Palumbo

Dated: August __, 2014     By:_____
                                  Zach Shockley

Dated: August __, 2014     By:_____
                                  Mathew Steinle

Dated: August __, 2014     By:_____
                                  Marie Acosta

Dated: August __, 2014     By:_____
                                  Nicole Quezada

Dated: September 10, 2014     By:_____
                                  Heather Bowman

9

7027/36660-007 current/44928650v1

Dated: ~~August~~ Sept. 15, 2014

By: _____
   Benjamin Meyers

Dated: August ___, 2014

By: _____
   Healthcare Services Group, Inc.

Dated: ~~August~~ Sept 5, 2014

By: _____
   Robert E. DeRose, II
   Barkan Meizlish Handelman Goodin DeRose
   Wentz, LLP
   Counsel for Named Plaintiffs and the Class

Dated: ~~August~~ September 15, 2014

By: _____
   Hans A. Nilges
   Nilges Draher LLC
   Counsel for Named Plaintiffs and the Class

Dated: ~~August~~ Sept 3, 2014

By: _____
   Kenneth D. Sulzer
   Proskauer Rose LLP
   Counsel for Defendant Healthcare Services
   Group, Inc.

Dated: August ___, 2014

By: _____
   Kenneth D. Kleinman
   Stevens & Lee, P.C.
   Counsel for Defendant Healthcare Services
   Group, Inc.

Dated: August ___, 2014

By: _____
   Steven W. Moore
   Ogletree, Deakins, Nash, Smoak & Stewart,
   P.C.
   Counsel for Defendant Healthcare Services
   Group, Inc.

Dated: August ___, 2014

By: _____

10

Dated: August ___, 2014                 By: _____
                                              Benjamin Meyers


Dated: August ___, 2014                 By: _____
                                              Healthcare Services Group, Inc.


Dated: ~~August~~ Sept 5, 2014          By: _____
                                              Robert E. DeRose, II
                                              Barkan Meizlish Handelman Goodin DeRose
                                              Wentz, LLP
                                              Counsel for Named Plaintiffs and the Class


Dated: ~~August~~ September 5, 2014      By: _____
                                              Hans A. Nilges
                                              Nilges Draher LLC
                                              Counsel for Named Plaintiffs and the Class


Dated: ~~August~~ Sept 3, 2014          By: _____
                                              Kenneth D. Sulzer
                                              Proskauer Rose LLP
                                              Counsel for Defendant Healthcare Services
                                              Group, Inc.


Dated: ~~August~~ September 10, 2014     By: _____
                                              Kenneth D. Kleinman
                                              Stevens & Lee, P.C.
                                              Counsel for Defendant Healthcare Services
                                              Group, Inc.


Dated: ~~August~~ Sept. 10, 2014         By: _____
                                              Steven W. Moore
                                              Ogletree, Deakins, Nash, Smoak & Stewart,
                                              P.C.
                                              Counsel for Defendant Healthcare Services
                                              Group, Inc.


Dated: August ___, 2014                 By: _____

                                              10

James E. Davidson
Ice Miller LLP
Counsel for Defendant Healthcare Services
Group, Inc.

11

# Exhibit C

**EXHIBIT C**

NOTICE AND OPT-IN CLAIM AND CONSENT FORM

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO


**Notice of Collective Action Settlement for Current and Former
Healthcare Services Group, Inc. Managers in Training**

*A Federal Court authorized this notice.  This is not a solicitation from a lawyer.*

**PLEASE READ THIS NOTICE CAREFULLY**

| **1.   Why did I get this notice package?** |
| --- |

Records indicate that you are or were employed by Healthcare Services Group, Inc. ("HSG") as a housekeeping Manager in Training and worked in Colorado, Florida, Indiana, or Michigan.  A collective action lawsuit involving similarly situated employees has been filed in Federal Court for the Northern District of Ohio, titled *Bowman v. Healthcare Services Group, Inc.* (N.D. Ohio Case No. 3:13-cv-1924) (the "Lawsuit" or the "*Bowman* Litigation") alleging violations of the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. §§ 201 *et seq.*

On July 14, 2014 the Court conditionally certified this class and permitted the *Bowman* plaintiffs to send notice to current and former housekeeping Managers in Training (or "MITs") in Colorado, Florida, Indiana and Michigan.  However, since the Court conditionally certified this class, the Lawsuit has been settled.  You are receiving this Notice because you are a potential member of the Settlement Class covered by the settlement.  This Notice describes the settlement and described how you can obtain a monetary recovery from the settlement.  This Notice also describes how you can exclude yourself from the settlement.

| **2. What is this lawsuit about and why did it settle?** |
| --- |

The Lawsuit, which has been actively litigated for over a year, alleges that HSG violated the FLSA by failing to pay housekeeping MITs the full amount of wages they were due based on the number of hours they worked, including overtime. HSG denies violating any laws and contends that MITs are properly paid all wages they are owed.

Even though HSG has strong defenses to the Lawsuit, it has decided to settle.  The settlement enables HSG to dedicate its time and resources to ongoing business operations and, as such, benefits its employees and clients.

Likewise, the employees' attorneys, who are referred to as "Class Counsel," believe the settlement greatly benefits the Class members. Settlement enables the Class members to

avoid the risk that HSG will win the Lawsuit, in which case they will recover nothing. Settlement also enables the Class members to recover money without further delay.

The parties' attorneys negotiated the settlement after exchanging information that has enabled each side to understand the risks of proceeding with adversarial litigation. Class Counsel believe the proposed settlement is fair and serves the best interest of the Class members. The Federal Judge overseeing the Lawsuit has approved the settlement as fair.

| **3.   What does the settlement provide and how much will I be paid?** |
|---|

If you elect to recover money under this settlement, your individual payment will be at least $350.49.  One-half of your settlement amount will be paid in the form of a payroll check from which all ordinary payroll taxes and withholdings will be deducted. This payment will be reported on an IRS Form W2 issued at the end of the tax year. The other half of your settlement amount will be paid in the form of a non-payroll check from which no payroll taxes or withholdings will be deducted. This payment will be reported on an IRS Form 1099 issued at the end of the tax year.

Your settlement payment represents your *pro rata* share of the $114,259.18 fund dedicated to payments for MITs in the *Bowman* Litigation.  This $114,259.18 represents the amount that will be paid if all members of the *Bowman* Class choose to opt-in.  In the event that fewer than all members of the *Bowman* Class chooses to opt-in to the Lawsuit or otherwise fails to timely opt-in as instructed herein, you may be entitled to additional money on a pro-rated basis.

| **4.   How can I receive my payment?** |
|---|

If you worked at HSG as an housekeeping MIT in Colorado, Florida, Indiana, or Michigan at any time since May 31, 2010 [three years from filing of the Lawsuit] through (***insert date***), in order to receive your payment, you must complete and return the attached "Opt-in Claim Form." You must return the "Opt-in Claim Form (preferably in the enclosed postage-paid envelope). **The envelope must be post-marked by [*insert date*].**

**HSG cannot retaliate against you for participating in this Settlement.**

| **5.   What am I giving up to receive a payment?** |
|---|

Once the effective date of the Settlement has passed, the Lawsuit will be dismissed with prejudice and, except as described in Section 6 below, you will fully release and discharge HSG from any and all claims that are asserted in the Lawsuit or that arise from or are related to the facts alleged in the Lawsuit.  When claims are "released," that means that a person covered by the release cannot sue the Released Parties for any of the claims

that are covered by the Release.  The exact terms of the release in the Settlement Agreement are as follows:

Upon final approval of this Settlement Agreement, Named Plaintiffs on their own behalf and as the Named Representatives, all members of the Settlement Class, and all persons purporting to act on their behalf or purporting to assert a claim under or through them, including, but not limited to, their spouses, dependents, attorneys, heirs and assigns, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, and successors-in-interest, whether individual, class, collective, representative, legal, equitable, direct or indirect, or any other type or in any other capacity (collectively, the "Releasing Class Parties") hereby forever completely and irrevocably release and discharge Defendant, along with any of its past, present, and future parents, affiliates, subsidiaries, divisions, predecessors, successors, and assigns, and each of their officers, directors, board members, trustees, shareholders, members, employees, agents, attorneys, auditors, accountants, benefits administrators or third party administrators, experts, contractors, stockholders, representatives, partners, insurers, reinsurers, and other persons acting on their behalf (collectively, the "Released Parties"), from any and all causes of action, claims, rights, damages, punitive or statutory damages, penalties, liabilities, expenses, and losses resulting from unpaid wages, minimum wages, unpaid overtime, liquidated damages, other compensation or benefits including 401(k) benefits or matching benefits, retirement or deferred compensation benefit claims on account of unpaid wages and/or overtime, interest, attorneys' fees, meal and rest period compensation, day of rest claims, accrued vacation pay, breach of fiduciary duty, and any right or claim for civil penalties, any claim arising in contract or quasi-contract and related to the payment of wages, that any of the Releasing Class Parties have or may have had against any of the Released Parties arising out of the acts, facts, transactions, theories, occurrences, representations, or omissions set forth, or which could have been set forth, given the stated predicate allegations in the Complaints filed in the *Acosta* Litigation, the *Bowman* Litigation and/or the *Cox* Litigation, arising out of or under the Fair Labor Standards Act, the Ohio Wage Payment Act, the Colorado Wage Claim Act, Colorado's Minimum Wage Orders, Colorado's Minimum Wages of Workers Act, any other state wage payment law, or any other claim arising out contract, quasi-contract, tort, breach of fiduciary duty, or other common law claim, as well as any other state or local statute, rule and/or regulation, or similar causes of action arising from or relating to the non-payment of wages alleged in the above referenced Complaints, (the "Released Class Claims") through the time of Final Approval Order.

The Settlement Agreement also lists the rights that you are <u>not</u> giving up by joining this Settlement:

It is expressly acknowledged and agreed that the Released Class Claims set forth above by the Releasing Class Parties shall not include a release or waiver

of any claims under any federal, state, municipal or other statutes or ordinances not expressly released in the immediately preceding paragraph above including, but not limited to, claims for damages, equitable relief, attorney fees, costs and the like under Title VII of the Civil Rights Act of 1964, as amended; the Americans with Disabilities Act, as amended; the Ohio Civil Rights Act; the Colorado Anti-Discrimination Act; the Family and Medical Leave Act, as amended; and the Age Discrimination in Employment Act, as amended, Ohio Revised Code § 4123.90, and any common law actions relating to wrongful or retaliatory discharge, negligence, malfeasance, mistreatment, civil conspiracy, defamation, intentional or negligent infliction of emotional distress, tort, personal injury, or invasion of privacy.  The parties agree that the Defendant shall not assert in any other proceeding that any claims not expressly released are barred by the doctrines of *res judicata*, collateral estoppel or the like.

By signing and returning this claim form, you represent and warrant that you have not assigned, transferred, or hypothecated, or purported to assign, transfer, or hypothecate to any person or entity any of the Released Claims or any rights, claims, or causes of action arising therefrom.

| **6.  How do I include or exclude myself from this settlement?** |
| --- |

The Settlement Class includes all HSG housekeeping MITs who worked in Colorado, Florida, Indiana, or Michigan during the relevant time period that return an Opt-in Claim Form.  Members of the Settlement Class must "opt in" to this lawsuit, and Settlement of the same, by timely completing and returning the Opt-in Claim Form below.  If you choose to join in this lawsuit by completing and timely sending in the attached Opt-in Claim Form, you will be eligible to receive a settlement payment in the amount listed above.  You will be also be bound by any Judgment entered by the Court, and will release any and all claims described in section 5, above.

If you do not complete an Opt-in Claim Form, you will not join this lawsuit, and you will not be eligible to receive a settlement payment.  If you so choose, you may bring your own claim and hire your own attorney to represent you.

**PLEASE BE ADVISED, IF YOU ARE A CLASS MEMBER OF *KELLY et. al. v. HEALTHCARE SERVICE GROUP, INC.*, E.D. Texas, Case No. 2:2013-cv-00441, YOU ARE ELIGIBLE TO JOIN THIS SETTLEMENT WITHOUT COMPROMISING ANY RIGHTS YOU MAY OR MAY NOT HAVE IN *KELLY et. al. v. HEALTHCARE SERVICES GROUP, INC.* PLEASE CONTACT THE COUNSEL REPRESENTING YOU IN THAT CASE IF YOU HAVE ANY QUESTIONS REGARDING YOUR PARTICIPATION IN THE KELLY MATTER.**

| 7.   Are there more details about the settlement?  Questions? |
|---|

Yes. This Notice summarizes the most important aspects of the proposed settlement. You can review the entire Settlement Agreement, which contains additional terms not listed here, by obtaining a copy from the court file in this lawsuit. You can get an email copy of the written Settlement Agreement by calling Class Counsel at 614-221-4221 or 330-354-8967 or by emailing Class Counsel at bderose@barkanmeizlish.com or hans@ohlaborlaw.com.

Likewise, please call Class Counsel if you have any questions regarding this Notice.

**PLEASE DO NOT CALL THE COURT OR THE CLERK ABOUT THIS SETTLEMENT OR NOTICE.**

| 8.   Do I have an attorney in this case? |
|---|

The Court has designated attorneys Robert E. DeRose and Robi J. Baishnab of Barkan Meizlish Handelman Goodin DeRose Wentz LLP, and attorneys Hans Nilges and Shannon Draher of Nilges Draher LLC, as Class Counsel.  You can contact Class Counsel at:

> Robert E. DeRose
> Robi J. Baishnab
> Barkan Meizlish Handelman Goodin DeRose Wentz LLP
> 250 E. Broad St., 10th Floor
> Columbus, OH 43215

> Hans A. Nilges
> Shannon Draher
> Nilges Draher, LLC
> 4580 Stephen Circle, N.W.
> Suite 201
> Canton, OH 44718

HSG is represented by Kenneth D. Sulzer of Proskauer Rose LLP and Kenneth Kleinman of Stevens & Lee.

Date: [*insert date*]                 Approved as to Form and Content:

> Hon. Jack Zouhary
> United States District Judge
> United States District Court for the Northern District of Ohio

*Bowman v. Healthcare Services Group, Inc*, **Case No. 33:13-cv-1924 (N.D. Ohio)**

## OPT-IN CLAIM FORM AND OPT-IN CONSENT

\* \* \*

**SUBMIT THIS FORM ONLY IF YOU WISH TO JOIN THE SETTLEMENT
CLASS AND RECEIVE AN INDIVIDUAL SETTLEMENT PAYMENT**

**ALL MEMBERS OF THE SETTLEMENT CLASS WHO SUBMIT THIS FORM
WILL BE BOUND BY A RELEASE OF CLAIMS AND RECEIVE AN
INDIVIDUAL SETTLEMENT PAYMENT**

\* \* \*

If you are a member of the Settlement Class, in order to receive any portion of the settlement funds, you MUST sign, date and return this Opt-in Claim Form. For members of the Settlement Class, this Opt-in Claim Form shall also serve as your consent to joint this litigation pursuant to 29 U.S.C. § 216(b).  THE CLAIM FORM MUST BE POSTMARKED ON OR BEFORE [*insert date*].  Any Opt-in Claim Form that is not submitted by First Class Mail or the equivalent, is postmarked after [*insert date*], is not addressed to the proper address, is not completely and legibly filled out, or is not signed by you under penalty of perjury will <u>not</u> constitute a valid claim, you will not be considered to have timely opted in to this lawsuit and settlement, and payment will be denied unless otherwise ordered by the Court. For more information on the Settlement and how your share of the settlement funds will be calculated, as well as your rights in connection with the Settlement, please see the attached Notice.

By signing, dating and timely returning the Opt-in Claim Form, you are consenting to become a party to this Lawsuit and agreeing to the release of claims set forth below.

The Opt-in Claim Form must be sent to the following address:

[*insert address*]

BE SURE TO MAKE A COPY OF THE SIGNED OPT-IN CLAIM FORM FOR YOUR RECORDS.

Changes of Address: It is *your responsibility* to keep a current address on file.  This is the address that will be used to mail any distribution from the Settlement. Please make sure to send written notification of any change of address.

By signing this Opt-in Claim Form, I on my own behalf and on behalf of and all persons purporting to act on my behalf or purporting to assert a claim under or through me , including, but not limited to, my spouse, dependents, attorneys, heirs and assigns, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, and successors-in-interest, whether individual, class, collective, representative, legal, equitable, direct or indirect, or any other type or in any other capacity (collectively, the "Releasing Class Parties") hereby forever completely and irrevocably release and discharge Defendant HSG, along with any of its past, present, and future parents, affiliates, subsidiaries, divisions, predecessors, successors, and assigns, and each of their officers, directors, board members, trustees, shareholders, members, employees, agents, attorneys, auditors, accountants, benefits administrators or third party administrators, experts, contractors, stockholders, representatives, partners, insurers, reinsurers, and other persons acting on their behalf (collectively, the "Released Parties"), from any and all causes of action, claims, rights, damages, punitive or statutory damages, penalties, liabilities, expenses, and losses resulting from unpaid wages, minimum wages, unpaid overtime, liquidated damages, other compensation or benefits including 401(k) benefits or matching benefits, retirement or deferred compensation benefit claims on account of unpaid wages and/or overtime, interest, attorneys' fees, meal and rest period compensation, day of rest claims, accrued vacation pay, breach of fiduciary duty, and any right or claim for civil penalties, any claim arising in contract or quasi-contract and related to the payment of wages, that any of the Releasing Class Parties have or may have had against any of the Released Parties arising out of the acts, facts, transactions, theories, occurrences, representations, or omissions set forth, or which could have been set forth, given the stated predicate allegations in the Complaints filed in the *Acosta* Litigation, the *Bowman* Litigation and/or the *Cox* Litigation, arising out of or under the Fair Labor Standards Act, the Ohio Wage Payment Act, the Colorado Wage Claim Act, Colorado's Minimum Wage Orders, Colorado's Minimum Wages of Workers Act, any other state wage payment law, or any other claim arising out contract, quasi-contract, tort, breach of fiduciary duty, or other common law claim, as well as any other state or local statute, rule and/or regulation, or similar causes of action arising from or relating to the non-payment of wages alleged in the above referenced Complaints, (the "Released Class Claims") through the time of Final Approval Order.

Through my signature below, I hereby consent to opt-in and become a party to the Settlement Class in the action titled *Bowman v. Healthcare Services Group, Inc,* Case No. 33:13-cv-1924, filed in the United States District Court for the Northern District of Ohio.  I understand and agree that by joining in this action that I will be bound by any adjudication of the Court or settlement in this action.  I understand the Lawsuit includes allegations that HSG failed to properly pay certain housekeeping MITs for all hours worked, including overtime.  I have been employed by HSG as a housekeeping MIT in Colorado, Florida, Indiana, or Michigan during the time period from May 31, 2010 through (**insert date**).  I choose to be represented by Robert E. DeRose,  and Robi J. Baishnab of Barkan Meizlish Handelman Goodin DeRose Wentz LLP, and Hans Nilges and Shannon Draher of Nilges Draher, LLC as Class Counsel.

I verify that I have not assigned, transferred, or hypothecated, or purported to assign, transfer, or hypothecate any of the claims described above.

 

 

      I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

      Dated: _____, 2014

 

_____

**Signature**

_____

**Print Name**

_____

_____

**Current Address**

_____

**Current Email**

 

_____

**Social Security Number OR**
**Healthcare Services Group ID number**

# Exhibit D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.  1:13-cv-03429-REB-CBS

MARIE ACOSTA, Individually and on Behalf of Others Similarly Situated,

     Plaintiffs,

v.

HEALTHCARE SERVICES GROUP, INC.,

     Defendant.

---

## UNOPPOSED MOTION TO DECERTIFY THE COLLECTIVE ACTION

---

Defendant Healthcare Services Group, Inc. ("Defendant"), by and through its undersigned counsel, hereby submits this Unopposed Motion to Decertify the Collective Action.

## CERTIFICATE OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1(Aa), the undersigned hereby certifies that he conferred with counsel for Plaintiffs regarding the relief requested herein, and Plaintiffs do not oppose this Motion. After considerable discovery and a private mediation, Plaintiffs have agreed to decertify this collective action and proceed with settling their claims against Defendant on an *individual* basis.  To the extent any settlement agreements cannot be reached, Plaintiffs will retain the right to proceed with litigating their claims against Defendant individually.

## INTRODUCTION

In this Fair Labor Standards Act ("FLSA") collective action, Plaintiffs assert they were improperly classified as exempt from overtime pay. Defendant relies on the

administrative and/or executive exemptions as defenses to Plaintiffs' claims.  Following the two step procedure utilized by courts in the Tenth Circuit, this case was conditionally certified as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).  (*See* ECF Doc. # 37, Order Granting Unopposed Motion for Conditional Certification.)  Defendant now moves to decertify the collective action pursuant to the more stringent standard that is applicable at this stage of the case.

The question raised by this Motion is not whether Defendant improperly classified Plaintiffs as exempt under the FLSA, but whether a collective action is an appropriate method for resolving such allegations.  In light of the individualized distinctions between Plaintiffs, the answer is unequivocally, no.  As Judge Babcock colorfully noted, it is "oxymoronic to use [a collective action] in a case where proof regarding each individual plaintiff is required to show liability."  *Bayles v. Am. Med. Response of Colo., Inc.*, 950 F. Supp. 1053, 1065 (D. Colo. 1996).

While subject to the same management expectations, Plaintiffs had demonstrably disparate day-to-day experiences as Environmental Services Account Managers ("Account Managers").  Those differing experiences were due to many factors, including, among other things, the particular facility served by a Plaintiff, including discrepancies in the facility's budget, size, and management; the differences in the extent of supervision and direction provided by a Plaintiff's direct supervisor; and, perhaps most critically, an individual Plaintiff's approach to and performance of the job, which widely varied in light of the freedom given to Account Managers.  Under these circumstances, there is no fair way to make a representative decision about the propriety of the administrative and/or executive exemption for Plaintiffs.  The record of

differences is not undercut by job descriptions reflecting Defendant's expectations as to Plaintiffs' general areas of responsibility or alleged uniform classification.  Nor does the need for the Court to consider the exemption requirements for each Plaintiff on an individualized basis disappear upon consideration of uniform company policies or guidelines for operations.

For these reasons, and the reasons set forth more fully below, Defendant requests the Court enter an Order decertifying this matter as a collective action under the FLSA.

## ARGUMENT

### I.  Plaintiffs' Stringent Burden of Proof.

To maintain a collective action under the FLSA, Plaintiffs must demonstrate they are "similarly situated."  *See* 29 U.S.C. § 216(b).   The FLSA does not define the term "similarly situated."  The Tenth Circuit follows a two-step process to determine whether plaintiffs are similarly situated for certification of a collective action under the FLSA. *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001).  In the first stage, or the "notice" stage, the court utilizes a fairly lenient standard to examine the pleadings and affidavits in the record and to determine whether it should "conditionally" certify the class.   *Id.*   It was under this very "lenient" standard that the Court conditionally certified this proceeding as a collective action.  (*See* ECF Doc. # 37, Order Granting Unopposed Motion for Conditional Certification.)

At the second stage, or the "decertification" stage, this Court must undergo a more stringent factual analysis to determine whether the collective action members are, in fact, similarly situated.  *See Thiessen*, 267 F.3d at 1102; *see also In re Am. Family*

*Mut. Ins. Co. Overtime Pay Litig.,* 638 F. Supp. 2d 1290, 1298 (D. Colo. 2009) ("[O]nce a FLSA collective action is initially certified upon a determination that a group of employees are 'similarly situated,' the opt-in plaintiffs may be subject to some individualized discovery, following which they will be required to demonstrate that they are 'similarly situated' under a stricter standard.").

Courts considering decertification generally look to three factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant that appear to be individual to each plaintiff; and (3) fairness and procedural considerations.  *Id.* at 1103.  The factors "are not mutually exclusive, and there is considerable overlap among them."  *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 574 (E.D. La. 2008).  "[T]he more dissimilar plaintiffs are and the more individuated [the employer's] defenses are, the greater doubts there are about the fairness of a ruling on the merits – for either side – that is reached on the basis of purportedly representative evidence."  *Id.*

## II.  All Three Factors Weigh In Favor of Decertification Given the Highly Individualized, Fact-Specific Inquiry Into Whether Plaintiffs Were Properly Classified as Exempt.

Plaintiffs cannot meet their burden of demonstrating they are "similarly situated" under the three-factor decertification analysis.  As shown below, the evidence adduced through discovery paints a picture of extreme dissimilarity amongst the Plaintiffs.

### a.  Substantial Variances in Plaintiffs' Factual and Employment Settings Necessitate Decertification.

The first factor examines the extent to which differences in factual claims and employment settings have an impact on the claims being made.  Plaintiffs must establish identifiable facts or some nexus that binds their claims together, other than the

4

mere fact that they all worked for a company that failed to pay them overtime in some way.  Indeed, "[w]ithout more, the fact that *some* FLSA violations occurred is not enough to establish similarity justifying collective adjudication because unrelated sporadic violations would not present a court with issues sufficiently connected to be resolved together."  *See Marsh v. Butler County Sch. Sys.*, 242 F. Supp. 2d 1086, 1094 (M.D. Ala. 2003).

Applying the administrative and executive exemptions requires evaluation of each Plaintiff's day-to-day duties and responsibilities in light of the statutory criteria and primary duty analysis.  *See, e.g., Schaefer-LaRose v. Eli Lily & Co.*, 679 F.3d 560, 572 (7th Cir. 2012).  Issues that must eventually be determined for liability purposes for *each* Plaintiff include, but are not limited to:

| For the Executive Exemption[1] | For the Administrative Exemption[2] |
|---|---|
| ▪ Is the Plaintiff's "primary duty" managing the facility in which she is employed?[3]<br><br>▪ Does she customarily and regularly direct the work of the equivalent of two or more fulltime employees? | ▪ Is the Plaintiff's "primary duty" performing office or non-manual work?<br><br>▪ Is that work "directly related to the management or general business operations" of Defendant or of its customers? |

[1] 29 C.F.R. § 541.100.

[2] 29 C.F.R. § 541.200.

[3] The regulations provide a long but non-exhaustive list of examples of "management" duties, including  interviewing, selecting, and training employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be bought, stocked, and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.   *See* 29 C.F.R. § 541.102.

| | |
|---|---|
| ▪ Does she have the authority to hire or fire other employees—or to make suggestions and recommendations about hiring, firing, advancing, or promoting or about other changes in employees' status and those are given particular weight? [4] | ▪ Does her "primary duty" include exercising discretion and independent judgment with respect to "matters of significance"? |

If these questions were not individualized enough, the factfinder's work is not yet done – it must still determine what was/is the "primary duty" of each Plaintiff.  Each Plaintiff must have exempt work as her primary duty, meaning her "principal, main, major or most important" work.  29 C.F.R. § 541.700(a).  Determining primary duty requires considering "all the facts … with major emphasis on the character of the employee's job *as a whole*."  *Id.* (emphasis added).  Because doing exempt and nonexempt work at the same time does not defeat exempt status, 29 C.F.R. § 541.106 (a)-(b)[5], the regulations require the factfinder to answer still more questions for each Plaintiff:

▪ What is the relative importance of her exempt work versus her other work?[6]

▪ What amount of time does she spend on exempt work?

▪ Is she relatively free from direct supervision?

---

[4] An employee's suggestions and recommendations may still be deemed to have "particular weight" even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status.  29 C.F.R. § 541.105.

[5] "[O]ne can still be 'managing' if one is in charge, even while physically doing something else." *Donovan v. Burger King Corp.*, 672 F.2d 221, 226 (1st Cir. 1982).

[6] *Anderson v. Dolgencorp of NY, Inc.,* Nos. 1:09-cv-360, 1:09-cv-363, 2011 WL 1770301, at *10 (N.D.N.Y. May 9, 2011) (court must "evaluate[] which of plaintiff's duties – managerial or non-managerial – were more important to the employer").

- How do her wages compare to those paid to employees performing the same nonexempt work?

29 C.F.R. § 541.700(a).

In light of this required focus on actual duties, misclassification claims like Plaintiffs are decertified where, as here, factual variations exist regarding the plaintiffs' locations, job duties, and use of discretion. *See, e.g., Green v. Harbor Freight Tools USA, Inc.*, No. 09-CV-2390, 2012 WL 3563977, at *8 (D. Kan. Aug. 17, 2012 (decertifying misclassification claims of store managers where the factors for both the executive or administrative exemptions had to be considered, and the "evidence varies as to the nature and variety of decisions made by Plaintiffs, how they ran their respective stores, their authority to make independent choices, and the degree to which their recommendations were considered or reviewed at a higher level"); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111, 1130-31 (N.D. Cal. 2011) (decertifying managers' FLSA claims where deposition testimony "show[ed] that for every manager who says one thing about his or her job duties and responsibilities, another says just the opposite"); *Aquilino v. Home Depot, U.S.A., Inc.*, No. 04-04100, 2011 WL 564039, at *2 (D.N.J. Feb. 15, 2011) (decertifying assistant manager misclassification claims, finding "it is apparent that [managers'] testimony about job responsibilities and duties varies from [manager] to [manager]"); *Reyes v. Texas EZPawn, L.P.*, No. V-03-128, 2007 WL 101808, at *2 (S.D. Tex. Jan. 8, 2007) (decertification granted where "[p]laintiffs' deposition testimony . . . reveals significant differences in each [plaintiff's] job duties, discretion, and authority, depending on the practices of individual store managers, store demographics, and location"); *Smith v.*

7

*Heartland Automotive Services, Inc.*, 404 F.Supp.2d 1144, 1149 (D. Minn. 2005) (same).

Discovery has confirmed that Plaintiffs' duties and responsibilities differ depending on a virtually endless variety of highly individualized factors, including, but not limited to, the following:

- **Plaintiffs' Varying Approach to Management and Differing Levels of Ability.** *See* Exh. A, Justin Martinez Resp. to Interrogatory No. 4 (worked as Account Manager for almost seven years); Sandra Barr Resp. to Interrogatory No. 4 (worked as Account Manager for less than a year); Alyce O'Neil Resp. to Interrogatory No. 4 (worked as Account Manager for less than four months); Marie Acosta Dep. 29:25-30:13 (she tried, but had difficulty exercising control over hourly employees because they did not "respect" her); Tammie Carpenter Resp. to Interrogatory No. 8 (hourly employees required "little direction" in completing their job duties); Nicole Quezada Dep. 133:3-8 (gave direction to her hourly employees, but they "didn't listen to [her] half the time"); *see also* Exh. B, Declarations of Account Managers obtained prior to class certification.

- **The Degree of Discretion and Authority Each Plaintiff Exercised Varied Greatly Depending on Upper Management Disparities, Fluctuating Client Needs, and Unique Budget Constraints.** *See* Exh. C, Acosta Dep. 36:13-21 (District Manager only visited her facility twice and offered little assistance in "controlling" hourly employees); O'Neil Resp. to Interrogatory No. 5 (District Manager was very involved in supervision of hourly employees, including setting the "jobs [Account Managers] had to do and [the] timeline to get it done"); Thomas Crawford Dep. 54:15-22 (District Manager only visited facility once a month); Martinez Resp. to Interrogatory No. 5 ("The ability of janitors and housekeeping to complete scheduled manual tasks was limited by the budget."); Franck Jimson Resp. to Interrogatory No. 4 (was "required to do what the [client] told me to do"); Diana Cotten Resp. to Interrogatory No. 4 (considered the client/facility administrator as "one of my bosses"); Diana Cotten Resp. to Interrogatory No. 5 (ability "to have other housekeepers help with the extra manual work was limited by the budget"); Jonathon Lee Resp. to Interrogatory No. 5 (a "big VIP tour" required the whole building to be stripped and waxed, which he performed over a two week period to assist his employees); Acosta Dep. 32:19-21, 33:1-7 (experienced significant conflicts with client/facility administrator); *see also* Exh. B.

- **Because Plaintiffs Independently Determined Their Work Schedule, Plaintiffs' Personal Experience With Respect to Hours Worked Varied**

8

**Substantially Depending on the Needs of the Client and the Number of Hourly Employees Available, Their Experience, and Turnover.** *See* Exh. D, Carpenter's Resp. to Interrogatory No. 6 ("I had no regular schedule as an account manager."); Acosta Dep. 67:20-23; 108:1-13 (even if all employees showed up for work, she still worked over 40 hours a week because of directives from her facility administrator to perform facility-specific work); Aspen O'Dell Resp. to Interrogatory No. 6 (often worked at home for varying hours because there was no time to complete paperwork during scheduled shift); Jimson Resp. to Interrogatory No. 6 (was told to work 7:00 A.M. to 3:30 P.M.); Alyce O'Neil Resp. to Interrogatory No. 6 (was told to work Monday through Friday, 8 A.M. to 5 P.M.); Jones Dep. 38:20-39:3 (typically worked an eight-hour shift, arriving in the morning around 6:30 a.m. or 7:00 a.m., and leaving around 3:00 p.m. or 4:00 p.m.); Barr Resp. to Interrogatory No. 5 ("Many times I had to cover shifts for hourly employees and/or do night projects."); Martinez Resp. to Interrogatory No. 6 ("I also had to perform night projects and cover the shifts of hourly staff who did not report to work."); Acosta Dep. 67:20-23; 108:1-13 (if she worked over 40 hours per week it was because employees "didn't show up for work" and she had "to do their job"); Alyce O'Neil Resp. to Interrogatory No. 5 (was responsible for floor technician duties because the previous floor technician was let go); James Sanchez Resp. to Interrogatory No. 5 ("[Defendant] terminated the maintenance director, which left me to perform all of the maintenance duties."); *see also* Exh. B.

- **The Extent to Which Plaintiffs Exercised Involvement in Personnel Decisions (Such As Hiring, Firing, Scheduling, and Disciplining) is Highly Individualized.** *See* Exh. E, Acosta Dep. 29:25-30:13, 44:10-24, 46:9-24, 75:19-20 (interviewed, hired, trained, and scheduled hourly employees, but employees did not respect her management style, leading to difficulties in exercising control over those employees); Crawford Dep. 92:18-22; 97:5-6 (disciplined approximately three employees and terminated one employee during his tenure as Account Manager); Quezada Dep. 155: 14-156:5 (attempted to discipline one employee but it was overturned by her District Manager); Barr Resp. to Interrogatory No. 5 (spent "almost no time" addressing personnel issues); O'Neil Resp. to Interrogatory No. 8 (District Manager, not her, was responsible for the daily job routines for hourly employees); Lee Resp. to Interrogatory No. 8 (was "too busy performing work to allow anyone to report to me"); Quezada Dep. 63:9-64:9; 77:16-78:8; 97:21-98:2; 118:9-119:3; 166:23-167:9, 170:4-174:21; 180:20-181:9, 179:1-10 (prepared work schedules for employees; handled complaints from residents, residents' families, and the client; was responsible for ensuring adherence to the labor and materials budget; and submitted Weekly Transmittal Reports, Payroll Confirmation Sheets, and Monthly Compliance Reports); Crawford Dep.

9

52:2-10, 98:9-13 (ordered supplies but District Manager had to provide approval for equipment to be ordered); *see also* Exh. B.

▪ **Training of Plaintiffs Varied Substantially.** *See* Exh. F, Acosta Dep. 26:23-27:12 (received training for approximately one week); Barr Resp. to Interrogatory No. 7 ("I received hardly any training as an account manager."); Martinez Resp. to Interrogatory No. 7 ("training consisted of "showing us how to clean, how to strip and wax floors, and how to fill out forms . . . I was sent with a couple of housekeepers to see how they did things . . . and I was trained on how to mix chemicals and run the various cleaning machines"); Carpenter Resp. to Interrogatory No. 7 ("I received no training prior to becoming an Account Manager."); Dennison Resp. to Interrogatory No. 7 (received two weeks of training at a facility in Tennessee); O'Dell Resp. to Interrogatory No. 7 ("I never received any training from [Defendant] or its employees in relation to my work as an Account Manager for [Defendant]."); Jimson Resp. to Interrogatory No. 8 (was given a training book and took "a couple of quizzes"); Lee Resp. to Interrogatory No. 7 (trained for approximately four weeks and then about nine months later, had to complete an additional "small written test"); *see also* Exh. B.

Because these disparities result in highly individualized questions of fact, proof that one Plaintiff was improperly classified as exempt does not establish liability to all class members, making this case unsuitable for collective treatment.

### b. Individualized Defenses Confirm Collective Treatment Is Not Possible.

The second factor in the decertification analysis is whether there are individual defenses that make collective action treatment improper. Courts grant decertification where defenses require the court to conduct detailed individualized inquiries into the claims of each plaintiff:

> Disparate individual defenses heighten the individuality of the claims, and requiring the defendant to raise these arguments in a class action suit undermines its ability to mount a clear and coherent defense to the case and significantly complicates trial management.

*King v. West Corp.*, 2006 WL 118577, *15 (D. Neb. 2006) (decertifying a class in part because defendant intended to offer individualized defenses regarding whether uncompensated work occurred, whether time spent performing such work was *de minimis*, and whether the plaintiffs had scheduling flexibility); *Johnson*, 561 F.Supp.2d at 586 (E.D. La. 2008) (explaining that "[u]sing representative proof is problematic if for every instance in which an opt-in plaintiff reported that she hired subordinates, there is an alternative response to the contrary").

Defendant's assertion of the executive and administrative exemptions as defenses to Plaintiffs' claims makes collective treatment of this action unmanageable. As detailed above, an exemption defense requires individualized evidence as to each Plaintiff's duties under the statutory exemption criteria.  *Beauperthuy*, 772 F. Supp. 2d at 1134 (applicability of multiple exemption defenses "will necessitate individualized inquiries, making adjudication of Plaintiffs' claims by common proof difficult"); *Johnson,* 561 F. Supp. 2d at 586 (decertifying a collective action because defendants' defenses that employees were subject to the executive exemption necessitated individualized inquiries).  Some Plaintiffs contend they performed different kinds of allegedly nonexempt work most of the time.  Others admit they did much exempt work of various kinds, but disclaim that this was their primary duty.  Still others deny that they performed exempt work at all.  To rebut this confounding testimony, Defendant must present trial testimony from supervisors, peers, and subordinates – in other words, inevitable mini-trials for each Plaintiff.  Proof at trial will also include impeachment of each Plaintiff with, for example, documentary evidence of discipline they issued or other personnel decisions they made.

11

Further, some Plaintiffs testified they had significant exempt duties, but either failed or refused to exercise those duties.[7]  *See, e.g., Reyes*, 2007 WL 101808, at *5 (recognizing that the defense of whether the employee individually turned his or her exempt job into a non-exempt job requires individualized evidence).  Some Plaintiffs also testified they were expected to, but had problems exerting authority over their hourly employees.[8]  Such defenses require reliance on individualized testimony and employment records, making it difficult for Defendant to defend all of Plaintiffs' claims with generalized proof.

### c. Fairness and Procedural Concerns Weigh in Favor of Decertification.

The Court's consideration of the third factor is dependent on the other two, because "[u]ltimately, 'the decision whether to proceed as a collective or class action turns on whether this device is the superior way of resolving a controversy. The benefits to the parties of a collective proceeding need to be balanced against any prejudice to [the defendant] and any problems of judicial administration that may surface.'" *Beauperthuy*, 772 F. Supp. 2d at 1118 (internal quotations omitted).  Since each of the other factors weighs in favor of decertification, it is not surprising that fairness and procedural considerations also require decertification of the misclassification claims at issue.

---

[7] For example, opt-in plaintiff Nicole Quezada admitted that she was "supposed" to complete six Quality Control Inspection reports per day, but she only completed them when she could find the time.  *See* Exh. G, Quezada Dep. 41:18-21.

[8] Named plaintiff Marie Acosta testified that she understood Defendant expected her to manage the hourly employees, but she had difficulty exercising any authority over these employees. *See* Exh. H, Acosta Dep. 29:25-30:13; 66:16-19 (her employees did not "respect" her); 85:8-13 (she "thought [she] was the one that was supposed to be the manager").

Allowing this suit to proceed as a collective action would be unwieldy for the court and/or the jury.  *See, e.g., Thiessen,* 267 F.3d at 1105 (recognizing that collective action can impose "extraordinary burdens on the [trier of fact], both in terms of the quantity of evidence and the length of trial"); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 499 (D.N.J. 2000) (granting motion for decertification because litigating the case would be inefficient as "[t]he exempt or non-exempt status of potentially hundreds of employees would need to be determined on a job-by-job, or more likely, an employee by-employee basis.").  Indeed, because the facts are so individualized, it would be impossible to proceed with this action using representative testimony.  Even with respect to the four Plaintiffs deposed to date, the record of differences confirms that no Plaintiff could testify in a manner "representative" of any other Account Manager, and attempting to rely upon any testimony as "representative" would be unfair to all parties and procedurally improper.  Thus, a vast number of witnesses would be required to testify—including Plaintiffs, their supervisors, facility administrators, and employees supervised by Plaintiffs—which will devolve into numerous mini-trials, causing the jury to evaluate testimony from countless witnesses and other evidence that is unique to a particular Plaintiff.

Further, Defendant has a procedural due process right to defend itself against Plaintiffs' claims, and its right to do so is compromised when, as here, Plaintiffs are not similarly situated.  *See Lusardi v. Xerox*, *Corp.*, 118 F.R.D. 351, 371-73 (D.N.J. 1987); *see also Gatewood v. Koch Foods of Miss., LLC*, No. 3:07CV82-KS-MTP, 2009 WL 8642001, at *21 (S.D. Miss. Oct. 20, 2009) (ordering decertification due to "plethora of individual issues" raised by claims and defenses that prevented due process and

"serious fairness issues").    Defendant has a number of defenses that are specific to each Plaintiff, and it would be unfairly prejudicial to Defendant to deny it the opportunity to present these defenses on a plaintiff-by-plaintiff, claim-by-claim basis.

On the other hand, Plaintiffs will not be prejudiced by decertification because many will have benefited from the implementation of class-wide discovery on the issues relevant to their FLSA claims.  Plaintiffs will retain the right to individually pursue their claims and, as stated above, Defendant intends to reach a settlement agreement as to each of the Plaintiffs individually.  If the claims are decertified, any Plaintiff who has a credible claim will likely benefit from trying to settling his or her claim separately from the claims of Plaintiffs who clearly do not.

### III.    The Evidence of Differences Requiring Decertification Cannot Be Erased by Plaintiffs' Reliance on Company Policies and Documents.

The fact that Plaintiffs have common titles and job descriptions is insufficient to warrant collective action treatment.  FLSA implementing regulations specifically recognize that a job title alone is "insufficient to establish the exempt status of an employee.   The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulation."  29 C.F.R. § 541.2; *see also Gardner v. Western Beef Props.*, No. 07-2345, 2011 WL 6140518, at *5 (E.D.N.Y. Sep. 26, 2011) (refusing to certify grocery managers' misclassification claims, specifically rejecting the plaintiffs' reliance on uniform classification and explaining "the real question is 'answered by examining the employee's actual duties").

Nor do an employer's standardized policies, oversight, or guidance eliminate the individualized nature of each exemption inquiry:

14

> Although all [] Managers answer to a District Manager, the issue is *relative* freedom from direct supervision, not complete freedom. Several courts have held that employees who follow detailed corporate directives and company policies are not so tightly controlled or stripped of discretion that their work does not qualify as exempt.

*Green v. Harbor Freight Tools USA, Inc.*, 888 F. Supp. 2d 1088, 1099 (D. Kan. 2012) ("merely classifying a group of employees as exempt does not automatically qualify them as similarly situated, nor eliminate the need to make a factual determination as to whether class members are actually performing similar duties"); *see also In re Bank of America Wage and Hour Employment Lit.*, 286 F.R.D. 572, 588 (D. Kan. 2012) ("[E]ven if plaintiffs established the unofficial policy they allege the [employer] maintained, there is no way in the class action context to prove the [employer's] liability to each member because there is no evidence that each class member in fact was affected by the unlawful policy."); *Holt v. Rite Aid Corp.,* 333 F. Supp. 2d 1265, 1269 (M.D. Ala. 2004) (denying certification where evidence indicated that the court would need to inquire as to the "daily tasks of each putative collective action member to determine whether they are similarly situated"); *Smith,* 404 F.Supp.2d at 1149 (same).

## CONCLUSION

In sum, this lawsuit should not proceed as a collective action because: (1) Plaintiffs are not similarly situated under the FLSA as their day-to-day experiences were too different; (2) the administrative and executive exemption defenses are inherently individualized; and (3) discrepancies in Plaintiffs' duties make a collective trial impossible and unfair. Accordingly, Defendant respectfully requests that this collective action be decertified and the parties be permitted to proceed with settling Plaintiffs' claims on an individualized basis.

15

Respectfully submitted this ___ day of October, 2014.

OGLETREE, DEAKINS, NASH, SMOAK
 & STEWART, P.C.

*s/ Steven W. Moore*
Steven W. Moore
Stacy D. Mueller
Austin E. Smith
Michelle B. Muhleisen
Dawn M. Amos
1700 Lincoln Street, Suite 4650
Denver, CO 80203
Telephone: 303.764.6800
Facsimile: 303.831.9246
Email: steven.moore@ogletreedeakins.com
Email: stacy.mueller@ogletreedeakins.com
Email: austin.smith@ogletreedeakins.com
Email:michelle.muhleisen@ogletreedeakins.com
Email: dawn.amos@ogletreedeakins.com

STEVENS & LEE, P.C.
Kenneth David Kleinman
1818 Market Street, 29th Floor
Philadelphia, PA 19103
Telephone: 215.751.1946
Facsimile: 610.371.7975
Email: kdk@stevenslee.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this ___ day of October, 2014, I filed the foregoing **UNOPPOSED MOTION TO DECERTIFY THE COLLECTIVE ACTION** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

George E. McLaughlin, Esq.
GEM@w-mlawgroup.com

Robert Eugene DeRose, II, Esq.
bderose@barkanmeizlish.com

Hans A. Nilges, Esq.
hans@ohlaborlaw.com

Shannon M. Draher
sdraher@ohlaborlaw.com

ATTORNEYS FOR PLAINTIFF

*s/ Janis Creekmore___*

17

# Exhibit E

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:13-cv-03429-REB-CBS**

**MARIE ACOSTA, Individually and on
Behalf of Others Similarly Situated**

       **Plaintiffs,**

  **vs.**


**HEALTHCARE SERVICES GROUP, INC.**

      **Defendant.**

_____

**[PROPOSED] ORDER APPROVING SECTION 216(b) SETTLEMENT**
_____

      Upon consideration of the Parties' Joint Motion to Approve Section 216(b) Action

Settlement (Doc. #_____), filed on _____, 2014, and the pertinent materials filed

therewith, this Court finds that the settlement terms negotiated by the Parties and

described therein are a fair and reasonable resolution of a *bona fide* dispute between the

Named Plaintiffs and the Healthcare Services, Group Inc. ("HSCG") , that the attorneys'

fees requested therein are reasonable, and that the settlement of the claims as to the 21

Opt-in Plaintiffs, including Named Plaintiff Marie Acosta as are defined in the Stipulation

and Agreement of Compromise, Settlement and Release Pursuant to Section 216 (b)

("Stipulation and Agreement of Compromise") (Doc. #_____), is therefore approved.  All

federal Fair Labor Standards Act ("FLSA") claims pursuant to 29 U.S.C. §§ 201, *et al.* of

the Named Plaintiff and the 21 Opt-In Plaintiffs in this action are dismissed with prejudice

and without costs against HCSG.

This Order is not admissible as evidence for any purpose against HCSG in any pending or future litigation.  This Order shall not be construed or used as support for conditional certification or certification of any class or collective action.  This Order shall not be construed or used as an admission, concession, or declaration by or against HCSG of any fault, wrongdoing, breach, or liability and HCSG specifically denies any such fault, breach, liability, or wrongdoing.  This Order shall not be construed or used as an admission, concession, declaration, or waiver by any party of any arguments, defenses, or claims he, she, or it may have.  Neither the fact of, nor any provision contained in the Stipulation and Agreement of Compromise or its exhibits, nor any actions taken thereunder shall be construed as, offered into evidence as, received in evidence as, and/or deemed to be evidence of a presumption, concession, or admission of any kind as to the truth of any fact alleged or validity of any defense that has been, could have been, or in the future might be asserted.

Understanding that the settlement of this case is dependent upon the approval of the Joint Motions to Approve §216(b) Action Settlement in *Cox v. Healthcare Services Group, Inc.* (N.D. Ohio Case No. 3:13-cv-00293-JZ) and *Bowman v. Healthcare Services Group, Inc.*, (N.D. Ohio Case No. 3:13-cv-1924-JZ), this Order is stayed until both motions are granted.  Upon the approval of the two motions in *Cox* and *Bowman*, the Parties are directed to implement the terms of the Settlement Agreement. In the event that one or both of the *Cox* and *Bowman* motions for approval are denied, the Parties are directed to immediately contact this Court. Without affecting the finality of this judgment, the Court reserves jurisdiction over the implementation, administration, and enforcement of this judgment and the Agreement and all matters ancillary to the same.

**IT IS SO ORDERED**.

Date: _____

_____
Hon. Robert Blackburn
UNITED STATES DISTRICT COURT JUDGE

# Exhibit F

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| HEATHER BOWMAN, Individually and on | ) | CASE NO.  3:13-CV-01924 |
| Behalf of Others Similarly Situated | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE ZOUHARY |
| | ) | |
| vs. | ) | |
| | ) | |
| HEALTHCARE SERVICES GROUP, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**PROPOSED] ORDER APPROVING SECTION 216(b) SETTLEMENT**

Upon consideration of the Parties' Joint Motion to Approve §216(b) Action Settlement

(Doc. #_____), filed on _____, 2014, and the pertinent materials filed therewith,

this Court finds that the settlement terms negotiated by the Parties and described therein are a fair

and reasonable resolution of a *bona fide* dispute between the Named Plaintiffs and the Healthcare

Services Group, Inc. ("HSCG") , that the attorneys' fees requested therein are reasonable, and that

the settlement of the claims as to the _____ Opt-in Plaintiffs, including Named Plaintiffs

Heather Bowman and Benjamin Meyers, as they are defined in the Stipulation and Agreement of

Compromise, Settlement and Release Pursuant to Section 216 (b) ("Stipulation and Agreement of

Compromise") (Doc. #_____), is therefore approved.  The Court appoints Plaintiffs' Counsel

Robert E. DeRose and Robi J. Baishnab of Barkan Meizlish Handelman Goodin DeRose Wentz,

LLP and Hans Nilges and Shannon Draher of Nilges Draher, LLC as Class Counsel in this matter.

All federal Fair Labor Standards Act ("FLSA") claims pursuant to 29 U.S.C. §§ 201, *et al.* of the

Named Plaintiffs and the _____ Opt-In Plaintiffs in this action are dismissed with prejudice and

without costs against HCSG.

The Court orders that the Proposed Opt-in Claim Form (Doc#_____) is hereby approved. Plaintiffs are directed to mail the Opt-in Claim Form, first class postage prepaid along with a self-addressed stamped return envelope, within twenty-one (21) days of the entry of this order. Plaintiffs are directed to file the returned Opt-in Claim Forms on the ECF within (2) business days of receipt. Within (10) business days following the conclusion of the 45 day Opt-in claim period, as set forth in the Stipulation and Agreement of Compromise, the Parties shall agree to the pro-rated share of the Named Plaintiffs and Opt-in Plaintiffs who returned a Claim Form or who previously filed a Notice of Consent to join this lawsuit. HCSG shall deliver the checks to Class Counsel for distribution within the time periods set forth in the Stipulation and Agreement of Compromise.

Any Named Plaintiff or Opt-in Plaintiff who has filed a Notice of Consent or Opt-in Form to participate in *Kelly et al. v. Healthcare Services Group, Inc.*, E.D. Texas Case No. 2:2013-cv-00441, and has not withdrawn such consent, is eligible to participate in this settlement and does not compromise their rights under *Kelly et al. v. Healthcare Services Group, Inc.*, E.D. Texas Case No. 2:2013-cv-00441 per the stipulation of Healthcare Services Group, Inc. which is adopted herein.

This Order is not admissible as evidence for any purpose against HCSG in any pending or future litigation. This Order shall not be construed or used as support for conditional certification or certification of any class or collective action. This Order shall not be construed or used as an admission, concession, or declaration by or against HCSG of any fault, wrongdoing, breach, or liability and HCSG specifically denies any such fault, breach, liability, or wrongdoing. This Order shall not be construed or used as an admission, concession, declaration, or waiver by any party of any arguments, defenses, or claims he, she, or it may have. Neither the

fact of, nor any provision contained in the Stipulation and Agreement of Compromise or its exhibits, nor any actions taken thereunder shall be construed as, offered into evidence as, received in evidence as, and/or deemed to be evidence of a presumption, concession, or admission of any kind as to the truth of any fact alleged or validity of any defense that has been, could have been, or in the future might be asserted.

Understanding that the settlement of this case is dependent upon the approval of the same Parties' Joint Motions to Approve §216(b) Action Settlement in *Acosta v. Healthcare Services Group, Inc.* (D. Colo. Case No. 1:13-cv-03429) and *Cox v. Healthcare Services Group, Inc.* (N.D. Ohio Case No. 3:13-cv-00293), this Order is stayed until both motions are granted.  Upon the approval of the two motions in *Acosta* and *Bowman*, the Parties are directed to implement the terms of the Settlement Agreement. In the event that one or both of the *Acosta* and *Bowman* motions for approval are denied, the parties are directed to immediately contact this Court. Without affecting the finality of this judgment, the Court reserves jurisdiction over the implementation, administration, and enforcement of this judgment and the Agreement and all matters ancillary to the same.

**IT IS SO ORDERED**.

**Date:** _____           _____

Hon. Jack Zouhary

UNITED STATES DISTRICT COURT JUDGE

# Exhibit G

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| JOSHUA COX, Individually and on Behalf of Others Similarly Situated | ) ) ) | CIVIL ACTION NO.  3:13-cv-00293 |
| Plaintiff, | ) ) ) | JUDGE JACK ZOUHARY |
| vs. | ) ) ) | |
| HEALTHCARE SERVICES GROUP, INC. | ) ) ) | |
| Defendant. | ) | |

**[PROPOSED] ORDER APPROVING SECTION 216(b) SETTLEMENT**

Upon consideration of the Parties' Joint Motion to Approve Section 216(b) Action Settlement (Doc. #_____), filed on _____, 2014, and the pertinent materials filed therewith, this Court finds that the settlement terms negotiated by the Parties and described therein are a fair and reasonable resolution of a *bona fide* dispute between the Named Plaintiffs and the Healthcare Services Group, Inc. ("HSCG") , that the attorneys' fees requested therein are reasonable, and that the settlement of the claims as to the Opt-in Plaintiffs, including Named Plaintiffs Joshua Cox, Mark McCutchen, Mathew Steinle, as they are defined in the Stipulation and Agreement of Compromise, Settlement and Release Pursuant to Section 216 (b) ("Stipulation and Agreement of Compromise") (Doc. #_____), is therefore approved.  The Court appoints Plaintiffs' Counsel Robert E. DeRose and Robi J. Baishnab of Barkan Meizlish Handelman Goodin DeRose Wentz, LLP and Hans Nilges and Shannon Draher of Nilges Draher, LLC as Class Counsel in this matter. All federal Fair Labor Standards Act ("FLSA") claims pursuant to 29 U.S.C. §§ 201, *et al.* of the Named Plaintiffs and the Opt-In Plaintiffs in this action are dismissed with prejudice and without costs against HCSG.

1

This Order is not admissible as evidence for any purpose against HCSG in any pending or future litigation. This Order shall not be construed or used as support for conditional certification or certification of any class or collective action. This Order shall not be construed or used as an admission, concession, or declaration by or against HCSG of any fault, wrongdoing, breach, or liability and HCSG specifically denies any such fault, breach, liability, or wrongdoing. This Order shall not be construed or used as an admission, concession, declaration, or waiver by any party of any arguments, defenses, or claims he, she, or it may have. Neither the fact of, nor any provision contained in the Stipulation and Agreement of Compromise or its exhibits, nor any actions taken thereunder shall be construed as, offered into evidence as, received in evidence as, and/or deemed to be evidence of a presumption, concession, or admission of any kind as to the truth of any fact alleged or validity of any defense that has been, could have been, or in the future might be asserted.

Understanding that the settlement of this case is dependent upon the approval of the same Parties' Joint Motions to Approve §216(b) Action Settlement in *Acosta v. Healthcare Services Group, Inc.* (D. Colo. Case No. 1:13-cv-03429) and *Bowman v. Healthcare Services Group, Inc*., (N.D. Ohio Case No. 3:13-cv-1924), this Order is stayed until both motions are granted. Upon the approval of the two motions in *Acosta* and *Bowman*, the Parties are directed to implement the terms of the Settlement Agreement. In the event that one or both of the *Acosta* and *Bowman* motions for approval are denied, the parties are directed to immediately contact this Court. Without affecting the finality of this judgment, the Court reserves jurisdiction over the implementation, administration, and enforcement of this judgment and the Agreement and all matters ancillary to the same.

**IT IS SO ORDERED**.

Date: _____          _____
                                     Hon. Jack Zouhary
                                     UNITED STATES DISTRICT COURT JUDGE

2